ROB BONTA, State Bar No. 202668
Attorney General of California
MYUNG J. PARK, State Bar No. 210866
Supervising Deputy Attorney General
BENJAMIN P. LEMPERT, State Bar No. 344239
M. ELAINE MECKENSTOCK, State Bar No. 268861
SARAH M. PFANDER, State Bar No. 347902
CAITLAN MCLOON, State Bar No. 302798
Deputy Attorney General
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013-1230
  Telephone:  (213) 269-6438
  Fax:  (916) 731-2128
  E-mail:  Caitlan.McLoon@doj.ca.gov
*Attorneys for Defendants California Air
Resources Board and Steven S. Cliff, in his
capacity as the Executive Officer of the
California Air Resources Board*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA and UNITED STATES DEPARTMENT OF TRANSPORTATION,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**CALIFORNIA AIR RESOURCES BOARD and STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board,**<br><br>Defendants. | 2:26-cv-00847-DJC-SCR<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Date:  August 27, 2026<br>Time:  1:30 p.m.<br>Dept:  7<br>Judge:  The Honorable Daniel J. Calabretta<br><br>Trial Date: TBD<br>Action Filed: 3/12/2026 |

1

PLEASE TAKE NOTICE that, on August 27, 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard, before the Honorable Daniel J. Calabretta, United States District Judge, in Courtroom 7 of the United States District Court for the Eastern District of California, located at 501 I Street, Sacramento, CA 95814, Defendants California Air Resources Board (CARB), and Steven S. Cliff, in his official capacity as Executive Officer of CARB, will and hereby do move this Court to dismiss Plaintiffs United States of America and United States Department of Transportation's Complaint for Declaratory and Injunctive Relief, pursuant to Federal Rule of Civil Procedure 12(b)(1).

This Motion to Dismiss is brought on the grounds that Plaintiffs lack standing to bring this action. Defendants' Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice and attached papers, all documents in the Court's file, and other such written and oral argument as may be presented to the Court.

Per this Court's standing order, the undersigned counsel for Defendants hereby certifies that the parties met and conferred on May 13, 2026, concerning the substance of this motion. Plaintiffs disagree that dismissal is warranted; accordingly, meet-and-confer efforts have been exhausted.

Dated: May 26, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
MYUNG J. PARK
Supervising Deputy Attorney General

*/s/ Caitlan McLoon*

CAITLAN MCLOON
Deputy Attorney General
*Attorneys for Defendants California Air Resources Board and Steven S. Cliff, in his capacity as the Executive Officer of the California Air Resources Board*

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS (2:26-cv-00847-DJC-SCR)

**TABLE OF CONTENTS**

**Page**

Memorandum of Points and Authorities ........................................................................... 1

Introduction .................................................................................................................... 1

Background ..................................................................................................................... 2

    I.      The Clean Air Act Allows for Two Programs Relating to New Motor Vehicle Emissions: EPA's and California's ..................................................... 2

    II.     The Energy Policy Conservation Act of 1975 Established a Federal Fuel Economy Program ....................................................................................... 3

    III.    California's Advanced Clean Cars I Standards ............................................. 4

    IV.   Legal Challenges Relating to the Advanced Clean Cars I Standards........ 7

Legal Standard ............................................................................................................... 8

Argument ........................................................................................................................ 9

    I.      Plaintiffs Lack Standing to Challenge the ACC I ZEV Standards (Second Cause of Action) .......................................................................... 9

        A.     Plaintiffs Can Plead Neither Injury nor Redressability Regarding Standards that Ceased Applying to Vehicle Sales in Model Year 2025 ......................................................................... 10

        B.     Plaintiffs Cannot Establish Standing on the Basis of Hypothetical Future ZEV Standards ................................................. 13

    II.     Plaintiffs Fail to Establish Standing to Challenge the GHG Standards of ACC I (First Cause of Action) ................................................ 14

Conclusion .................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Altria Grp., Inc. v. Good*
    555 U.S. 70 (2008) ...............................................................................................12

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ...........................................................................................8, 9

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007) ..............................................................................................8

*Cal. Tow Truck Ass'n v. City & County of San Francisco*
    693 F.3d 847 (9th Cir. 2012) ..................................................................... 13, 15

*California v. United States*
    Case No. 4:25-cv-04966 (N.D. Cal. filed June 12, 2025)...............................6

*California v. Watt*
    668 F.2d 1290 (D.C. Cir. 1981) ...................................................................3

*Carney v. Adams*
    592 U.S. 53 (2020) ....................................................................10, 11, 16

*Cent. Valley Chrysler-Jeep, Inc. v. Goldstene*
    529 F. Supp. 2d 1151 (E.D. Cal. 2007) (as corrected Mar. 26, 2008) ........................4

*Close v. Sotheby's, Inc.*
    909 F.3d 1204 (9th Cir. 2018)........................................................... 12, 13

*Common Cause v. Dep't of Energy*
    702 F.2d 245 (D.C. Cir. 1983) ...................................................................3

*Diamond Alternative Energy, LLC v. EPA*
    606 U.S. 100 (2025)........................................................................ 3, 8, 16

*Driftless Area Land Conserv. v. Valcq*
    16 F.4th 508 (7th Cir. 2021) ...................................................................12

*Engine Mfrs. Ass'n v. EPA*
    88 F.3d 1075 (D.C. Cir. 1996) ...................................................................3

*FDA v. All. for Hippocratic Med.*
    602 U.S. 367 (2024)........................................................................ 10, 13

ii

## TABLE OF AUTHORITIES
### (continued)

**Page**

*FW/PBS, Inc. v. Dallas*
  493 U.S. 215 (1990)....................................................................................................9

