# Exhibit F

## SETTLEMENT AGREEMENT

1.      The California Air Resources Board ("**CARB**"), and Stellantis, hereinafter collectively referred to as the "**Parties**" or singularly as "**Party**," voluntarily enter into this Settlement Agreement (or "**Agreement**") based on the Parties' mutual interest in mitigating their respective risks and resolving potential legal disputes concerning California's greenhouse gas ("**GHG**") emission standards applicable to new light-duty motor vehicles and the authority of CARB and those states that have adopted California's GHG vehicle standards ("**Section 177 States**") to enforce such standards applicable to new light-duty motor vehicles manufactured or distributed by Stellantis for Model Years 2021-2026 in light of the potential for litigation regarding such standards, as discussed and defined below.

2.      The Parties enter into this Agreement to resolve potentially lengthy litigation involving the Parties.   As elaborated below, the Parties seek to settle and resolve claims and disputes regarding CARB's regulation of automotive GHG emission reductions during the Model Years ("**MYs**") subject to this Agreement and also seek greater certainty regarding continuing automotive GHG emission reductions and zero-emission vehicle requirements in light of the potential outcomes of pending litigation described below and the potential for future litigation involving the Federal Government, CARB, and the Section 177 States regarding CARB's GHG emission and zero-emission vehicle standards (collectively the "**Potential Litigation**"). This Agreement is based on the Mutual Understandings below.

## THE PARTIES

3.      The California Air Resources Board:  CARB is the state air regulator for California (Cal. Health and Safety Code § 39600 *et seq.*), and, among other things, sets vehicle emissions standards pursuant to state law (*see, e.g.*, 42 U.S.C. § 7543, Cal. Health & Safety Code §§ 43013, 43018.5).    CARB has promulgated GHG emission and zero-emission vehicle standards for the California light-duty vehicle fleet.   (*See* 13 CCR §§ 1961.3, 1962.2, 1962.4-1962.8).

4.      Stellantis: Solely for the purposes of the Settlement Agreement, including the Zero-Emission Technology Commitments referenced in Paragraph 38(A) and the Enforcement Discretion Letters, FCA US LLC ("**FCA**") and Maserati S.p.A ("**Maserati**") shall be referred to collectively as "**Stellantis**".  FCA and Maserati are both wholly owned subsidiaries of Stellantis N.V.  FCA and Maserati are manufacturers or distributers of light-duty motor vehicles for sale throughout the United States that in part are or may be subject to regulation by the United States Environmental Protection Agency ("**EPA**"), CARB, and the Section 177 States.  Consistent with the current practice of jointly reporting to EPA and to CARB fleet-wide GHG emissions values reflecting combined FCA and Maserati GHG emissions, the Settlement Agreement, including the Zero-Emission Technology Commitments referenced in Paragraph 38(A), shall apply only to FCA and Maserati, except with respect to Paragraph 28.

1

**DEFINITIONS**

5.      "**2022 ACC II ZEV Program**" encompasses the CARB light-duty vehicle Advanced Clean Cars II zero-emission vehicle standards and test procedures specified in 13 CCR § 1962.4-1962.8, with an effective date under California law of November 30, 2022.

6.      "**Agreement Balance**" means the amount of GHG credits available or deficits that apply to Stellantis at any given time for purposes of compliance with the Agreement, as calculated and tracked in accordance with Paragraph 34(A).

7.      "**CA Standards**" are the standards applicable to light duty vehicle GHG emissions set out at 13 Cal. Code of Regulations § 1961.3(a)-(g) and encompass all related aspects of California regulations and test procedures relevant to the implementation of those standards, including cross-references and documents incorporated by reference.

8.      "**Days**" means calendar days, unless otherwise specified.

9.      "**Emissions Benefit Balance**" is an accounting designed to ensure the integrity of the emission benefits of this Agreement.   The Emissions Benefit Balance will be calculated and tracked in accordance with Paragraph 34(B).

10.      "**Enforcement Discretion Letters**" refers to letters or directives that each Section 177 State issues to document its exercise of enforcement discretion, assurance of support, or other use of authority allowing Stellantis to comply with this Agreement to achieve the objectives of the CA Standards through Model Year 2026, which each state has adopted pursuant to Section 177 of the Clean Air Act.

11.      "**Executive Officer**" shall mean the person appointed by CARB pursuant to California Health & Safety Code § 39515.

12.      "**2018 Federal Program**" encompasses the EPA light-duty vehicle GHG standards and test procedures specified in Title 40 CFR Part 86 Subpart S, Section 86.1818-12 and Part 600 in place on July 1, 2018.

13.      "**Federal Program**" refers to all applicable light-duty vehicle GHG standards and test procedures, such as those specified in Title 40 CFR Parts 86 Subpart S, 1066 and 600, as may be amended from time to time, and as interpreted and implemented by EPA.

14.      "**SAFE Rule Part One**" encompasses the final actions promulgated by EPA and NHTSA and published at 84 Fed. Reg. 51,310 (Sept. 27, 2019).

15.      "**Section 177 States**" means, as of the time the Parties entered into this Agreement, the States of Colorado, Connecticut, Delaware, Maine, Maryland, Massachusetts, Minnesota, Nevada, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont and Washington.   These states, through their legislatures and duly authorized state regulatory agencies, have adopted GHG standards applicable to the light-duty vehicle fleet identical to CA Standards pursuant to Section 177 of the Clean Air Act.    Any additional state (or district or territory of the United States) that adopts the CA Standards after the Effective Date of this

Agreement, as defined in Paragraph 48, will be considered a Section 177 State for purposes of this Agreement at such time as that body is authorized to enforce those standards in accordance with Section 177 of the Clean Air Act.

16.     "**Stellantis**" means FCA US LLC and Maserati S.p.A.

17.     "**Trust Account**" means an account established by CARB, with any appropriate input from the Section 177 States, in which funds may be deposited to address a GHG Credit Shortfall Breach, as described in Paragraph 40 of this Agreement, and which funds are for use to promote zero-emission technology or otherwise to reduce vehicle GHG emissions.

18.     "**Zero-Emission Technology**" vehicle means a battery electric vehicle ("**BEV**"), a fuel cell electric vehicle ("**FCEV**"), or a plug-in hybrid electric vehicle ("**PHEV**") as that term is defined in the 2018 Federal Program.

19.     "**Zero Emission Vehicle**" ("**ZEV**") means a vehicle that produces zero exhaust emissions of any criteria pollutant (or precursor pollutant) or greenhouse gas, excluding emissions from air conditioning systems, under any possible operational modes or conditions.

20.     For clarity and to provide certainty, unless otherwise defined herein, any terms not specifically defined in this Settlement Agreement are as defined in the Federal Program, and shall be interpreted to have the commonly-understood meanings of such terminology in the context of light duty vehicle GHG regulatory programs.

## MUTUAL UNDERSTANDINGS

21.     CARB and Federal GHG Standards.    In 2013, EPA issued CARB a waiver of federal preemption permitting enforcement of its CA Standards pursuant to Section 209 of the CAA.    78 Fed. Reg. 2,112 (Jan. 9, 2013).    EPA promulgated the 2018 Federal Program regulations in 2012, establishing federal GHG standards for Model Years 2022-2025.    77 Fed. Reg. 62,624 (Oct. 15, 2012).    The CA Standards included a "deemed to comply" provision such that compliance with the 2018 Federal Program was deemed as compliance with the CA Standards.    13 C.C.R. § 1961.3(c).    Likewise, compliance with the 2018 Federal Program qualified as compliance in Section 177 States.    In April 2018, EPA announced it would propose rolling back its GHG standards, and EPA finalized that action in April 2020.    85 Fed. Reg. 24,174 (Apr. 30, 2020).    EPA also finalized an action purporting, among other things, to revoke California's waiver for the CA Standards.    84 Fed. Reg. 51,310 (Sept. 27, 2019).    In September 2018, CARB amended § 1961.3(c), which CARB asserts was done to clarify that "deemed to comply" was never meant to permit federal rollbacks to weaken standards in California.    When the relaxed federal regulations were promulgated in April 2020, compliance with the revised federal program was no longer deemed as compliance with the CA Standards.    EPA again reconsidered and strengthened its GHG standards for MYs 2023 to 2026 (86 Fed. Reg. 74434 (Dec. 30, 2021)) and restored California's waiver for the CA Standards (87 Fed. Reg. 14,332 (Mar. 14, 2022)); both of those actions have been challenged and are currently awaiting decision from the U.S. Court of Appeals for the District of Columbia Circuit (*Texas v. EPA*, No. 22-1031 (filed Feb. 28, 2022)); *Ohio v. EPA*, No. 22-1081 (filed May 12, 2022)).    Meanwhile, EPA has

3

proposed further strengthened GHG standards for MYs 2027-2032 (88 Fed. Reg. 29,184 (May 4, 2023)), with a final rule expected sometime this year.

22.    <u>CARB ZEV Requirements</u>.  The 2013 waiver also encompassed CARB's ZEV requirements for MYs 2018-2025, which established, among other things, increasing percentages of new vehicle sales in California to be ZEVs.  In 2022, CARB adopted the 2022 ACC II ZEV Program, continuing the increasing percentages of new vehicle sales of ZEVs until 100% in 2035 (with flexibilities such as credits and consideration of PHEVs) and setting assurance measures to ensure ZEVs operate as needed to ensure the emissions are reduced as intended.  California has requested a waiver of federal preemption for the 2022 ACC II ZEV Program; EPA is currently reviewing that request and held a public comment period on that request.  (88 Fed. Reg. 88,908 (Dec. 26, 2023).)

23.    <u>Authority of Agencies to Enter into this Settlement Agreement and Otherwise Exercise Enforcement Discretion</u>.  CARB takes the position that its authority pursuant to Health & Safety Code § 43213 among other authorities to enforce the CA Standards was illegally restricted by SAFE Rule Part One, and further takes the position that it and the Section 177 States may enforce their regulations with the waiver reinstated.  CARB and the Section 177 States may exercise enforcement discretion with respect to such authority, including entering into settlement agreements and issuing Enforcement Discretion Letters or other enforcement discretion directives.  Moreover, CARB has authority to enter into a contract with a regulated entity or to take other actions necessary to further its statutory purposes as needed to meet climate and public health targets.  *See generally* Cal. Health & Safety Code § 39600 et seq.