*Gibbons v. Ogden*
  22 U.S. (9 Wheat.) 1 (1824)......................................................................................13

*Gonzalez v. Planned Parenthood of Los Angeles*
  759 F.3d 1112 (9th Cir. 2014)...................................................................................9

*Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*
  508 F. Supp. 2d 295 (D. Vt. 2007) ..........................................................................4

*Int'l Union v. Marshall*
  584 F.2d 390 (D.C. Cir. 1978) ..................................................................................3

*Leite v. Crane Co.*
  749 F.3d 1117 (9th Cir. 2014)...................................................................................8

*Lujan v. Defs. of Wildlife*
  504 U.S. 555 (1992)....................................................................................................9

*Minnesota Auto Dealers Association v. Minnesota*
  520 F. Supp. 3d 1126 (D. Minn. 2021)..................................................................14

*Motor & Equip. Mfrs. Ass'n, Inc. v. EPA*
  627 F.2d 1095 (D.C. Cir. 1979) (*MEMA I*)..................................................2, 5

*Murphy v. Nat'l Collegiate Athletic Ass'n*
  584 U.S. 453 (2018)............................................................................................ 13, 14

*Ohio v. EPA*
  98 F.4th 288 (D.C. Cir. 2024) ..............................................................................3, 8

*Ohio v. EPA*
  Case No. No. 22-1081 (D.C. Cir. filed May 12, 2022) ....................................8

*Pistor v. Garcia*
  791 F.3d 1104 (9th Cir. 2015)...................................................................................8

*Safe Air for Everyone v. Meyer*
  373 F.3d 1035 (9th Cir. 2004)...................................................................................8

*Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*
  733 F.3d 1251 (9th Cir. 2013)...................................................................................9

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Spokeo, Inc. v. Robins*
    578 U.S. 330 (2016)............................................................................ 9, 10, 13, 14

*Stavrianoudakis v. U.S. Fish & Wildlife Serv.*
    108 F.4th 1128 (9th Cir. 2024).................................................................12

*Terenkian v. Republic of Iraq*
    694 F.3d 1122 (9th Cir. 2012).....................................................................8

*Trans Union LLC v. Ramirez*
    594 U.S. 413 (2021)........................................................................... 8, 15

*United States v. California*
    No. 2:25-CV-06230-MCS-AGR, 2026 WL 784514 (C.D. Cal. Mar. 18,
    2026) ..................................................................................................12, 13, 16

*United States v. Mattson*
    600 F.2d 1295 (9th Cir. 1979).................................................................. 9, 10

*United States v. San Jacinto Tin Co.*
    125 U.S. 273 (1888)................................................................................ 9, 10

*Watison v. Carter*
    668 F.3d 1108 (9th Cir. 2012).....................................................................10

**STATUTES**

15 United States Code
    § 2001(7)..............................................................................................4
    § 2002(d)(3)(D)(i) ................................................................................4
    § 2002(e)(3) .........................................................................................4
    § 2009(a)..............................................................................................4

42 United States Code
    § 6201(5).............................................................................................3, 4
    § 7543(b)(1)..........................................................................................2

49 United States Code
    § 32901(a)(6) .......................................................................................4
    § 32902(f) ............................................................................................4
    § 32919(a)............................................................................................4

Cal. Stat. 1463, 1467-70 .............................................................................5

## TABLE OF AUTHORITIES
### (continued)

**Page**

California Health and Safety Code
§ 43000(a)............................................................................................................2
§ 43013(a)............................................................................................................3
§ 43017 ...............................................................................................................3
§ 43018.5(a) ........................................................................................................5

79 Stat. 992 (1965) ...................................................................................................2

89 Stat. 871 (1975) ...................................................................................................3
§ 2(5) ..................................................................................................................3
§ 501(7) ...............................................................................................................4
§ 502(d)(3)(D)(i) ...................................................................................................4
§ 502(e)(3) ...........................................................................................................4
§ 509(a) ...............................................................................................................4

**COURT RULES**

Federal Rule of Civil Procedure
Rule 12(b)(1)........................................................................................................8
Rule 12(b)(6)........................................................................................................8

**OTHER AUTHORITIES**

76 Federal Register 40652 (July 11, 2011) ...........................................................5

78 Federal Register 2112 (Jan. 9, 2013) ....................................................... 5, 6, 7

84 Federal Register 51,310 (Sept. 27, 2019) .........................................................7

87 Federal Register 14,332 (Mar. 14, 2022) .......................................................5, 7

90 Federal Register 642 (Jan. 6, 2025)...................................................................6

v

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

California Code of Regulations, Title 13
§ 1960.1(g)(2)........................................................................................................5
§ 1961.1 ..................................................................................................................5
§ 1961.2 ..................................................................................................................7
§ 1961.3 ..................................................................................................................5
§ 1961.3(a) .............................................................................................................7
§ 1961.3(a)(1) ........................................................................................................7
§ 1961.3(a)(1)(A) ..................................................................................................7
§ 1961.3(b)(1) ........................................................................................................7
§ 1961.3(b)(3) ........................................................................................................7
§ 1962.2 ...............................................................................................................5, 6
§ 1962.2.1 ...............................................................................................................6
§ 1962.2(b) .............................................................................................5, 6, 9, 11
§ 1962.2(b)(1)(A) ..................................................................................................6
§ 1962.2(d)(5) ........................................................................................................6
§ 1962.4(a) .............................................................................................................6

H.R. Rep. No. 94-340, at 2-3 (1975) ...................................................................3, 4