24.    <u>Risks and Benefits</u>.  This paragraph describes the Parties' understandings of important risks and benefits relevant to this Agreement; it is not intended as a comprehensive statement of all such risks and benefits.  As set forth in Paragraphs 1 and 2 above, the Parties seek to avoid litigation between Stellantis and CARB relating to compliance with, and claims Stellantis maintains it could bring against CARB relating to CARB's authority to enforce, the CA Standards.  CARB disputes the validity of any such claims, but in the interest of avoiding potentially costly litigation, among other reasons, enters into this Agreement.  Further, in light of the ongoing and pending litigation over the restoration of CARB's waiver, as well as potential further federal regulatory actions, Stellantis seeks additional certainty regarding the GHG standards that will be enforced in California for MYs 2021–2026.  Regulatory uncertainty subjects Stellantis to considerable enforcement risk and complicates its compliance planning. Therefore, Stellantis enters into this Agreement to ensure, among other reasons, that it has the ability to (i) make long-term product planning decisions and investments with confidence; (ii) satisfy market demand and production realities; and (iii) comply with regulatory requirements for MYs 2021–2026.  This Settlement Agreement offers Stellantis flexibility and greater certainty to plan for its compliance with applicable GHG emission standards in the United States.  Claims Stellantis maintains it could bring against CARB in Potential Litigation, among other factors, also entail risks that California and the Section 177 States may not achieve the pollutant reduction goals they expected to result from the CA Standards.  Entry into this Settlement Agreement is consistent with those goals, including goals set out in the Assembly Bill 32 Scoping Plan, and will deliver environmental benefits commensurate with those goals that may not be realized in the absence of an agreement.  Each Section 177 State is expected to make consistent judgments, which may be reflected in the Enforcement Discretion Letters.

4

Exhibit F to Defendants' Request for Judicial Notice

25. <u>Commitments</u>.  In light of the risks associated with complying with the CA Standards and resolving the disputes regarding the validity of those standards set forth above, and of the promises and facts set forth herein, the Parties desire to voluntarily resolve these matters by means of this Settlement Agreement.  Stellantis commits to comply with this Settlement Agreement.  Subject to the conditions and terms specified in this Settlement Agreement, CARB commits to exercise its enforcement discretion to accept Stellantis' compliance with the terms of this Settlement Agreement as an agreed upon compliance plan for the CA Standards for MYs 2021 through 2026.  In the event CARB cannot implement or enforce its 2022 ACC II ZEV Program due to a judicial or federal action, Stellantis commits to the ZEV Commitments in Paragraph 35 and CARB commits to accept compliance with this Agreement as satisfying the 2022 ACC II ZEV Program for Model Year 2026 through Model Year 2030.  CARB further accepts this Agreement as a contractual commitment.  During the term of this Settlement Agreement, CARB will not enforce the (1) the CA Standards or (2) if such terms are triggered, the 2022 ACC II ZEV Program with regard to Stellantis using available enforcement mechanisms, and CARB instead shall enforce the terms of this Settlement Agreement solely in accordance with the enforcement provisions and remedies herein.

26. <u>Section 177 States.</u>  The Parties recognize that each Section 177 State may issue an Enforcement Discretion Letter that allows Stellantis to comply with this Agreement to achieve the objectives of the CA Standards in each Section 177 State through Model Year 2026.  Through any respective Enforcement Discretion Letters, each Section 177 State may commit to exercise enforcement discretion in lieu of enforcing the CA Standards, as adopted, based on Stellantis' entry into this Agreement.  As a basis for entering into this Agreement, Stellantis anticipated that each Section 177 State will exercise its enforcement discretion.

27. <u>No Effect on Federal Law or Law of Other States</u>.  The Parties to this Agreement do not intend to, and this Agreement does not, alter either Party's obligations under federal law, or impose on Stellantis compliance obligations with respect to sales or related activities in any individual state.

**AGREED SUBSTANTIVE TERMS**

28. <u>Litigation Commitments</u>.  Stellantis, on behalf its parent companies and all subsidiaries and affiliates, will not challenge or seek to undermine this Agreement, the CA Standards for MYs 2021 through 2026 and the corresponding standards in Section 177 States, CARB's Advanced Clean Cars II ("ACC II") regulations or waivers granted by EPA for the CA Standards or ACC II.  Given California's authority under the Clean Air Act, Stellantis, on behalf of its parent companies and all subsidiaries and affiliates, recognizes and agrees not to oppose the legality of CARB's Advanced Clean Cars I ("ACC I") and ACC II regulations and the associated authority for its EPA Section 209 waivers.  Stellantis will, to the extent possible under applicable trade association bylaws, oppose participation in any such challenges by any trade associations to which it belongs and avoid providing resources for any such challenges.  Each Party agrees to support the validity of this Agreement in the event of third-party challenges.

5

Exhibit F to Defendants' Request for Judicial Notice

29.    Greenhouse Gas Fleet Commitments.  Stellantis agrees to maintain an average yearly reduction in GHG emissions from its fleet sold nationwide (light-duty passenger cars, light-duty trucks, and medium-duty passenger vehicles) for model years 2021 through 2026, in accordance with the following:

(A)    The target Carbon-Related Exhaust Emission (CREE) value for Stellantis's fleet shall be calculated separately for passenger cars and trucks utilizing the footprint curves defined below.

(B)    Coefficients defining the footprint curves are identified in the tables below.

(i)    For vehicles with a footprint equal to or smaller than the footprint identified in the Minimum Footprint column, the target CREE value in units of grams per mile for the corresponding model year is the value listed in the Minimum Footprint column.

(ii)    For vehicles with a footprint greater than the Minimum Footprint and less than the Maximum Footprint, the target CREE value in units of grams per mile for each vehicle for the corresponding model year shall be calculated by multiplying the footprint of the vehicle by the value in column (a) and adding the value in column (b) and rounding the result to the nearest tenth of a gram per mile.

(iii)    For vehicles with a footprint equal to or greater than the footprint identified in the Maximum Footprint column, the target CREE value in units of grams per mile for the corresponding model year is the value listed in the Maximum Footprint column.

| Passenger Car Curve Coefficients | | | | |
|---|---|---|---|---|
| Model year | Minimum Footprint $\leq 41.0\,ft^2$ | (a) | (b) | Maximum Footprint $\geq 56.0\,ft^2$ |
| 2021 | 157.0 | 3.84 | -0.4 | 215.0 |
| 2022 | 150.0 | 3.69 | -1.10 | 205.0 |
| 2023 | 143.0 | 3.54 | -1.80 | 196.0 |
| 2024 | 137.0 | 3.40 | -2.50 | 188.0 |
| 2025 | 131.0 | 3.26 | -3.2 | 179.0 |
| 2026 | 114.3 | 3.11 | -13.1 | 160.9 |

6

| | | | | Maximum Footprint | |
| Light Truck Curve Coefficients | | | | | |
| Model year | Minimum Footprint $\leq 41.0$ ft$^2$ | (a) | (b) | Greater than or equal to: (ft$^2$) | Value |
|---|---|---|---|---|---|
| 2021 | 195.0 | 4.28 | 19.8 | 73.5 | 335.0 |
| 2022 | 186.0 | 4.09 | 17.8 | 74.0 | 321.0 |
| 2023 | 176.0 | 3.91 | 16.0 | 74.0 | 306.0 |
| 2024 | 168.0 | 3.74 | 14.2 | 74.0 | 291.0 |
| 2025 | 159.0 | 3.58 | 12.5 | 74.0 | 277.0 |
| 2026 | 141.8 | 3.41 | 1.9 | 74.0 | 254.4 |

30.    Flexibilities to Promote Zero Emission Technology.

(A)    [Reserved]

(B)    Zero Emission Technology vehicles for MY2020 through MY2026 shall utilize a value of 0 grams per mile to represent the emissions of FCEVs and BEVs and the proportion of electric operation of PHEVs that is derived from electricity that is generated from sources that are not onboard the vehicle.

(i)    For BEVs and FCEVs, 0 grams per mile shall be used as the CREE value for the vehicle's performance in compliance calculations.

(ii)    For PHEVs, 0 grams per mile shall be used as the CREE value to represent the proportion of electric operation of a vehicle that is derived from electricity that is generated from sources that are not onboard the vehicle.  For ease of understanding, such proportion of operation shall be calculated in accordance with the 2018 Federal Program.

31.    Air Conditioning (A/C) Related Credits and Off-Cycle Credits.

(A)    Except as noted in Paragraph 31(A)(vi) below, for all requested A/C and off- cycle credits:

Exhibit F to Defendants' Request for Judicial Notice

(i)      Stellantis should notify CARB of its intent to use such credits in its pre- model year report submitted no later than December 31 of the calendar year two years before the model year;

(ii)      Stellantis may submit such requests and supporting data and documentation prior to or during the applicable model year to facilitate earlier review and approval by CARB; and

(iii)      Stellantis shall submit such requests and supporting data and documentation for review and approval by CARB no later than the submittal of the end of model year report by May 15 following the model year.   Submitted data shall include identification and sales volumes of the vehicle model(s) and configurations that have specific technologies applied and the credits claimed for each technology along with documentation supporting the claimed credit value for each technology.

(iv)      In general, approved credits are valid through the MY2026. Stellantis will be required to newly apply for and CARB will determine an appropriate value for credits on MY2027 and later vehicles.   Where specifically noted, credits may be approved on a more limited basis and/or conditioned on Stellantis collecting and submitting additional data from actual vehicle operation and/or testing to support the approved credits.

(v)      Except as specifically noted in this Agreement, the provisions of the 2018 Federal Program apply for determining credits for A/C leakage and efficiency improvements, off-cycle technologies, and full-size pickup hybrid technology as well as exhaust emission performance $CO_2$ equivalent credits or debits from $N_2O$ and/or $CH_4$ emissions.