S. Rep. No. 90-403 (1967) .........................................................................................2

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS (2:26-cv-00847-DJC-SCR)

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

California enacted its Advanced Clean Cars I standards in 2012 as part of its longstanding regulatory efforts to reduce vehicle emissions and thereby mitigate the severe air pollution challenges faced by the State for more than seventy years.  In March 2026, more than 14 years after these standards were promulgated, 13 years after the United States Environmental Protection Agency (EPA) first gave California the greenlight to enforce these standards, and nine years after the relevant standards first applied to California vehicle sales, the United States and United States Department of Transportation (Plaintiffs or the United States) filed this suit, alleging two components of those standards are preempted under the Energy Policy and Conservation Act of 1975 (EPCA).  In the meantime, the challenged aspects of these standards have either expired or plateaued.  The Zero Emission Vehicle (ZEV) Sales Requirement, for example, ended with vehicle sales in model year 2025, and no longer has any impact on the sale of any vehicles.  And the Greenhouse Gas (GHG) Emission Standards reached maximum stringency in model year 2025, meaning its maximum impact on the vehicle market was reached more than a year ago.

Plaintiffs seeking to invoke the jurisdiction of a federal court bear the burden of showing that they have Article III standing at the time of filing suit.  And an irreducible constitutional minimum of standing requires an injury in fact that is redressable by a favorable decision.  Plaintiffs ask this Court to invalidate these standards without pleading *any facts* establishing how these standards–including ZEV standards that sunset with model year 2025–currently impact their operations or activities.  Plaintiffs' threadbare and conclusory allegations, which fail to grapple with the current impact of these standards in the vehicle market, are insufficient to establish a concrete, particularized, and redressable injury to the United States.  Accordingly, the Complaint must be dismissed for lack of jurisdiction.

1

# BACKGROUND

I.    **THE CLEAN AIR ACT ALLOWS FOR TWO PROGRAMS RELATING TO NEW MOTOR VEHICLE EMISSIONS: EPA'S AND CALIFORNIA'S**

California has long faced severe air quality challenges and resulting adverse impacts on public health.  Because motor vehicles are substantial sources of pollution, Cal. Health & Safety Code § 43000(a), California has been setting emission standards for vehicles since the 1950s, *Motor & Equip. Mfrs. Ass'n, Inc. v. EPA*, 627 F.2d 1095, 1109 (D.C. Cir. 1979) (*MEMA I*).

When Congress began requiring federal vehicle emission standards in 1965, it did not initially preempt the States.  Pub. L. No. 89-272, § 202, 79 Stat. 992 (1965).  Two years later, manufacturers "raised the spectre of an anarchic patchwork of federal and state regulatory programs."  *MEMA I*, 627 F.2d at 1109.  Congress responded by generally preempting States from setting emission standards for new motor vehicles but required the Administrator of the EPA to waive that preemption for California, upon request, absent limited conditions.[1]  Pub. L. No. 90-148, § 208(a), (b), 81 Stat. 485, 501 (1967).  In doing so, Congress recognized "the benefits for the Nation to be derived from permitting California to continue its experiments in the field of emissions control … and the benefits for the people of California to be derived from letting that State improve on 'its already excellent program[.]'"  *MEMA I*, 627 F.2d at 1109-10 (quoting S. Rep. No. 90-403, at 33 (1967)).

Since the enactment of this waiver provision in 1967, California has expanded and strengthened its motor vehicle emissions program to cover additional types of vehicles and to set lower emission levels as new or improved pollution control

---

[1] The current waiver provision requires California to determine that its standards "will be, in the aggregate, at least as protective of public health and welfare as" EPA's.  42 U.S.C. § 7543(b)(1).  Defendant California Air Resources Board makes that finding and then submits a waiver request to EPA.  Following "notice and opportunity for public hearing," EPA "shall … waive" Clean Air Act preemption for California unless the record evidence supports one of the three limited findings that permit denial.  42 U.S.C. § 7543(b)(1).

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS (2:26-cv-00847-DJC-SCR)

technologies have emerged.  *See, e.g., Ohio v. EPA*, 98 F.4th 288, 295-96 (D.C. Cir. 2024), *rev'd and remanded in part by Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100 (2025).  Defendant California Air Resources Board (CARB)—the agency tasked with designing, promulgating, and enforcing the State's motor vehicle pollution control program, *e.g.*, Cal. Health & Safety Code §§ 43013(a), 43017—has requested and EPA has granted more than seventy-five preemption waivers, allowing California to enforce its program through all of these iterative amendments.  Thus, for more than half a century, new motor vehicles have been "either 'federal cars' designed to meet the EPA's standards" (and certified by EPA) or "'California cars' designed to meet California's standards" (and certified by CARB).  *Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1080 (D.C. Cir. 1996).

## II.    THE ENERGY POLICY CONSERVATION ACT OF 1975 ESTABLISHED A FEDERAL FUEL ECONOMY PROGRAM

In the early 1970s, energy efficiency became its own matter of intense public concern.  For six months in 1973-74, several petroleum-exporting countries temporarily slashed production and embargoed exports to the United States.  Motor vehicles were the Nation's single largest end user of petroleum, *see* H.R. Rep. No. 94-340, at 2-3 (1975), and the ensuing energy crisis triggered a "tailspin in the domestic auto market," *Int'l Union v. Marshall*, 584 F.2d 390, 392 (D.C. Cir. 1978).  The crisis "dramatically underscored the nation's dependence on foreign sources of oil." *California v. Watt*, 668 F.2d 1290, 1295 (D.C. Cir. 1981) (per curiam).