(vi)      For A/C and off-cycle technologies previously granted credits to Stellantis by EPA before January 1, 2024 through explicit approval or by EPA for MY2024 or earlier via acceptance of Stellantis's end of model year report, and where EPA continues to grant the identical credit values to Stellantis, CARB shall grant Stellantis the same credit values subject to the same, if any, limitations by EPA (*e.g.*, the inclusion or exclusion of a specific credit towards a maximum cap for that technology).

(vii)      All MY2025 and later model year credits are subject to CARB acceptance in accordance with this Agreement and the established approval criteria and practice in the Federal Program.   In its review of credits for approval, the Parties intend that CARB will remain aligned with EPA to the extent possible in accordance with good engineering judgment and technical rationale.   However, where appropriate to promote faster adoption of new technologies, CARB may independently approve credits prior to acceptance by EPA.

(B)      For MY2020 through MY2026 off-cycle credits that Stellantis selects from predefined values assigned in the 2018 Federal Program:

8

(i)      The maximum allowable decrease in Stellantis's fleet emissions from the use of such credits may not exceed 15.0 grams per mile.

(ii)      For thermal control technologies, the existing caps of 3.0 grams per mile for passenger cars and 4.3 grams per mile for light trucks shall apply on a per vehicle basis (*e.g.*, no individual car or truck shall receive credits in excess of the cap).

(iii)      The predefined values available for use by Stellantis will also include:

(1)      A credit value of 1.1 grams per mile is available for passenger cars and light trucks that utilize an advanced A/C compressor with an improved efficiency relative to fixed-displacement compressors derived from improved internal valve systems that optimize the internal refrigerant flow across the range of compressor operator conditions through the addition of a variable crankcase suction valve.   Except as noted in Paragraph 31(E)(ii) below, these credits shall be counted towards the A/C efficiency per vehicle caps of 5.0 and 7.2 grams per mile for passenger cars and light trucks, respectively.

(2)      A credit value is available for passenger cars and light trucks that utilize a high efficiency alternator.    The credit value shall be 0.16 grams per mile for each one percent of improvement in Verband der Automobilindustrie (VDA) efficiency above a baseline of 67 percent efficiency (*e.g.*, if a high efficiency alternator achieves 69 percent VDA efficiency, the credit value would be 0.32 grams per mile calculated as $(69 - 67) * 0.16 = 0.32$). VDA efficiency is the ratio of the alternator output power to the power supplied to the alternator, as measured using the VDA efficiency measurement methodology and expressed as a whole number percent from 68 to 100.  The Parties agree that further detail regarding these calculations is provided at EPA-HQ-OAR-2018-0283-0706 "Potential Off-cycle Menu Credit Levels for High Efficiency Alternators and Advanced Air Conditioning Compressors", memo from EPA (Aug. 1, 2018).

(C)      For MY2021 through MY2026 off-cycle credits that Stellantis utilizes the 5- cycle test method to determine the amount of the credit:

(i)      Stellantis shall provide test data showing the 5-cycle and 2-cycle combined city/highway test results for with and without the off-cycle credit technology active.

(ii)      The amount of off-cycle credit shall be the difference of the 5-cycle testing with and without the technology active less the difference of the 2-cycle testing with and without the technology active to ensure the credit reflects an incremental amount above and beyond what is already accounted for  in the 2-cycle testing.

(D)      For MY2021 through MY2026 off-cycle credits that Stellantis requests CARB approval of through a special test procedure to quantify the credit:

9

(i)       Upon receipt of a completed application with all confidential business information redacted, CARB may provide public notice to interested parties of receipt of such an application and make it available for review and comment.    CARB may provide at least 30 days of public review and  identify a method for parties to submit their comments.    After the comment period, the applicant and/or CARB may make modifications as needed to address relevant issues before issuing a final approval.  A version of the final approval, with any confidential business information redacted, may also be made publicly available by CARB for reference.

(ii)       For identical technologies previously approved by CARB during the term of this Agreement or approved by EPA prior to January 1, 2024, Stellantis may utilize the identical special test procedure/methodology as was previously used to determine the appropriate credit value for its specific vehicle(s).  If Stellantis elects this option, CARB may omit the notice and comment procedure of Paragraph 31(D)(i) above.

(iii)       For thermal control technologies, any credit determined under the special test procedures shall be applied towards, and may not exceed, a maximum value for the sum of all applied thermal control technologies of 3.0 grams per mile for passenger cars and 4.3 grams per mile for light trucks.

(E)       For MY2021 through MY2026 credits related to air conditioning system efficiency improvements:

(i)       If Stellantis uses predefined values or 5-cycle testing to demonstrate the credit value of the applicable technology, the maximum credits available are 5.0 grams per mile for a passenger car and 7.2 grams per mile for a light truck and shall apply on a per vehicle basis (*e.g.*, no individual car or truck shall receive credits in excess of the cap).

(ii)       In general, the maximum credit limits of 5.0 grams per mile for a passenger car and 7.2 grams per mile for a light truck also apply to and include technologies where Stellantis uses special testing approved by CARB to demonstrate the credit value of the applicable technology.  However, if Stellantis performs such special testing on a vehicle or system that has already met the credit limit by utilization of other technologies and demonstrates that the added technology still provides additional measurable GHG reductions, credits beyond the limit commensurate with the benefits will be granted by CARB.

(F)       Additional provisions for MY2021 through MY2026 vehicles:

(i)       To support the development of streamlined application processes for MY2027 and later vehicles:

(1)       Applications to determine the preliminary credit value for eligible off- cycle technologies on MY2021 through MY2026 vehicles may be submitted by automotive suppliers.  However, only applications accompanied by

10

a letter of endorsement from Stellantis or another manufacturer subject to a similar agreement will be considered for approval by CARB.

(2)    Applications by suppliers may be based on the 5-cycle testing method or the special testing method to determine the appropriate credit value.  Depending on the technology, the preliminary credit value may be an absolute value or a scaled value based on a parameter determined to be correlated to its benefit.

(3)    For technologies assigned a preliminary credit value from an approved supplier application, Stellantis shall request CARB approval of the use of the technology.  CARB shall approve the use of the credit value upon Stellantis providing sufficient information to confirm the implementation of the technology is consistent with the supplier's application.

(4)    CARB may approve such applications on a limited basis by model year and vehicle application and/or require testing or other data collection from the supplier or Stellantis to verify the appropriateness of the credit value.

(ii)    Ineligible technologies

(1)    Off-cycle credits may not be approved for technologies that are integral or inherent to the basic vehicle design, such as engine, transmission, mass reduction, passive aerodynamic design, and tire technologies.  Technologies installed for non-off-cycle emission-related reasons or that otherwise would have been installed for purposes of reducing emissions (directly or indirectly) over the test cycles for compliance with the GHG standards are also not eligible as they would be considered part of the baseline vehicle design.  Off-cycle credits may not be approved for crash-avoidance technologies, safety critical systems or systems affecting safety-critical functions, or technologies designed for the purpose of reducing the frequency of vehicle crashes.  Off-cycle credits may not be earned for technologies installed on a motor vehicle to attain compliance with any vehicle safety standard.

(2)    Waste heat, as used for active warm-up off-cycle credits may not be used for MY2023 and later, unless it meets active warm-up requirements published in 40 CFR §§ 86.1869-12(b)(4)(v) and (b)(4)(vi).

(3)    With the exception of A/C-related technologies for cooling the cabin or occupants, technologies that have predefined credit values, and technologies for Zero Emission Technology vehicles, off-cycle credits may not be granted for non-powertrain or non-propulsion technologies including technologies inherent to the design of occupant comfort and entertainment features such as passenger or cabin heating, interior displays or components, infotainment components, etc.  For purposes of this paragraph, technologies that are designed to recapture energy created by the powertrain that otherwise would be lost (*e.g.*,

11

through heat or mechanical friction during deceleration or braking events) will be considered powertrain technologies.

       (4)    For Zero Emission Technology vehicles, ineligible technologies will include displays, infotainment systems, and other items not directly related to propulsion or battery conditioning.

32.    Certification.  Prior to certification, Stellantis agrees to provide CARB with all emission data necessary to calculate CREE levels for each emission data vehicle representing a test group submitted to CARB for certification to CARB's criteria pollutant emission standards (title 13, CCR § 1961.2).

33.    Compliance.

(A)    Unless it is otherwise specified in this Agreement that provisions of the 2018 Federal Program apply, EPA changes during the term of this Agreement in the Federal Program regulations, including but not limited to test procedures and calculation methodologies, will automatically apply for purposes of this Agreement unless either Party notifies the other Party of its belief that such changes will have a material impact on the stringency of the GHG commitments.  Following such notification, Stellantis and CARB shall in good faith confer in accordance with Paragraph 36 to reach a mutually acceptable resolution.  The Party seeking a departure from changes to the Federal Program shall 1) explain the basis for its position that the changes made by EPA will have a material impact on the stringency of the GHG commitments, and 2) propose a technical modification in accordance with Paragraph 36.  It is the intent of the Parties that any resolution to address a material impact on stringency due to changes EPA makes in the Federal Program regulations will minimize disruption or burdens on Stellantis's implementation of testing and related administrative requirements.  Except where the 2018 Federal Program is specified in this Agreement and for changes to the Federal Program for which a Party provides notification under this paragraph, the Parties intend that Stellantis will be able to utilize the same test procedures and calculation methodologies to generate the required data for compliance with this Agreement and the Federal Program, including but not limited to any revisions related to the phase-in of the use of E10 test fuel resulting from EPA's Vehicle Test Procedures Adjustments for Tier 3 Certification Test Fuel rulemaking, proposed at 85 Fed. Reg. 28,564 (May 13, 2020).

(B)    Compliance under this Agreement is determined by first calculating compliance based on CREE performance relative to the standard.  Air conditioning-related, off-cycle, and full-size pickup credits as well as applicable debits for $N_2O$ and/or $CH_4$ emissions are then separately calculated and added to the calculated CREE performance credits or debits.