In response, Congress enacted EPCA as "an omnibus measure that include[d] a myriad of provisions pertaining to the production, stockpiling, conservation, and pricing of energy resources." *Common Cause v. Dep't of Energy*, 702 F.2d 245, 246 (D.C. Cir. 1983); *see* Pub. L. No. 94-163, 89 Stat. 871 (1975) (EPCA).  EPCA's fuel-economy chapter provided for reductions in oil consumption through "improved energy efficiency of motor vehicles," EPCA, § 2(5), 89 Stat. at 874 (codified as amended at 42 U.S.C. § 6201(5)), by way of a corporate average fuel-economy

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS (2:26-cv-00847-DJC-SCR)

standard: "a performance standard which specifies a minimum level of average fuel economy" that each automaker's fleet must attain, *id.* § 501(7), 89 Stat. at 902 (codified at 15 U.S.C. § 2001(7) (1975), recodified as amended at 49 U.S.C. § 32901(a)(6)).  When drafting the legislation, Congress understood that other motor vehicle standards, including emission standards, could affect a fleet's fuel economy in both directions.  *See* H.R. Rep. No. 94-340, at 86-87.  Thus, it directed the National Highway Traffic Safety Administration (NHTSA) to consider effects of "Federal standards"–defined to include California "emissions standards applicable by reason of [a Clean Air Act waiver]"–when modifying the initial fuel-economy obligations Congress imposed on automakers.  EPCA, § 502(d)(3)(D)(i), 89 Stat. at 904 (codified at 15 U.S.C. § 2002(d)(3)(D)(i) (1975)).  Congress also directed NHTSA to consider effects of "Federal motor vehicle standards" (later relabeled "motor vehicle standards of the Government") when prescribing or modifying federal fuel-economy standards.  EPCA, § 502(e)(3), 89 Stat. at 905 (codified at § 2002(e)(3) (1975), recodified as amended at 49 U.S.C. § 32902(f)).

At the same time, Congress opted to generally preempt any state or local "law or regulation relating to fuel economy standards or average fuel economy standards" where a relevant federal fuel-economy standard is in place.  EPCA, § 509(a), 89 Stat. at 914 (codified at 15 U.S.C. § 2009(a) (1975), recodified as amended at 49 U.S.C. § 32919(a)).  Two district courts have held that EPCA does not preempt California vehicular GHG emission standards that receive a Clean Air Act waiver. *Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*, 508 F. Supp. 2d 295, 354, 398 (D. Vt. 2007); *Cent. Valley Chrysler-Jeep, Inc. v. Goldstene*, 529 F. Supp. 2d 1151, 1175, 1179 (E.D. Cal. 2007) (as corrected Mar. 26, 2008).  No court has held otherwise.

**III.   CALIFORNIA'S ADVANCED CLEAN CARS I STANDARDS**

Within this legal landscape, California has regularly advanced new, more stringent motor vehicle standards, in an effort to address the State's persistent air

4

pollution challenges.  *See MEMA I*, 627 F.2d at 1111.  California historically suffered, and presently suffers, from some of the worst air quality in the country.  California consistently contains the only regions in the United States whose ozone problems (i.e., smog) are "extreme" under the Clean Air Act.  76 Fed. Reg. 40652, 40658 (July 11, 2011); 78 Fed. Reg. 2112, 2129-30 (Jan. 9, 2013).  And it has more than half the nation's ten worst areas for both ozone and particulate matter pollution.  87 Fed. Reg. 14,332, 14377 n.469 (March 14, 2022).

California's standards have included the nation's first motor vehicle emission standards for smog-forming oxides of nitrogen (NOx).  1968 Cal. Stat. 1463, 1467-70. These NOx standards drastically reduced the smog-forming emissions from passenger cars.  In 1990, California adopted its first zero-emission vehicle (ZEV) regulation, which required an increasing percentage of vehicles sold in the state to have no tailpipe emissions at all.  Cal. Code Regs. tit. 13, § 1960.1(g)(2) (1991).  And in 2004 California adopted the nation's first GHG emissions standards for motor vehicles, *see* Cal. Code Regs. tit. 13, § 1961.1, which aimed to reduce the State's contribution to climate change, and abate the State's extraordinary climate-related harms, including worsening ozone pollution caused by rising temperatures, *see* Cal. Health & Safety Code § 43018.5(a).

In 2012 California promulgated a comprehensive update to its light-duty vehicle emissions regulations through a suite of standards referred to as Advanced Clean Cars I (ACC I).  *See* Cal. Code Regs. tit. 13 §§ 1961.3, 1962.2.  The ACC I standards include three primary components:

ZEV standards.  ACC I included updated zero-emission vehicle standards, requiring manufacturers to meet specified "ZEV credit percentage" requirements. Cal. Code Regs. tit. 13, § 1962.2(b) (2012).  A manufacturer satisfied the "ZEV credit percentage" in several ways: by generating credits from sales of qualifying vehicles, purchasing credits from other manufacturers, using excess credits banked in prior years, or applying credits obtained by over complying with the GHG emission

5

requirements.  *See id.* § 1962.2(d)(5).  The number of ZEV credits generated by a vehicle sale depends on the vehicle's zero-emission range.  *See id.*  For example, a plug-in hybrid vehicle with a "50 mile" electric range earns one credit, while a fully battery-electric vehicle with a "350 mile" range earns four credits.  78 Fed. Reg. at 2114-2115.  The ZEV credit percentage obligation under ACC I started at 4.5% in 2018 and increased gradually to 22% in 2025.  Cal. Code Regs. tit. 13 § 1962.2(b).  Because a single ZEV can earn up to four credits, the 22% credit requirement could be satisfied with ZEV sales at only 6% of light-duty vehicles actually sold in California.