(C)    No later than May 15 following the model year, Stellantis shall provide CARB with all data and technical documentation to support a calculation of compliance for the applicable model year including:

(i)    Sales and footprint data to calculate Stellantis's target CREE fleet value.  Sales data includes final combined and individual state volumes of vehicles produced and delivered for sale for each model type and footprint for California, the

Exhibit F to Defendants' Request for Judicial Notice

District of Columbia, and all states that have adopted California's greenhouse gas emission standards for that model year pursuant to section 177 of the federal Clean Air Act (42 U.S.C. § 7507).

(ii)    Sales, vehicle performance data, and supporting information for all credits requested for the model year to calculate Stellantis's achieved fleet CREE performance.

(iii)    The "**Agreement ABT Calculator**" provided by CARB, as may be updated from time to time upon written agreement of the Parties, populated with data for the applicable model year to support Stellantis's calculation of compliance and tracking of credits and deficits.

34.    <u>Banking of Credits and Deficits</u>.

(A)    Agreement Balance.

(i)    Starting Balance: Stellantis will enter the Agreement with a value of credits (or deficits) in megagrams of $CO_2$ for its Agreement credit balance equal to its 2018 Federal Program credit balance as calculated at the conclusion of MY2020 (for MY2011 through MY2020) with the following adjustments:

(1)    The cap for off-cycle credits based on predefined (menu) values will be 15 g/mi for MY2020 such that if Stellantis had exceeded the 10 g/mi cap in MY2020 and not been awarded full benefit of the applied technologies, an adjustment would be made to its credit balance to reflect the higher cap.

(2)    Federal GHG credits acquired in the 2018 Federal Program from a ZEV-only manufacturer prior to submittal of the end of year report for MY2021 shall be added to the Agreement credit balance with the same credit vintage and life as assigned in accordance with the 2018 Federal Program.

(ii)    Calculation of Agreement Balance.  For MY2021 through MY2026, Stellantis's Agreement credit balance shall be calculated per the requirements of this Agreement.

(1)    As specified in Paragraph 33(A) above, compliance is calculated first based on actual performance and then all earned credits (*e.g.*, A/C, off- cycle) per this Agreement for the specific model year for which Stellantis is subject to GHG fleet commitments under this Agreement.

(2)    If Stellantis has a surplus (credits earned beyond its obligation) after the model year compliance calculation, those credits shall be added to the Agreement Balance in accordance with the averaging, banking, and trading ("**ABT**") provisions of the 2018 Federal Program.

(3)     If Stellantis has a deficit after the model year compliance calculation, then those deficits shall be added to the Agreement Balance in accordance with the ABT provisions of the 2018 Federal Program.

(4)     If Stellantis participated in any Agreement credit transactions (*e.g.,* sale, purchase) or used Agreement credits to satisfy Agreement Balance deficits, then those transactions and usage shall be recorded in the Agreement Balance in accordance with ABT rules.  Except as specified in Paragraph 34(A)(i)(2) for Federal Program credits acquired from ZEV-only manufacturers prior to the end of MY 2021, Federal Program credit transactions for model years subject to standards specified in this Agreement may not be recorded in the Agreement Balance.  Regarding Federal Program credits earned from model years after the expiration or early termination of this Agreement and used to resolve Stellantis's Agreement Balance deficits carried forward into model years after the expiration or early termination of this Agreement in accordance with Paragraph 34(C)(iv), such Federal Program credits shall be recorded in the Agreement Balance.

(B)     Emissions Benefit Balance.

(i)     Purpose: To ensure the integrity of the emission benefits of this Agreement, Stellantis shall track and report its Emissions Benefit Balance to CARB as calculated in accordance with this Paragraph 31. If the stringency of the MY2023-2026 Federal Program is reduced, the Parties agree to confer in good faith to assure the emissions benefits of the Agreement represented by the Emissions Benefit Balance are achieved.

(ii)     Starting Balance: The starting balance for the Emissions Benefit Balance shall be equal to Stellantis's starting Agreement Balance.

(iii)     Calculation of Emissions Benefit Balance through MY2026.  For MY2021 through MY2026, Stellantis's Emissions Benefit Balance will be calculated as follows:

(1)     Add in, per ABT rules, credits (or deficits) determined from the Agreement model year compliance calculation for MY2021.

(2)     Add in, per ABT rules, Agreement credit transactions that occurred between end of the previous model year and end of MY2021.

(3)     Add in, per ABT rules except as noted below in Paragraph 34(B)(iii)(4), applicable Federal Program credit transactions that occurred between end of the previous model year and end of MY2021.  For this requirement, applicable transactions only include purchase and sale transactions of Federal Program credits.  Federal Program credits for model years subject to standards specified in this Agreement earned by Stellantis or used by Stellantis to

14

resolve Federal Program deficits have no impact on the Emissions Benefit Balance.

(4)    Except for Federal Program credits acquired from ZEV-only manufacturers in accordance with Paragraph 34(A)(i)(2), MY2021 through MY2026 Federal Program credits acquired by Stellantis and recorded as an applicable transaction in the Emissions Benefit Balance per Paragraph 34(B)(iii)(3) may not be utilized to resolve MY2024, MY2025, and/or MY2026 Emissions Benefit Balance deficits carried forward in accordance with Paragraph 34(C)(iii).

(5)    Repeat "Calculation of Emissions Benefit Balance through MY2026" above at the end of each successive model year for MY2022 through MY2026, substituting the applicable model year for MY2021.

(iv)    Calculation of Emissions Benefit Balance post MY2026 or Earlier Termination.  Subject to the resolution of Stellantis's Emissions Benefit Balance obligations in accordance with Paragraph 34(B)(vi), for MY2027 and subsequent model years (or substituting earlier model years in this paragraph as appropriate in the case of early termination of this Agreement pursuant to Paragraph 36), Stellantis's Emissions Benefit Balance will be calculated as follows:

(1)    At the end of MY2027, add in, per ABT rules, Agreement credit transactions that occurred between end of the previous model year and end of MY2027 only for transactions involving MY2022 through (including) MY2026 vintage Agreement credits.

(2)    At the end of MY2027, add in, per ABT rules, Federal Program credit transactions and Federal Program credits that were used by Stellantis to satisfy any Federal Program deficits that occurred between end of the previous model year and end of MY2027 only for transactions or usage involving MY2022 through (including) MY2026 vintage Federal Program credits.

(3)    At the end of MY2027, if any MY2027 Federal Program credits were used by Stellantis to resolve Stellantis's Agreement Balance deficit carried forward from MY2024, MY2025, and/or MY2026 in accordance with Paragraph 34(C)(iv), add in, per ABT rules, credits (or deficits) determined from the Federal Program compliance for MY2027.

(4)    At the end of MY2027, add in, per ABT rules except as noted in Paragraph 34(B)(iv)(5), Federal Program credit transactions and Federal Program credits that were used by Stellantis to satisfy any Federal Program deficits of Stellantis that occurred between end of the previous model year and end of MY2027 only for transactions involving the same model year vintage credits as those used to resolve an Agreement Balance deficit carried forward from MY2024, MY2025, and/or MY2026 in accordance with Paragraph 34(C)(iv) (*e.g.*, include MY2027 and MY2028 vintage credit transactions and usage if both

15

MY2027 and MY2028 Federal Program credits were used to resolve Stellantis's Agreement Balance deficits).

(5) Except for Federal Program credits acquired from ZEV-only manufacturers in accordance with Paragraph 34(A)(i)(2), MY2021 through MY2026 Federal Program credits acquired by Stellantis and recorded as an applicable transaction in the Emissions Benefit Balance per Paragraph 34(B)(iii)(3) may not be utilized to resolve MY2027 or subsequent Emissions Benefit Balance deficits incurred due to Federal Program compliance, credit transactions, or usage recorded in accordance with Paragraphs 34(B)(iv)(3) and 34(B)(iv)(4).

(6) Repeat "Calculation of Emissions Benefit Balance post MY2026 or Earlier Termination" at the end of each successive model year for latest applicable year (possibly as late as MY2034), substituting the applicable model year for MY2027.

(v) Federal Program credits that Stellantis may permanently retire or otherwise remove without being used from its Federal Program credit balance may be used towards satisfying Stellantis's Emissions Benefit Balance obligations in lieu of tracking such credits in the Emissions Benefit Balance through to their expiration. Stellantis and CARB may agree that Emissions Benefit Balance obligations satisfied in this manner will terminate Stellantis's corresponding Emissions Benefit Balance reporting requirements.

(vi) Recognizing the uncertainty of regulatory requirements applicable following the model years covered in the Agreement, Stellantis and CARB desire to maintain the integrity of the environmental benefits of this Agreement while not disadvantaging Stellantis with regard to future regulatory compliance obligations. Therefore, prior to the expiration or upon early termination of this Agreement, Stellantis and CARB shall in good faith confer to reach mutually acceptable agreement with respect to Stellantis's Emissions Benefit Balance obligations. In seeking to reach such an agreement, Stellantis and CARB shall consider all relevant and equitable circumstances, including but not limited to the following:

(1) the important environmental benefits of this Agreement, as described in Paragraph 24 above, which the Parties agree were a primary basis for CARB's decision to enter into the Agreement;

(2) the regulatory requirements known or likely to apply to Stellantis in the model years following the model years covered by this Agreement; and

(3) the extent to which Stellantis would be harmed, relative to other manufacturers, if Stellantis is restricted, in whole or in part, by its Emissions Benefit Balance obligations.

16

Exhibit F to Defendants' Request for Judicial Notice

17

Stellantis and CARB shall seek to reach an agreement that reflects an appropriate balancing of the relevant and equitable considerations. If Stellantis and CARB are unable to reach a mutually acceptable understanding regarding Stellantis's Emissions Benefit Balance obligations, the issue shall be the subject of Dispute Resolution under this Agreement. Both Stellantis and CARB agree that the factors set forth in this subparagraph shall be the basis upon which Dispute Resolution shall be conducted.

(C)      Tracking of Credits within Credit Balances.

(i)      Within the Agreement Balance and the Emissions Benefit Balance, credits (and debits) shall be tracked based on the model year in which they were earned, per ABT rules.