"[M]anufacturers develop, manufacture, market and sell vehicles on a yearly cycle," based around vehicle "model years."  Decl. of EPA Assistant Administrator Aaron Szabo, Request for Judicial Notice (RJN), Ex. A, at ¶¶ 8-10.  While originally structured to remain in effect at 2025 levels for subsequent model years, in 2022 California amended the ACC I ZEV standards to expire after model year 2025.  *See* Cal. Code Regs. tit. 13, § 1962.2(b)(1)(A) (2022).[2]  On September 15, 2025, CARB issued a notice of emergency rulemaking clarifying (through recodification) that it would still certify zero emission vehicles, in aid of compliance for those manufacturers who choose to certify to CARB's ACC I GHG standards.  *See* Cal. Code Regs., tit. 13, § 1962.2.1 (2026).  This rulemaking did not recodify the ACC I ZEV credit percentage requirement.  *See id.*; *see also id.* § 1962.2 (current).

GHG emission standards.  ACC I updated and integrated California's GHG emissions requirements for vehicles in model years 2017-2025 and subsequent.  78 Fed. Reg. at 2114.  California's standards operate on a fleetwide-average basis.  Thus, each automaker must sell a fleet of vehicles in California that, on average, produces

---

[2] California adopted that amendment after issuing a subsequent set of standards—called Advanced Clean Cars II (ACC II)—which included a new set of ZEV requirements applicable to model years 2026 and beyond. *See* Cal. Code Regs. tit. 13, § 1962.4(a) (2022).  EPA granted a waiver for the ACC II standards on December 17, 2024.  90 Fed. Reg. 642 (Jan. 6, 2025).  On June 12, 2025, the President signed a Resolution, passed by the House and Senate, that purported to disapprove the preemption waiver for ACC II.  The validity of this Resolution is subject to active litigation. *See, e.g., California v. United States*, Case No. 4:25-cv-04966 (N.D. Cal. filed June 12, 2025).

no more than the prescribed level of greenhouse gas emissions for the relevant model year.  Cal. Code Regs. tit. 13, § 1961.3(a).  Automakers can generate credits by selling fleets with average emissions below the standards or by selling certain zero-emission vehicles.  *Id.* § 1961.3(b)(1).  They can bank those credits for future compliance or sell them to other automakers.  *Id.* § 1961.3(b)(3).  The standards become stricter over time.  *Id.* § 1961.3(a)(1).  The ACC I GHG standards reached maximum stringency in vehicle model year 2025, and continue at 2025 stringency levels for "subsequent model years."  *See* Cal. Code Regs. tit. 13, § 1961.3(a)(1)(A) (2012).

Criteria pollutant standards.  ACC I also made the longstanding criteria pollutant standards for light-duty vehicles more stringent, beginning with model year 2015.  *See id.* § 1961.2 (2012).  Plaintiffs do not challenge the criteria pollutant standards in this suit.

**IV.    LEGAL CHALLENGES RELATING TO THE ADVANCED CLEAN CARS I STANDARDS**

California requested a Clean Air Act waiver for the ACC I standards in 2012.  EPA granted the waiver in early 2013, 78 Fed. Reg. at 2145, and nobody challenged that EPA decision or the underlying ACC I standards.  More than six years later, during the first Trump administration, EPA withdrew the parts of the 2013 waiver pertaining to the GHG and ZEV standards.  84 Fed. Reg. 51,310 (Sept. 27, 2019).  That withdrawal was challenged by California and other parties, and EPA reinstated the relevant portions of the waiver in March 2022.  87 Fed. Reg. 14,332 (Mar. 14, 2022).

Following the reinstatement, a group of states, led by Ohio, and various companies that produce or sell liquid fuels, as well as related trade associations, petitioned for review of EPA's 2022 waiver reinstatement decision.  The States argued that EPA's reinstatement violated equal sovereignty principles and was contrary to law, because the ACC I standards at issue were preempted by EPCA.  Fuel petitioners principally argued that EPA's reinstatement of the waiver contravened the Clean Air Act.  The court of appeals concluded that the States lacked standing to bring their

EPCA challenge and denied the equal sovereignty claim on the merits; and it concluded that the fuel petitioners lacked standing to bring their Clean Air Act challenge. *Ohio*, 98 F.4th at 294-96. The Supreme Court granted certiorari on the question of the fuel petitioners' standing, concluding that the fuel petitioners did have standing to challenge the reinstatement of the waiver, and remanded back to the D.C. Circuit. *Diamond Alternative Energy*, 606 U.S. at 105. That case has been in abeyance since before the instant suit was filed. *See Ohio v. EPA*, Case No. No. 22-1081 (D.C. Cir. filed May 12, 2022).

The United States filed the present suit, alleging the GHG standard and ZEV sales requirement of ACC I are preempted under EPCA, in March 2026.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a complaint on the basis that there is no subject matter jurisdiction, including a lack of standing. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). The party asserting jurisdiction has the burden of proving it exists. *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015); *Trans Union LLC v. Ramirez*, 594 U.S. 413, 430-431 (2021). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, as here, "the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction." *Id.*

"The district court resolves a facial attack" on standing under Rule 12(b)(1) "as it would a motion to dismiss under Rule 12(b)(6)," by determining whether the plausible allegations in the complaint, accepted as true, "are sufficient as a legal matter to invoke the court's jurisdiction." *Leite*, 749 F.3d at 1121. Applying the standards set forth in *Iqbal* and *Twombly*, the complaint must clearly allege each element of standing with "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Terenkian v. Republic of Iraq*,

8

694 F.3d 1122, 1131 (9th Cir. 2012) (applying *Iqbal* to allegations supporting jurisdiction).  Legal conclusions that are couched as factual allegations may be disregarded by the district court.  *See Iqbal*, 556 U.S. at 678–79.  And a court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC,* 733 F.3d 1251, 1254 (9th Cir. 2013), or "contradict matters properly subject to judicial notice," *Gonzalez v. Planned Parenthood of Los Angeles,* 759 F.3d 1112, 1115 (9th Cir. 2014).