(ii)      Credits shall be subject to a five-year carry forward and three-year carry back provision. Credits may be used by Stellantis to satisfy deficits incurred in the prior three model years or used or traded by Stellantis for use in the subsequent five model years. Credits not used within five model years shall expire.

(iii)      If Stellantis has a deficit after the model year compliance calculation, then unexpired credits earned in prior model years or acquired through trade may be utilized to satisfy its obligation. Except as noted below, if Stellantis still has a deficit after utilizing all prior model year credits and acquired credits, then it may carry forward the credit deficit up to and including the third model year after the model year in which the deficit was incurred. To facilitate alignment between the Agreement Balance and the Emissions Benefit Balance, if Stellantis has an Agreement Balance deficit being carried forward from MY2024, MY2025, and/or MY2026, Stellantis shall also carry forward an equivalent MY2024, MY2025, and/or MY2026 deficit in the Emissions Benefit Balance (or likewise, as appropriate, for earlier model years in the case of early termination of this Agreement), in lieu of utilizing all prior model year credits and acquired credits in the Emissions Benefit Balance to resolve some or all of the deficits before carrying forward the remaining deficits.

(iv)      Agreement Balance and/or Emissions Benefit Balance deficits carried into model years after expiration or early termination of this Agreement may be resolved by applying Federal Program credits generated in accordance with the ABT provisions of the 2018 Federal Program for those model years after expiration or early termination of this Agreement. Such Federal Program credits shall be recorded as a credit transaction (credits acquired) in Stellantis's Agreement Balance and Emissions Benefit Balance per ABT rules and tracked accordingly.

(v)      Deficits not satisfied within the three model year carry forward period shall constitute noncompliance with this Agreement.

17

(D)     Credit Trading.

(i)     Credits in the Agreement Balance may not be directly traded by Stellantis and credits may only be added or removed in accordance with Paragraph 34(A)above.

(ii)     Credits in the Emissions Benefit Balance may not be directly traded by Stellantis and credits may only be added or removed in accordance with Paragraph 34(B) above.

(iii)     Transferring Credits into Agreement.

(1)     Earned or purchased MY2020 or earlier Federal Program credits may be used to meet Stellantis's commitments in this Agreement.

(2)     Except as noted for credits acquired from ZEV-only manufacturers prior to the end of MY 2021 and as specified in Paragraph 34(C)(iv) for Federal Program credits used to resolve any outstanding deficits after the expiration or early termination of this Agreement, MY2021 and subsequent credits earned under the Federal Program by Stellantis or any other manufacturer may not be used to meet Stellantis's commitments in this Agreement for its Agreement Balance.

(3)     Credits earned under a CA and/or Section 177 State program based solely on sales in CA and/or the Section 177 State(s) may not be used to meet Stellantis's commitments in this Agreement for its Agreement Balance.

(iv)     Transferring Credits out of Agreement.  Credits earned by Stellantis per this Agreement for its Agreement Balance may not be used by or traded by Stellantis to meet its or any other vehicle manufacturer's obligation under the Federal Program, or a CA and/or Section 177 State program based solely on sales in CA and/or the Section 177 State(s).

35.     Zero-Emission Vehicle (ZEV) Commitments.  In the event CARB cannot implement or enforce its 2022 ACC II ZEV Program due to a judicial or federal action, Stellantis commits to still meet (a) the requirements of the 2022 ACC II ZEV Program for MY2026 and MY2027 in California and (b) the requirements of the 2022 ACC II ZEV Program for MY2028-2030 in California as negotiated pursuant to Paragraph 35(A)(ii) (the "ZEV Commitments"). Further, if the ZEV Commitments in this Paragraph 35 are triggered, Stellantis commits to put forth its best efforts to sell as many ZEVs as reasonably possible in Section 177 States.  Section 177 States that have issued Enforcement Discretion Letters may contact Stellantis pursuant to the Notice provisions in Paragraph 59 to obtain information about the company's best efforts to sell as many ZEVs as reasonably possible in their respective states.  If CARB cannot implement or enforce its 2022 ACC II ZEV Program in MY 2030, Stellantis and CARB agree to enter into good faith negotiations on appropriate ZEV targets for MY 2031-2035, considering the regulatory landscape and market in California.

18

(A)    Compliance.  If triggered, the ZEV Commitments for MY2028-2030 in California will be implemented as follows:

(i)    Calculation of Stellantis' compliance with the ZEV fleet requirements including any resulting surplus or shortfall in values for the model year shall be in accordance with the 2022 ACC II ZEV Program for all elements not otherwise modified by this Agreement (e.g., flexibilities, banking and deficits, reporting).

(ii)    For MY2028–MY2030, Stellantis and CARB shall in good faith confer no earlier than January 1, 2026, to reach mutually acceptable agreement regarding the requirements in § 1962.4(d)(2), § 1962.8(c)(3),  and related in-use nonconformance thresholds in § 1962.7(e)(5)(A), as well as any changes necessary to the certification requirements of § 1962.4(i) to accommodate such agreement. In seeking to reach such an agreement, Stellantis and CARB shall consider all relevant and equitable circumstances, including but not limited to the following:

(1)    the important environmental benefits of this Agreement, as described  in Paragraph 24 above, which the Parties agree were a primary basis for CARB's decision to enter into the Agreement;

(2)    the ZEV regulatory requirements known or likely to apply to Stellantis in the model years following the model years covered by this Agreement; and

(3)    the extent to which Stellantis would be harmed, relative to other manufacturers, if Stellantis is restricted, in whole or in part, by its ZEV Values balance or ZEV Commitments.

Stellantis and CARB shall seek to reach an agreement that reflects an appropriate balancing of the relevant and equitable considerations.  If Stellantis and CARB are unable to reach a mutually acceptable understanding regarding the requirements in § 1962.4(d)(2), § 1962.8(c)(3) and related in-use nonconformance thresholds in § 1962.7(e)(5)(A), as well as any changes necessary to the certification requirements of  § 1962.4(i), the issue(s) shall be the subject of Dispute Resolution under this Agreement.  Both Stellantis and CARB agree that the factors set forth in this subparagraph shall be the basis upon which Dispute Resolution shall be conducted.

(B)    ZEV fleet deficits carried into model years through the term of the commitments in this Agreement may be resolved by applying ZEV values generated in accordance with the ABT provisions of the 2022 ACC II ZEV Program for those model years after expiration or early termination of this Agreement.  Such ZEV values shall be recorded as a credit transaction (credits acquired) in Stellantis's ZEV value balance per ABT rules and tracked accordingly.  In accordance with the 2022 ACC II ZEV Program, Stellantis must make up any deficit within three model years following the model year in which the deficit was earned by submitting a commensurate amount of vehicle values within applicable allowances for fulfilling a ZEV requirement shortfall for the model year in which the deficit was earned.  For example, Stellantis must resolve a 2030 model year deficit by the conclusion of the 2033 model year.

19

(C)    Deficits not satisfied within the three model year carry forward period shall constitute a breach of this Agreement.

(D)    Negotiation Prior to Expiration or Upon Early Termination.

(i)    Recognizing the uncertainty of regulatory requirements applicable following the model years covered in the Agreement, Stellantis and CARB desire to maintain the integrity of the environmental benefits of this Agreement while not disadvantaging Stellantis with regard to future regulatory compliance obligations. Therefore, in the event that CARB has lost the ability to implement or enforce the 2022 ACC II ZEV Program, prior to the expiration or upon early termination of this Agreement, Stellantis and CARB shall in good faith confer to reach mutually acceptable agreement with respect to Stellantis's ZEV Values balance and ZEV Commitments.  In seeking to reach such an agreement, Stellantis and CARB shall consider all relevant and equitable circumstances, including but not limited to the following:

(1)    the important environmental benefits of this Agreement, as described  in Paragraph 24 above, which the Parties agree were a primary basis for CARB's decision to enter into the Agreement;

(2)    the ZEV regulatory requirements known or likely to apply to Stellantis in the model years following the model years covered by this Agreement; and

(3)    the extent to which Stellantis would be harmed, relative to other manufacturers, if Stellantis is restricted, in whole or in part, by its ZEV Values balance or ZEV Commitments.

Stellantis and CARB shall seek to reach an agreement that reflects an appropriate balancing of the relevant and equitable considerations.  If Stellantis and CARB are unable to reach a mutually acceptable understanding regarding Stellantis's ZEV Values balance or ZEV Commitments, the issue shall be the subject of Dispute Resolution under this Agreement.  Both Stellantis and CARB agree that the factors set forth in this subparagraph shall be the basis upon which Dispute Resolution shall be conducted.

36.    <u>Modification and Termination.</u>  The Parties acknowledge that modifications to or termination of this Agreement may be necessary or appropriate in response to various events or circumstances.

(A)    If Stellantis or CARB, with any input from the Section 177 States, believes that modifications to or termination of the Agreement may be warranted, it will provide written notice to the other Party identifying the events or circumstances at issue and explaining why modification to or termination of the Agreement may be necessary or appropriate.  Stellantis and CARB, with any input from the Section 177 States, shall engage in good faith discussions to determine whether modification or termination of this Agreement is necessary or appropriate.

(B)     Nothing in this paragraph obligates Stellantis or CARB, with any input from the Section 177 States, to accept a proposed modification or termination, except as follows:

(i)     If CARB, with any input from the Section 177 States, subsequently enters into an agreement with another light-duty automobile manufacturer containing GHG obligations for MYs 2021-2026 materially different from and more favorable to Stellantis or that light-duty automobile manufacturer than this Agreement, Stellantis has the option to either (a) comply with the GHG obligations of this Agreement; or (b) comply with the GHG provision(s) of the agreement with the other light-duty automotive manufacturer that is materially different from and more favorable than this Agreement. Any subsequent amendment or modification of a pre-existing agreement with another light-duty automobile manufacturer as it relates to CA Standards only shall not constitute CARB entering into an agreement for purposes of this subparagraph.

(ii)     If CARB subsequently amends its 2022 ACC II ZEV Program or enters into an agreement with another light-duty automobile manufacturer containing ZEV obligations for MYs 2026-2030 materially different from and more favorable to Stellantis or that automobile manufacturer than this Agreement, Stellantis, if Paragraph 35 is triggered, has the option to either (a) comply with the ZEV obligations of this Agreement, or (b) comply with the ZEV provisions of the amended 2022 ACC II ZEV Program or agreement with the other light-duty automobile manufacturer.