## ARGUMENT

Parties who seek to invoke the jurisdiction of a federal court bear the burden of showing that they have Article III standing.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).  A plaintiff must plead facts sufficient to establish all three elements of standing as of the time it filed suit.  *Lujan*, 504 U.S. at 561, 569 n.4.  Specifically, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted).

These standing requirements apply equally to the federal government as they to do to any other private or government plaintiff: "the government must show that, like the private individual, it has such an interest in the relief sought as entitles it to move in the matter."  *United States v. Mattson*, 600 F.2d 1295, 1300 (9th Cir. 1979) (quoting *United States v. San Jacinto Tin Co.*, 125 U.S. 273, 285 (1888)).  Plaintiffs here have not met their burden.

## I. PLAINTIFFS LACK STANDING TO CHALLENGE THE ACC I ZEV STANDARDS (SECOND CAUSE OF ACTION)

Plaintiffs have not alleged any harm flowing to the United States from the ZEV standards sufficient to constitute injury-in-fact.  Nor can they.  The second cause of action challenges the zero emission vehicle percentage requirements of Cal. Code

9

Regs. tit. 13, § 1962.2(b), which terminated with model year 2025.  There can be no injury to any party stemming from standards that no longer impose any sales requirement, a reality Plaintiffs fail to acknowledge in their Complaint.  Plaintiffs' failure to allege any current or future injury from these standards, which applied only to vehicle sales in model years that ended before this suit began, is fatal to this claim.  Thus, Plaintiffs' second cause of action should be dismissed without leave to amend.  *Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012) (dismissal without leave to amend is appropriate when the court "determines that the pleading could not possibly be cured by the allegation of other facts").

### A.    Plaintiffs Can Plead Neither Injury nor Redressability Regarding Standards that Ceased Applying to Vehicle Sales in Model Year 2025

To establish injury in fact, a plaintiff must show that he or she suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo*, 578 U.S. at 339 (citation omitted).  For an injury to be particularized, the plaintiff must show that the challenged conduct "affect[s] the plaintiff in a personal and individual way."  *Id.* (internal quotation marks omitted).  That is, "a plaintiff cannot establish standing by asserting an abstract 'general interest common to all members of the public,' 'no matter how sincere' or 'deeply committed' a plaintiff is to vindicating that general interest."  *Carney v. Adams*, 592 U.S. 53, 59 (2020) (citation omitted).  This requirement "has not been limited to private individuals and organizations, but held to include governmental units as well."  *Mattson*, 600 F.2d at 1300; *see also San Jacinto Tin Co.*, 125 U.S. at 285.  This is because "federal courts do not issue advisory opinions about the law—even when requested by the President."  *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 378-79 (2024).

The United States has failed to identify any tangible impact of the challenged ZEV regulations that would constitute an injury in fact.  The full extent of Plaintiffs' claimed injury is that the regulations: (1) "threaten and harm the sovereign interest of

10

the United States in the supremacy, enforcement, and application of federal law," Compl. ¶ 6, such as by "alter[ing] the policy balance that EPCA struck, impos[ing] requirements that frustrate the methods Congress chose to achieve its goals, and prohibit[ing] vehicles that the federal fuel economy scheme allows," Compl. ¶ 74; and (2) "harm the interests of the United States in ensuring American consumers' access to and choice of reliable, affordable motor vehicles." Compl. ¶ 6. These conclusory allegations are insufficient to carry Plaintiffs' burden.

First, as the ZEV sales percentage requirement referenced in the Complaint has already ended, the operation of these standards cannot possibly be currently impeding the functions of the federal government. The relevant regulatory text is unambiguous—the Percentage ZEV Sales Requirements do not apply beyond light-duty vehicle Model Year 2025. Cal. Code Regs. tit. 13, § 1962.2(b). Plaintiffs did not initiate this suit until March 2026, at which point sales made pursuant to these standards had already happened, and future sales are unimpeded by these requirements. *See* Szabo Decl., RJN, Ex. A, at ¶ 9 (declaring on April 20, 2026, that "[i]t is public knowledge that manufacturers are currently selling model year 2026 vehicles and will transition to selling model year 2027 vehicles in the second half of the year"). Despite Plaintiffs' conclusory allegations to the contrary, it is not plausible to infer that a standard that is no longer governing vehicle sales could in any way "prohibit vehicles that the federal fuel-economy scheme allows" or otherwise "frustrate" that scheme. Compl. ¶ 74. Nor is it plausible to infer that these standards currently impact the price, reliability, and accessibility of vehicles presently on the market.[3] Compl. ¶ 6. The United States fails to allege any facts that could establish that standards which ceased to regulate new motor vehicle sales over a year ago are having *any* effect on the government's fuel-economy standards (or anything else),

---

[3] Nor is it even clear that such allegations could establish injury-in-fact for the United States, as "a plaintiff cannot establish standing by asserting an abstract general interest common to all members of the public, no matter how sincere or deeply committed a plaintiff is to vindicating that general interest on behalf of the public." *Carney*, 592 U.S. at 59 (cleaned up).