(iii)     If any Section 177 State seeks to enforce the CA Standards against Stellantis, then Stellantis has the option to terminate this Agreement. If Stellantis exercises this option, Stellantis agrees that such termination will result in the reinstatement on Stellantis of all obligations enforceable and in effect under the CA Standards and 2022 ACC II ZEV Program for all model years covered by those regulations.

(C)     In all instances except those described in Paragraph 36(B) above, any modification to this Agreement is only valid and enforceable if it is in writing and signed by both Parties to this Agreement. If the Parties cannot agree, the Parties' rights and obligations under this Agreement survive.

(D)     If this Agreement terminates in accordance with Paragraph 36, Stellantis shall thereafter:

(i)     be subject to applicable law upon and after termination, including the CA Standards and 2022 ACC II ZEV Program enforceable and in effect for all model years subject to those regulations; and

(ii)     unless otherwise agreed by CARB in consultation with the Section 177 States, remain subject to remedies applicable under Paragraphs 40 and 41 of this Agreement for breaches occurring prior to termination of this Agreement.

37.     <u>Reporting of Agreement Compliance to Section 177 States and Additional Commitments Regarding Section 177 States</u>. CARB may communicate the compliance status of Stellantis with the terms of this Agreement to Section 177 States annually. Stellantis agrees, at

21

CARB's request, to provide to Section 177 States certain submissions under this Agreement containing Stellantis's Confidential Business Information where the recipient Section 177 State(s) has the legal ability to protect such information against release to the public.

38.    Advancement of Zero-Emission Technology.  The Parties recognize that the practical availability and marketing of zero-emission vehicles to the public promotes the interests of both California and Stellantis in furthering zero-emission technology development and deployment, including via public acceptance of such technology, reduced costs, and infrastructure expansion.  CARB has an interest in making zero-emission vehicles more available and affordable, reducing climate change and air pollution impacts experienced by Californians, and supporting the GHG reductions and technology development goals of the CA Standards and CARB's statutory requirements for further GHG reductions for later model years.  In light of the above,  Stellantis and CARB agree that Stellantis's performance as specified in Paragraphs 38(A) and 38(B) are an important consideration for this Agreement, and are integral to CARB's decision to enter into it:

(A)    Stellantis will undertake zero-emission technology commitments described in Appendix A: Zero-Emission Technology Commitments to this Agreement.

(B)    Stellantis shall report annually to CARB on the status of its zero-emission technology commitments described in Appendix A: Zero-Emission Technology Commitments. The Parties acknowledge that Stellantis has also made zero-emission technology commitments relating to the Section 177 States as described in Appendix A: Zero-Emission Technology Commitments.    Stellantis's annual report to CARB will include a description of the status of those commitments.  At CARB's request, Stellantis agrees to transmit the report to the Section 177 States in accordance with Paragraph 37.

(C)    In order to promote the environmental benefits of this Agreement, CARB commits to continue its use of best efforts to complete expeditious review of applications for certification of Zero Emission Technology vehicles.

39.    Enforcement in General.  If the Executive Officer, with any appropriate input from the Section 177 States, makes a determination that Stellantis has failed to comply with any term of this Settlement Agreement, the Executive Officer will notify Stellantis, in writing, of the reasons supporting the determination and provide Stellantis with information upon which the determination was based.  Except as provided below with regard to a GHG Credit Shortfall Breach and a ZEV Values Shortfall Breach, breaches of this Settlement Agreement shall be enforced in accordance with applicable contract law, including the availability of injunctive relief.

40.    Enforcement of Breach of GHG Fleet Commitments; Mitigation Plans.  A breach of GHG fleet commitments in Paragraphs 29–34 of this Settlement Agreement resulting in a GHG credit shortfall required for a particular compliance period, after accounting for the GHG credit averaging, trading and banking provisions of this Agreement (a "**GHG Credit Shortfall Breach**"), is subject to enforcement by CARB exclusively in accordance with the terms of this paragraph.

22

(A)     If the Executive Officer, with any appropriate input from the Section 177 States, makes a determination and notifies Stellantis under this Agreement that Stellantis has committed a GHG Credit Shortfall Breach, Stellantis may, within 60 Days of receipt of the determination by the Executive Officer, propose a mitigation plan for approval by the Executive Officer.

(B)     A mitigation plan shall fully mitigate the emissions consequences of the Credit Shortfall Breach.  It shall also prescribe Stellantis's compliance for the GHG emissions commitments in the Agreement going forward.  If Stellantis's return to compliance is impracticable because there is inadequate time remaining in the Agreement, the mitigation plan shall identify the means by which Stellantis will fully mitigate the consequences of any anticipated Credit Shortfall Breach.

(C)     To address the emissions consequences of the Credit Shortfall Breach, Stellantis may propose, subject to the approval of the Executive Officer as set out in Paragraph 40(F) below, a mitigation plan including any combination of commitments to take remedial actions, to implement special projects, or to make payments into the Trust Account to be used to promote zero-emission technologies and reduce GHG emissions.  Payments into the Trust Account corresponding to the amount of the Credit Shortfall Breach as determined under this subparagraph shall be deemed fully to mitigate the emissions consequences of a Credit Shortfall Breach.  In determining the amount of tons of GHGs to be addressed in a mitigation plan, Stellantis shall propose and CARB shall confirm and specify the credit shortfall.

(D)     Payment amounts under a mitigation plan shall generally be consistent with prices for GHG credits in California's cap-and-trade program, the Regional Greenhouse Gas Initiative, or other similar GHG market programs, taking into account such other equitable factors as may be appropriate under all of the circumstances, and considering the social cost of carbon, using the Central 3 Percent Average Values as expressed in Appendix A, Table A-1 of the Technical Support Document: Technical Update of the Social Cost of Carbon for Regulatory Impact Analysis Under Executive Order 12866, Interagency Working Group on Social Cost of Greenhouse Gases, United States Government (August 2016).

(E)     Mitigation plans may be enforced in court consistent with the venue provisions of this Agreement.

(F)     The Executive Officer shall review a mitigation plan for consistency with the terms of this Agreement and, on behalf of CARB, with any appropriate input from the Section 177 States, either approve or reject within 30 Days, with an explanation of any objections.  This 30-Day period may be extended if Stellantis agrees to an extension for further evaluation.  If the Executive Officer rejects a mitigation plan, in whole or in part, Stellantis will have 30 Days to amend the plan to address any objections by the Executive Officer.  If the Executive Officer approves a mitigation plan, Stellantis shall implement the mitigation plan according to its terms.

(G)     If Stellantis fails timely to submit a mitigation plan or an amended plan, or if the Executive Officer rejects an amended plan, the Executive Officer may adopt a mitigation plan for Stellantis.  Any mitigation plans that include actions in addition to, or in lieu of,

23

payments into the Trust Account shall be limited to remedial actions or implementation of special projects that Stellantis accepts as reasonable and whose cost does not exceed, for the tons in question, the amount of payments into the Trust Account determined in accordance with Paragraph 40(D) of this Agreement.

(H)    Stellantis shall have 60 Days after receipt of approval or adoption by the Executive Officer to begin to implement a mitigation plan.

(I)    All payments required under a mitigation plan shall be deposited into a Trust Account as directed by CARB.  Trust Account funds shall be used to administer the Trust Account.  All funds deposited into this Trust Account shall be used to promote ZEVs or otherwise to reduce vehicle GHG emissions, in accordance with trust agreements to be developed in accordance with this Agreement as necessary.  CARB will notify Stellantis of the activities funded in each Section 177 State by any such payments, including the number of electric vehicle and fuel cell vehicle station installations, if applicable.

41.    <u>Enforcement of Breach of ZEV Fleet Commitments; Damages</u>.  In the event that CARB has lost its ability to implement or enforce its 2022 ACC II ZEV Program as a result of a judicial or federal action, a breach of ZEV Commitments in Paragraph 35 of this Settlement Agreement resulting in a ZEV values deficit required for a particular compliance period, after accounting for the ZEV value averaging, banking, and trading provisions of this Agreement (a "**ZEV Values Shortfall Breach**"), is subject to enforcement by CARB exclusively in accordance with the terms of this paragraph. The Executive Officer shall notify Stellantis of any ZEV Values Shortfall Breach within 60 Days from the date of submittal of Stellantis's End-of-Model-Year Report of Compliance or Deficit to the Annual ZEV Requirement (13 CCR § 1962.4(j)(3)).

(A)    Damages for a Breach of the ZEV Commitments.

(i)    For any ZEV values balance deficit that Stellantis fails to resolve within the allowable ABT provisions of the 2022 ACC II ZEV Program, Stellantis is subject, for each deficit ZEV value, to   damages not to exceed $25,260 as of January 1, 2024.  This maximum limit shall be adjusted for inflation based on the California Consumer Price Index and shall be deemed to accrue when the allowable time to resolve the deficit in accordance with the ABT provisions has expired.  Though the damages to the people and natural resources of the State of California from the excessive emissions of air pollutants from a breach of the obligation to meet the requirements of the CA ZEV Standards would be difficult or impossible to ascertain and may not adequately compensate for the resulting injuries to public health, the environment, and natural resources, the Parties recognize the Legislature has determined an appropriate maximum penalty for violations of the ZEV values requirements of the CA ZEV Standards, as specified in 13 CCR § 1962.4(m)(3), which provides a reasonable maximum value of damages for breach of the ZEV Commitments.

24

Exhibit F to Defendants' Request for Judicial Notice

(ii)    In determining the applicable damages, CARB shall consider, consistent with its Enforcement Policy,[1] all relevant circumstances including the extent of harm to public health, safety, and welfare; the nature and persistence of the violation, including the magnitude of the excess emissions; Stellantis's compliance history; any preventative efforts taken by Stellantis; the innovative nature and magnitude of effort required to comply and the accuracy, reproducibility, and repeatability of the available test methods; the efforts by Stellantis to attain or provide for compliance prior to any deficits accrued; Stellantis's cooperation during the investigation and any actions taken; financial burden to Stellantis; deterrence; and investigation costs.