11

much less that an order invalidating these standards would redress any alleged injury caused by vehicles manufacturers produced and sold under these standards in model year 2025 and before.

And second, the mere existence of an allegedly preempted state law cannot create a sovereign injury to the federal government.[4]  *Cf. Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, 108 F.4th 1128, 1142 (9th Cir. 2024).  If the reverse were true, the remedy in preemption cases would be to require repeal or, at a minimum, to void the law.  But when courts "adjudge a state law preempted," they "do not render the law null and void in some ultimate sense…; rather, [the] judgment renders the law unenforceable in the case before [the court]."  *Close v. Sotheby's, Inc.*, 909 F.3d 1204, 1209 (9th Cir. 2018); *see also Driftless Area Land Conserv. v. Valcq*, 16 F.4th 508, 522 (7th Cir. 2021) ("[T]he federal judiciary … has no power to vacate the actions of state agencies.").

The recent decision in *United States v. California*, 2026 WL 784514, at *3-4, further illuminates.  In that case, the United States is alleging that the federal Egg Products Inspection Act preempts California laws and regulations governing the sale and shipment of eggs produced by hens confined in certain conditions.  *Id.* at *2.  The court dismissed the United States' first amended complaint on standing grounds, noting that "if [the plaintiff's] preemption theory is correct, the existence of California's laws and regulations governing egg sales and distribution in and of themselves do not harm" the plaintiff, because "'state laws that conflict with federal law are without effect.'"  *Id.* at *3 (quoting *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008)).  The fact that the state law at issue was enacted, and stays on the books, cannot violate a federal preemption clause because such a provision "is neither directed to nor

---

[4] Plaintiffs' claimed sovereign harms are in fact just "undisguised legal conclusions in search of substantiating facts." *United States v. California*, No. 2:25-CV-06230-MCS-AGR, 2026 WL 784514, at *3 (C.D. Cal. Mar. 18, 2026), as ultimately, their theory of injury depends on the validity of their preemption theory.  Defendants dispute that any standard in ACC I is preempted; however, there is no need to reach that issue here, as even accepted as true, the allegations are insufficient to establish standing.

12

violable by any State," and "the Supremacy Clause does not itself conjure a substantive right that … the United States may vindicate through suit." *Id.* at *4 (citing *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453 (2018)). Indeed in *Murphy*, the Supreme Court made clear that preemption provisions should be read to "confer[] on private entities . . . a federal right to engage in certain conduct subject only to certain (federal) constraints," but not a right to quash State lawmaking. 584 U.S. at 478-79. In other words, it is only the enforcement of a preempted law that can be enjoined, not the existence of the law itself. And as discussed above, the ZEV sales requirement is not being enforced against manufacturers regarding present or future vehicles sales.

Thus, the United States has failed to establish standing from the expired ZEV percentage requirements of ACC I.

### B. Plaintiffs Cannot Establish Standing on the Basis of Hypothetical Future ZEV Standards

Plaintiffs seem to allege that even if the ACC I zero-emission sales requirement is having no current effect, they can nevertheless maintain this suit to prevent injury from some future standards, "such as ACC III," that may contain similar provisions. Compl. ¶ 90, 93-94. But a legally cognizable injury must be both "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (citation omitted). The United States cannot allege any such injury from future standards that have not even been proposed, let alone adopted by CARB and authorized by the EPA. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (requiring injury that has "already occurred or [is] likely to occur soon"). Preemption cases concern whether "a state law, 'in [its] application to [a particular] case, come[s] into collision with an act of Congress,'" *Close*, 909 F.3d at 1209 (alterations in original) (quoting *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 210 (1824)). Thus, "when preemption is claimed, a court must pay careful attention to the particular provisions that a state or local entity seeks to impose." *Cal. Tow Truck Ass'n v. City & County of San Francisco*, 693 F.3d 847, 861 (9th Cir. 2012) (cleaned up). The United States can

13

neither establish standing, nor state a claim, to challenge a state law that has no particular provisions because it does not yet exist.  As such, the speculation of future injury from these hypothetical standards cannot provide the basis for standing in this suit.

And in any event, neither federal law, nor this Court, can prohibit, through preemption, a state legislative or rulemaking process.  *See Murphy*, 584 U.S. at 479-80.  So, the United States lacks standing to seek any relief that would stop the State from beginning (or completing) such a process.  The analysis in *Minnesota Auto Dealers Association v. Minnesota*, 520 F. Supp. 3d 1126, 1131 (D. Minn. 2021), is persuasive here.  The plaintiffs in that case sought "to enjoin [the defendants] from engaging in administrative rulemaking pertaining to motor vehicle greenhouse gas emissions standards in Minnesota," which plaintiffs alleged were preempted.  Concluding that plaintiffs had failed to establish an injury-in-fact and therefore lacked standing to bring the lawsuit, the district court observed that plaintiffs "neither alleged nor established that engaging in administrative rulemaking is or can be preempted by federal law—a contention that is contrary to law."  *Id.* at 1137 (quoting *Murphy*, 584 U.S. at 479-80).  Plaintiffs cannot use the Court to enjoin California's administrative process on the theory that that process may eventually result in a preempted standard.

Accordingly, the United States has failed to allege a cognizable theory of standing to assert its second cause of action, and there are no facts Plaintiffs could plead to cure those deficiencies.  The second cause of action should be dismissed without leave to amend.