42.    Dispute Resolution.  The Parties agree that the procedures contained in this paragraph are the sole and exclusive procedures for resolving disputes under this Settlement Agreement.

(A)    If Stellantis disagrees with the Executive Officer's determination of breach under this Settlement Agreement, or identifies other grounds for dispute under this Settlement Agreement including but not limited to the Executive Officer's rejection of a mitigation plan or adoption of its own mitigation plan, Stellantis will provide a written Notice of Dispute and Statement of Position to the Executive Officer within 30 Days of the Executive Officer's notification of breach or other action that is the subject of dispute.  Stellantis's Notice of Dispute and Statement of Position shall include any factual data, analysis, or opinion supporting Stellantis's position and any supporting documentation relied upon by Stellantis. CARB, with any appropriate input from the Section 177 States, will serve its Statement of Position within 45 Days of receipt of Stellantis's Notice of Dispute and Statement of Position, unless that period is modified by written agreement.  CARB's Statement of Position shall include any factual data, analysis, or opinion supporting CARB's position and any supporting documentation relied upon by CARB.

(B)    The period of informal negotiations shall not exceed 60 Days from the date of Stellantis's receipt of CARB's Statement of Position, unless that period is extended by written agreement signed by CARB and Stellantis.

(C)    If CARB, with any input from the Section 177 States, and Stellantis are unable to resolve a dispute before the expiration of the 60-Day period for informal negotiations, either Party may file an action for breach in accordance with the venue provision of this Settlement Agreement, after providing ten Days written notice to the other Party.  In any such action, the Parties shall be prohibited from raising issues that were not previously raised during dispute resolution, except for issues which could not practicably be raised previously during the dispute resolution.

(D)    The time period for Stellantis to respond to CARB under any provision of this Agreement, including the time periods to submit, amend or implement a mitigation plan, shall not begin to run until the completion of dispute resolution either by agreement between the Parties or by the final resolution of a court proceeding.

---

[1] Enforcement Policy | California Air Resources Board

25

43.    <u>Force Majeure</u>.

(A)    "**Force Majeure**" means, for purposes of this Agreement, an event arising from causes beyond the control of Stellantis, which delays or prevents the performance of any obligation under this Agreement, despite Stellantis's best efforts to fulfill the obligation, such as war, fires, floods, hurricanes, tornadoes, earthquakes, volcanic eruptions, labor strikes (but not lock-outs), acts of terrorism, pandemics, and other events resulting in unavoidable supply chain disruption. This does not include negligent acts or Stellantis's financial inability to perform unrelated to the event as described in this paragraph.

(B)    If any event Stellantis considers to be a force majeure event occurs or has occurred, Stellantis shall provide written notice to CARB within 10 Days of when Stellantis first knew that the event might cause a delay, impossibility or impracticability. Within 14 Days thereafter, Stellantis shall provide in writing to CARB an explanation and description of the reasons for the delay, impossibility, or impracticability; the anticipated duration of any delay; all actions taken or to be taken to prevent or minimize any delay, impossibility, or impracticability; a schedule for implementation of any measures to be taken to prevent or mitigate a delay or the effects of any delay, impossibility, or impracticability; and Stellantis's rationale for attributing such delay, impossibility, or impracticability to a force majeure event if it intends to assert such a claim. Stellantis shall include with any notice all available documentation supporting the claim that the delay, impossibility, or impracticability was attributable to a force majeure event.

(C)    If CARB, with any input from the Section 177 States, agrees that the delay, anticipated delay, impossibility, or impracticability is attributable to a force majeure event, CARB shall modify Stellantis's obligations under this Settlement Agreement as necessary and appropriate to account for the delay, impossibility, or impracticability resulting from the force majeure event. CARB will notify Stellantis in writing of the modifications approved by CARB.

(D)    If CARB, with any input from the Section 177 States, disagrees that a delay, anticipated delay, impossibility, or impracticability has been or will be caused by a force majeure event, CARB will notify Stellantis in writing of the decision.

(E)    Stellantis may elect to invoke dispute resolution in accordance with this Agreement based upon CARB's determinations and decisions pursuant to Paragraphs 42(C) and 42(D) above.

44.    <u>Records</u>. Stellantis agrees that CARB, on behalf of itself or a Section 177 State that has issued an Enforcement Discretion Letter, may request, and shall receive, records regarding compliance with this Agreement by filing a request in writing; records will be provided by Stellantis within 21 Days of a request. Stellantis may assert a claim of business confidentiality as appropriate for any such records pursuant to California law and the corresponding law of any Section 177 States that might seek to receive such records. Stellantis will retain all relevant records for the term of this Agreement plus five years.

**ADDITIONAL PROVISIONS**

45.     Term and Expiration.  Stellantis and CARB agree that, unless terminated or extended by modification in accordance with Paragraph 36, the Settlement Agreement covers compliance with the CA Standards for MY2021 through MY2026 and, in the event CARB cannot implement or enforce its 2022 ACC II ZEV Program due to a judicial or federal action, the 2022 ACC II ZEV Program for MY2026 through MY2030.  Except as otherwise specified in this paragraph, this Settlement Agreement shall expire and be of no further force and effect as follows:

(A)     With respect to the CA Standards, following Stellantis's submission of data and technical information supporting its calculation of compliance for MY2026 in accordance with Paragraph 33(C) which includes, subject to the resolution of Stellantis's Emissions Benefit Balance obligations in accordance with Paragraph 34(B)(vi) and three-year deficit carry-forward in accordance with Paragraph 34(C)(iii), verification of Stellantis's Emissions Benefit Balance to determine whether MY2026 credits and/or deficits were fully resolved to achieve compliance through MY2026.  If the Executive Officer has made a determination and notified Stellantis of a GHG Credit Shortfall Breach within 60 Days after Stellantis's submission of data and technical information with respect to Model Year 2026, the enforcement of breach of GHG fleet commitments/mitigation plan requirements and the dispute resolution provisions shall survive for the sole purpose of resolving a determination of a GHG Credit Shortfall Breach, in accordance with Paragraph 40.

(B)     With respect to the 2022 ACC II ZEV Program, following Stellantis's submission of data and technical information supporting its demonstration of compliance with the ZEV Commitment for MY 2030.  If the Executive Officer has made a determination and notified Stellantis of a ZEV Values Shortfall Breach within 60 Days after Stellantis's submission of its End-of-Model-Year Report of Compliance or Deficit to the Annual ZEV Requirement for MY 2030, the enforcement of breach of ZEV commitments and the dispute resolution provisions shall survive for the sole purpose of resolving a determination of a ZEV Credit Shortfall Breach, in accordance with Paragraph 41.

46.     Entirety.  This Agreement constitutes the entire agreement and understanding among the Parties concerning the matter described herein, and supersedes and replaces any and all prior negotiations and agreements of any kind, whether written or oral, among the Parties concerning the matter described herein.  This Agreement consists of 35 pages plus signature pages and appendices and 59 numbered paragraphs.

47.     Binding Effect.  This Agreement binds Stellantis and any principals, officers, receivers, trustees, successors and assignees, subsidiary and parent corporations and upon CARB, and any successor agencies that may have responsibility for and jurisdiction over the subject matter of this Agreement.

48.     Effective Date.  This Settlement Agreement is binding and effective as of the date that it is fully executed by Stellantis and CARB.

49.     <u>Agreement Not Severable</u>.  In the event that any provision of this Settlement Agreement is held by a court to be illegal, invalid, or unenforceable in any jurisdiction, the Parties shall enter into good faith negotiation regarding modification in accordance with Paragraph 36 above with the intent to achieve the objectives and benefits of this Settlement Agreement to the greatest extent possible.  Following such negotiations, either Stellantis or CARB, with any appropriate input from the Section 177 States, may provide written notice to the other Party terminating this Settlement Agreement if the Agreement is not capable of modification in the view of either Party.

50.     <u>Choice of Law</u>.  This Agreement shall be interpreted and enforced in accordance with the laws of the State of California, without regard to California's choice-of- law rules.

51.     <u>Rule of Construction</u>.  Any rule of construction to the effect that ambiguities are to be resolved against the drafting Party shall not be applied in interpreting this Settlement Agreement, including in any dispute resolution process.

52.     <u>Non-Waiver</u>.  The failure to enforce any provision of this Agreement shall not be construed as a waiver of any such provision, nor shall it prevent such Party thereafter from enforcing such provision or any other provision of this Agreement.  The rights and remedies granted all Parties herein are cumulative and the election of one right or remedy by a Party shall not constitute a waiver of such Party's right to assert all other legal remedies available under this Agreement or otherwise provided by law.

53.     <u>Intent to be Bound</u>.  The Parties represent that they have participated fully in the review and drafting of this Agreement; understand and accept all terms; that they enter into this Agreement freely and voluntarily; have had an opportunity to consult with legal counsel; that they are fully informed of the terms and effect of this Agreement; that they enter into this Agreement after independent investigation and through no fraud, duress, or undue influence; and that they knowingly and voluntarily intend to be legally bound by this Agreement.

54.     <u>Venue</u>.  The Superior Court of California, located in the County of Sacramento, shall hear any dispute between the Parties arising from this Agreement.

55.     <u>Counterparts</u>.  This Agreement may be executed in counterparts.  Facsimile or photocopied signatures (including PDF copies), shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Agreement.

56.     <u>Release and Covenant Not to Sue</u>.  In consideration of Stellantis's voluntary commitments in this Agreement, CARB releases Stellantis and its principals, officers, receivers, trustees, successors and assignees, subsidiaries, affiliates and parent corporations from any claims, and covenants not to sue or otherwise pursue such entities or individuals, for violations of the CA Standards for MY2021-MY2026 or, if the ZEV Commitments in Paragraph 35 are triggered, the 2022 ACC II ZEV Program for MY2026-MY2030.  However, CARB retains authority to enforce this Settlement Agreement on the terms provided herein.