## II.    PLAINTIFFS FAIL TO ESTABLISH STANDING TO CHALLENGE THE GHG STANDARDS OF ACC I (FIRST CAUSE OF ACTION)

The principles articulated above apply equally to Plaintiffs' cause of action challenging the GHG standards of ACC I.  *See Spokeo*, 578 U.S. at 339 (a plaintiff must show that he or she suffered an injury that is "'concrete and particularized' and 'actual

14

or imminent, not conjectural or hypothetical'"). And, while the GHG standards do continue past model year 2025 (plateaued at model-year-2025 stringency levels), Plaintiffs' allegations fail on many of the same grounds. Indeed, the United States does not allege any harm *specific* to the GHG regulations—rather, the federal government's alleged injury is attributed to both standards simultaneously. *See* Compl. ¶ 6 ("CARB's CO2 standards for light-duty vehicles and ZEV mandates threaten and harm the sovereign interest of the United States in the supremacy, enforcement, and application of federal law, as specifically enshrined in EPCA."); *id.* ("The CO2 standards and ZEV mandates also harm the interests of the United States in ensuring American consumers' access to and choice of reliable, affordable motor vehicles."). Such generalized allegations fail to meet Plaintiffs' pleading burden. *Cal. Tow Truck Ass'n*, 693 F.3d at 860 (Plaintiffs cannot establish injury on a collective basis, as the preemption analysis is undertaken "provision by provision"); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek").

The GHG standards of ACC I (adopted in 2012) have been applicable since vehicle model year 2017, plateauing at their maximum stringency over a year ago, with vehicle model year 2025. *See* Szabo Decl., RJN, Ex. A, at ¶ 9 (declaring on April 20, 2026, that "manufacturers are currently selling model year 2026 vehicles"). Yet Plaintiffs allege no facts that could plausibly support a concrete or particularized injury from these GHG standards at the time Plaintiffs filed suit in March 2026. One would expect that if there was concrete harm to the United States from the operation of the ACC I GHG standards, Plaintiffs could, and would, articulate it here, 14 years after the standards were first enacted. Particularly under these circumstances, Plaintiffs cannot rely on conclusory allegations that fail to describe any ongoing changes to the vehicle market *caused by the ACC I GHG standards* currently interfering with the operation of the federal standards, or any likely future harm; nor any other particularized harm; nor

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS (2:26-cv-00847-DJC-SCR)

that any an order from this Court could redress any such impact, given the state of the market today.

In *Diamond Alternative Energy*, the Supreme Court concluded that *fuel producers* had sufficiently established their standing when they filed suit *in 2022* to challenge a Clean Air Act waiver permitting enforcement of California's ACC I regulations. *Diamond Alternative Energy*, 606 U.S. at 104-05, 107-08. But that reasoning does not apply to the *United States*, when it filed suit *in 2026*. The Supreme Court found it "likely" that invalidating the waiver for California's ACC I regulations would result in at least "one dollar" of additional revenue for petitioners—and that alone was enough to establish the fuel producers' standing. *Id.* at 114. This reasoning does not translate here, for even if a plaintiff in 2026 could establish a change in the vehicle mix attributable to the ACC I GHG standards resulting in "one dollar" of additional revenue for the fuel producers, that injury would not equate to interference with the government's sovereign interests, or even to changes felt by consumers broadly. But in any event, Plaintiffs allege no specific facts akin to those presented to the Supreme Court.

As Judge Scarsi's decision in *United States v. California* illustrates, the United States cannot establish injury-in-fact merely through conclusory allegations of its "sovereign injury." 2026 WL 784514, at *3-4. As in that case, "nowhere in the complaint does Plaintiff provide any *facts* raising an inference that California's laws and regulations diminish the sovereignty of the federal government." *Id.* at *3 (emphasis added). And conclusory allegations about "American consumers' access to and choice of reliable, affordable motor vehicles," Compl. ¶ 6, does not overcome this deficiency, as such allegations establish only "an abstract general interest common to all members of the public…." *Carney*, 592 U.S. at 59 (cleaned up); *cf. United States v. California*, 2026 WL 784514, at *3, n.2 ("allegations that the subject laws and regulations harm working-class Americans by effectively inflating egg prices" does not satisfy the injury-in-fact requirement). That principle should especially hold here,

where the United States waited 14 years after promulgation of the GHG regulations to make its claim to vague "sovereign harm."

Finally, for the reasons already discussed in Section I.B above, *supra* 13-14, Plaintiffs cannot establish standing through the conjecture about some future standards, "like ACC III," that may interfere with federal activities in the future.  Compl. ¶¶ 59, 79, 91-92.

Plaintiffs have failed to plead particularized injury-in-fact arising from the GHG standards of ACC I.  Thus, Plaintiffs' first cause of action should also be dismissed.

<b>CONCLUSION</b>

The Complaint in this matter should be dismissed in its entirety.

Dated:  May 26, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
MYUNG J. PARK
Supervising Deputy Attorney General

*/s/ Caitlan McLoon*

CAITLAN MCLOON
Deputy Attorney General
*Attorneys for Defendants California Air Resources Board and Steven S. Cliff, in his capacity as the Executive Officer of the California Air Resources Board*

LA2026400455
68475470

17

## CERTIFICATE OF SERVICE

Case Name:    **United States of America, et al. v. California Air Resources Board, et al.**

Case No.:     **2:26-cv-00847-DJC-SCR**

I hereby certify that on <u>May 26, 2026</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

### DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>May 26, 2026</u>, at Los Angeles, California.

<table>
<tr><td>Beatriz Davalos</td><td>/s/ Beatriz Davalos</td></tr>
<tr><td>Declarant</td><td>Signature</td></tr>
</table>

LA2026400455
68345863