57.     <u>Authority</u>.  The undersigned represents that he or she has full authority to enter into this Agreement.

Exhibit F to Defendants' Request for Judicial Notice

58.    <u>Assignment</u>.  This Settlement Agreement and the rights, duties, and obligations under it may not be assigned or delegated by CARB or Stellantis without the prior written consent of the other Party.  Any assignment or delegation made without prior written consent shall be void.

## NOTICES

59.    <u>Notices</u>.  All notices, demands, requests, consents, approvals, or other communications (collectively "**Notices**") required or permitted to be given pursuant to this Settlement Agreement shall be in writing and shall be transmitted via United States mail and electronic mail to the Parties set out below.  Notice shall be deemed given on the date of receipt.

To CARB:

Dr. Steven Cliff

Executive Officer

California Air Resources Board

1001 I St

Sacramento, CA, 95814

Steven.Cliff@arb.ca.gov

To Stellantis:

Stellantis

Christopher Pardi

Senior Vice President – General Counsel

Matthew Read

Senior Counsel, Environmental

Office of General Counsel

FCA US LLC

1000 Chrysler Drive

CIMS 485-13-62

Auburn Hills, MI 48326

Christopher.Pardi@stellantis.com

Matthew.Read@stellantis.com

## SIGNATURES

For CARB:

_____     Date:  3/19/2024
Steven S. Cliff, Ph.D.
Executive Officer
California Air Resources Board

For Stellantis:

_____     Date: 03/19/2024
Olivier Bourges
Global Corporate Office and Public Affairs Officer
Stellantis

## APPENDIX A: ZERO-EMISSION TECHNOLOGY COMMITMENTS

**Introduction – Existing Commitments**

- Stellantis is committed to being an industry champion in climate change mitigation.  Stellantis' Dare Forward 2030 program, announced in March 2022, envisions that by 2030, Stellantis will reduce its carbon footprint by 50% from its 2021 levels (in tons of CO2 equivalent per vehicle). In the U.S., Stellantis is setting the course for 50% of passenger car and light-duty truck sales to be battery electric vehicles ("BEV") by the end of the decade.  To support that target, Stellantis plans to offer no less than 25 all-new BEV products in the U.S. by 2030.

- In alignment with the Stellantis's Dare Forward 2030 program, this Agreement promotes zero-emission technologies, and implementing this Agreement will avoid an estimated approximately 10-12 million metric tons of carbon emissions, as defined and calculated with reference to the terms herein.

- Stellantis is a founding member of the Ionna Joint Venture that targets installing 30,000 DC fast chargers starting in 2024 calendar year.

**Agreement Commitments**

As part of this Agreement, Stellantis will further zero-emission technology development and deployment by supporting ZEV equity and awareness; increasing ZEV infrastructure deployment and access; providing dealer support for sales of zero-emission technology vehicles; and providing other technical support for ZEVs.  Stellantis intends to take the following actions to promote and advance zero-emission technology:

**ZEV Equity and Awareness**

- Stellantis will support brand-neutral ZEV outreach and education by contributing at least $300,000 in funding over calendar years 2024-2026 to a nonprofit organization that runs ZEV public awareness campaigns.

- Stellantis will offer a 25% MSRP discount on up to 20 plug-in hybrid electric vehicles or battery electric vehicles per year for 3 years for community mobility programs in California and Section 177 States. Stellantis will not earn Advanced Clean Cars II environmental justice vehicle values for these vehicles placed at a discount in community programs.

- Stellantis will commit to participate in at least one ride-and-drive event (working with non-profit organizations) to promote zero-emission technologies in California and each Section 177 State by the end of 2026 calendar year.  Stellantis will participate in a minimum of four additional events and will consider passenger car and light-duty truck sales volumes in respective states (California and Section 177 States) for those event locations.

Exhibit F to Defendants' Request for Judicial Notice

- o Stellantis will support local ZEV ride-and-drives and demos by facilitating outreach to nearby dealerships to smooth logistics for local dealers to provide vehicles and sales reps or by separately providing vehicles and support personnel for the programs/events free of charge.

## ZEV Charging Infrastructure

- Stellantis will spend $10 million to install multiport public chargers in approximately 80 different locations in California and the Section 177 States in calendar years 2024 through 2026. At least $4 million will be for electric vehicle charging infrastructure deployed in California and at least $6 million for such infrastructure in the Section 177 States.

  - o In California, Stellantis will invest in charging infrastructure in state parks, federal parks, county parks, tribal areas, or other areas of mutual agreement where additional infrastructure capacity is needed or where investment has yet to occur. Stellantis will consult with CARB on the designated public charger locations and intended number of chargers and charge ports per location.

  - o In Section 177 States, Stellantis will ensure each state receives public charging infrastructure. Each Section 177 State will receive a minimum allocation of the $6 million funding commitment based on past sales volumes in the states and first effective model year of the CA Standards. Stellantis will discuss site prioritization with the respective state air quality administrators with the intent to be able to provide a tentative proposed site list to each state by the end of calendar year 2024. Charger locations will be determined by mutual agreement with the state air quality administrators.

  - o As needed, Stellantis will work with providers of turnkey off-grid charging solutions for remote locations where interconnection or upgrading the existing electric infrastructure is challenging or where ground-disturbing activities are prohibitive. Both parties acknowledge the potential for these unique constraints to increase the costs of charger hardware and installation and therefore have the potential to reduce the total number of chargers installed.

  - o Stellantis will ensure operationality of the chargers for six years after the beginning of operation and comply with applicable state reliability requirements for publicly funded chargers.

  - o Stellantis will ensure that preventive maintenance is conducted, as specified by the charger manufacturer, on the charger hardware by a certified technician annually. The time interval between consecutive preventive maintenance visits to any charger shall be no more than 13 months.

  - o Stellantis will ensure via contract that maintenance is completed within 5 business days of the beginning of a time when a charger is inoperative or exhibiting failures that result in an inability to charge.

32

Exhibit F to Defendants' Request for Judicial Notice

**Dealer Support for ZEVs**

- Stellantis will provide continued availability of zero-emission technology vehicles for demonstration, test drive, sale, or lease to each dealer in California and the Section 177 States taking into account vehicle supply, demand, and launch constraints.

- Stellantis will provide ongoing ZEV education for dealers through required learning courses and support from brand experts and training academies.  Stellantis will document dealership training to sell and service ZEVs.

- Stellantis will provide training and instructions for dealers to encourage pursuit of ZEV market incentives and will ensure dealerships are registered with applicable programs (e.g., IRS Energy Credits Online, Authorized Dealership for Clean Cars 4 All, etc.) to provide point-of-sale rebates to consumers.

**Technical Support for ZEVs**

- Stellantis will collect and report to CARB in-use PHEV usage data representative of the long range Ramcharger PHEV.

  o Data will be submitted no later than twelve months after either the time vehicles were first introduced into commerce or the start of normal production for such vehicles, whichever is later.

  o The data will include all the in-use tracking data reported through service 9 of SAE J1979 (e.g., fuel usage, distance traveled, grid energy used), distance and number of warm-up cycles since code clear, the model year, the test group, the date the data was collected, the odometer reading, the VIN, and the ECM software calibration identification number. In lieu of the VIN, Stellantis may use an alternate vehicle identifier if the identifier is unique for each vehicle and a specific VIN always has the same alternate vehicle identifier.

  o Stellantis will collect and report the data for a minimum number of 100 vehicles per model year for the first two model years that the Ramcharger is offered for sale, targeting vehicles that have been operated for a minimum of nine months, and shall report all data collected from this vehicle model within the twelve-month time window. Stellantis shall endeavor to use a sampling method that will likely result in the collection and submittal of data within the required twelve-month time frame, will generate data that are representative of California drivers and temperatures, and does not, by design, exclude or include specific vehicles in an attempt to collect data only from vehicles with the highest amount of electric driving operation.

- Stellantis will support advancement of efforts to improve ZEV and charger interoperability.

  o Stellantis will help lead a charger-to-vehicle communication technical committee that leads to an SAE Recommended Practice or equivalent technical document for a interoperability test to evaluate a vehicle's compliance with vehicle to charger

33

communication via the specifications in SAE J1772, DIN SPEC 70121, and ISO 15118-2.

o   Stellantis will secure at least $200,000 (directly or through industry) to fund the initial drafting and debugging of open-source executable code to carry out the developed interoperability test within 4 months after release of an adopted SAE or equivalent document, or within 4 months after availability of a draft SAE or equivalent document if no adopted version is available by July 1, 2025. If no draft document is available by July 1, 2025, then Stellantis and CARB agree to meet and confer in good faith to alter the deadline as needed to result in a deliverable as soon as possible after July 1, 2025.

## Reporting

- Stellantis will submit an annual report to CARB documenting progress on their zero-emission technology commitments as outlined in this Appendix A of the Agreement for calendar years 2024, 2025, and 2026.  The annual report, due January 31 after the end of the calendar year, shall include:

    o   Documentation of support at the appropriate funding level to a non-profit organization for ZEV awareness.

    o   VIN, model year, make, model, MSRP, sales price, and date of sale or lease for each PHEV or BEV provided at discount for use in a community mobility program; name of the community mobility program; and location of the community mobility program.

    o   The name, location, and number of rides offered in Stellantis vehicles at each ride-and-drive event.

    o   For each charging infrastructure site:

        ▪   The count, type, date, and location of chargers installed.

        ▪   Nameplate capacity of the installed equipment (kW).

        ▪   Number of ports and type of outlets per charger.

        ▪   Location type, such as street, parking lot, hotel, state park, federal park, county park, tribal area, etc.

        ▪   Cost data, broken down by equipment costs, design costs, trenching and site excavation costs, separate meter costs, permitting costs, utility interconnection costs, projected ongoing maintenance costs, project management costs, and total cost per charger.

        ▪   A report on preventive and corrective maintenance

    o   Documentation of dealership training to sell and service ZEVs.

34

Exhibit F to Defendants' Request for Judicial Notice

**APPENDIX A.1: ZERO-EMISSION TECHNOLOGY COMMITMENTS –
CONFIDENTIAL BUSINESS INFORMATION**

35