ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
ROBERT N. STANDER
Deputy Assistant Attorney General
IAN M. SWENSON
Counsel
Designated Counsel for Service
United States Department of Justice
Energy and Natural Resources Division
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 532-5139
Ian.Swenson@usdoj.gov

ERIC GRANT
United States Attorney
Eastern District of California

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA and UNITED STATES DEPARTMENT OF TRANSPORTATION, <br><br> Plaintiffs, <br><br> v. <br><br> CALIFORNIA AIR RESOURCES BOARD and STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board, <br><br> Defendants. | Civil Action No. 2:26-00847−DJC−SCR <br><br> Judge Calabretta <br><br> Magistrate Judge Riordan <br><br> **Memorandum in Support of Plaintiffs' Summary Judgment Motion** <br><br> **Action Filed:** March 12, 2026 <br><br> **Hearing Date:** October 8, 2026 <br> 1:30 pm, Courtroom 7 <br><br> **Trial Date**: Not set |

## **<u>Table of Contents</u>**

Introduction ................................................................................................................ 1

Background ................................................................................................................ 2

    I.     For Fifty Years, the Federal Government Has Set the Standards for Motor Vehicle Fuel Economy ................................................................ 2

    II.    CARB Sets Standards for the Same Vehicles Through the Advanced Clean Cars Regulations ............................................................ 4

Standard of Review .................................................................................................. 6

Argument .................................................................................................................. 6

    I.     EPCA Preempts CARB's Tailpipe $CO_2$ Emissions Standards and ZEV Mandate ............................................................................................ 6

    II.    EPCA Preemption Applies Irrespective of any Clean Air Act Section 209 Waiver ............................................................................................ 10

    III.   Controlling Law Discredits Two Prior District Court Decisions Finding EPCA Did Not Preempt a Predecessor to ACC I ..................... 12

          A.    Central Valley improperly gave EPCA's preemption provision the "narrowest" possible interpretation. ........................... 13

          B.    Green Mountain Failed to Apply EPCA's Express Preemption Provision to State Regulations and Strayed from EPCA's Text. ...... 17

    IV.   The Court Should Enjoin CARB from Enforcing Its Tailpipe $CO_2$ Emissions Standards and ZEV Mandate ................................................. 19

    V.    The Court Should Declare CARB's Tailpipe $CO_2$ Emissions Standards and ZEV Mandate Preempted ................................................. 20

Conclusion ............................................................................................................. 20

## Table of Authorities

**Page(s)**

**Cases**

*Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n,*
410 F.3d 492 (9th Cir. 2005)...................................................................................6

*Azar v. Allina Health Servs.,*
587 U.S. 566 (2019)...............................................................................................11

*California Restaurant Association v. City of Berkeley,*
89 F.4th 1094 (9th Cir. 2024)..................................................................................9

*California v. Gen. Motors Corp.,* No.C06-05755,
2007 WL 2726871 (N.D. Cal. Sept. 17, 2007).........................................................2

*Caminetti v. United States,*
242 U.S. 470 (1917)...............................................................................................11

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,*
511 U.S. 164 (1994)...............................................................................................11

*Cent. Valley Chrysler-Jeep, Inc. v. Goldstene,*
529 F. Supp. 2d 1151 (E.D. Cal. 2007)............................................... 12, 13, 15, 16, 17

*Cent. Valley Chrysler-Plymouth v. CARB,* No. CV-F-02-5017,
2002 WL 34499459 (Jun. 11, 2002)........................................................................10

*Chevron USA Inc. v. Plaquemines Par.,*
*146 S. Ct. 1052 (2026)*..........................................................................................12

*Coventry Health Care of Mo., Inc. v. Nevils,*
581 U.S. 87 (2017)................................................................................................6, 7

*Ctr. For Auto Safety v. Nat'l Highway Traffic Safety Admin.,*
793 F.2d 1322 (D.C. Cir. 1986)................................................................................2

*Daimler Truck N. Am. LLC v. CARB,* No. 2:25-CV-02255,
2025 WL 3049944 (E.D. Cal. Oct. 31, 2025)...........................................................19

*Diamond Alt. Energy, LLC v. Env'l Prot. Agency,*
606 U.S. 100 (2025)..............................................................................................1, 5

*eBay Inc. v. MercExchange, L.L.C.,*
547 U.S. 388 (2006)...............................................................................................19

*Egelhoff v. Egelhoff ex rel. Breiner,*
532 U.S. 141 (2001)........................................................................................7, 8, 12

*Epic Sys. Corp. v. Lewis,*
*584 U.S. 497 (2018)*..............................................................................................11

*Frlekin v. Apple, Inc.,*
979 F.3d 639 (9th Cir. 2020)....................................................................................6

*Gen. Motors Corp. v. Nat'l Highway Traffic Safety Admin.*,
   898 F.2d 165 (D.C. Cir. 1990)........................................................................2

*Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*,
   508 F. Supp. 2d 295 (D. Vt. 2007) ........................................7, 12, 17, 18

*Hughes v. Talen Energy Mktg., LLC*,
   578 U.S. 150 (2016)........................................................................6

*Kansas v. Garcia*,
   589 U.S. 191 (2020)........................................................................6

*Massachusetts v. Env'l Prot. Agency*,
   549 U.S. 497 (2007)........................................................................11, 17

*Metro. Taxicab Bd. of Trade v. City of New York*,
   633 F. Supp. 2d 83 (S.D.N.Y. 2009) ........................................................8

*Metro.Taxicab Bd. of Trade v. City of New York*,
   615 F.3d 152 (2d Cir. 2010)........................................................................8, 9

*Morales v. Trans World Airlines, Inc.*,
   *504 U.S. 374 (1992)*........................................................................7, 12

*Morton v. Mancari*,
   417 U.S. 535 (1974)........................................................................12

*Nat'l Collegiate Athletic Ass'n v. Christie*,
   926 F. Supp. 2d 551 (D.N.J. 2013), *rev'd on other grounds, Murphy v.Nat'l Collegiate Athletic Ass'n*,138 S. Ct. 1461 (2018). ........................................................................19

*Nat'l R.R. Passenger Corp. v. Su*,
   41 F.4th 1147 (9th Cir. 2022)........................................................................6

*Ohio v. Env'l Prot. Agency*, 98 F.4th 288 (D.C. Cir. 2024)........................................10

*Ophir v. City of Bos.*,
   647 F. Supp. 2d 86 (D. Mass. 2009)........................................................2, 3, 10

*Principal Life Ins. Co. v. Robinson*,
   394 F.3d 665 (9th Cir. 2005)........................................................................19

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*,
   579 U.S. 115 (2016)........................................................................6, 18

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*,
   754 F.3d 754 (9th Cir. 2014)........................................................................6

*Rodriguez v. Robbins*,
   715 F.3d 1127 (9th Cir. 2013)........................................................................19

*United States v. Arizona*,
   641 F.3d 339 (9th Cir. 2011), *aff'd in part, rev'd on other grounds,* 567 U.S. 387 (2012) ........................................................................19

*United States v. Idaho*,
  623 F. Supp. 3d 1096 (D. Idaho 2022)..................................................................19

*United States v. Lemus*,
  93 F.4th 1255 (9th Cir. 2024)..............................................................................16

*United States v. Ron Pair Enters., Inc.*,
  489 U.S. 235 (1989).............................................................................................11

*United States v. Texas*,
  557 F. Supp. 3d 810 (W.D. Tex. 2021)................................................................19

*Valle del Sol Inc. v. Whiting*,
  732 F.3d 1006 (9th Cir. 2013)..............................................................................19

**Statutes**

28 U.S.C. § 2201 ..................................................................................................38

28 U.S.C. § 2202 ..................................................................................................36

42 U.S.C. § 6297(c)..............................................................................................18

42 U.S.C. § 7507 ..................................................................................................22

42 U.S.C. § 7543 ..................................................................................................21

42 U.S.C. § 7543(a)..............................................................................................21

42 U.S.C. § 7543(b)..............................................................................................34

42 U.S.C. § 7543(b)(1) .........................................................................................21

42 U.S.C. § 7543(b)(3) .........................................................................................22

49 U.S.C. § 32901 ...........................................................................................4, 14

49 U.S.C. § 32902 ................................................................................................28

49 U.S.C. § 32902(a)..............................................................................................4

49 U.S.C. § 32902(b)(3)(B)....................................................................................4

49 U.S.C. § 32902(f)............................................................................4, 27, 31, 35

49 U.S.C. § 32904(c)..............................................................................................5

49 U.S.C. § 32919 ......................................................................................6, 22, 23

49 U.S.C. § 32919(a)..........................................................6, 7, 12, 14, 21, 22, 39

49 U.S.C. § 32919(b)..............................................................................................7

49 U.S.C. § 32919(c)..............................................................................................7

Pub. L. 103-272, 108 Stat. 745 (1994) ................................................................28

Pub. L. 94-163, 89 Stat. 871 (1975) ........................................................27, 29, 30

**Regulations**

40 C.F.R. § 600.113-12 ........................................................................................... 15

40 C.F.R. § 600.113-93(e) ..................................................................................... 6, 16

40 C.F.R. § 86.144-94 ........................................................................................... 5, 15

49 C.F.R. § 1.94(c) ..................................................................................................... 3

49 C.F.R. § 1.95(a) ..................................................................................................... 4

49 C.F.R. § 531.5(c) ........................................................................................ 5, 13, 16

49 C.F.R. § 531.5(d) ................................................................................................. 13

49 C.F.R. § 531.6(a) ............................................................................................... 5, 15

49 C.F.R. § 533.5(a) ............................................................................................... 5, 14

49 C.F.R. § 533.5(j) ............................................................................................... 5, 14

49 C.F.R. § 533.6(b) ............................................................................................... 5, 15

71 Fed. Reg. 17566 (Apr. 6, 2006) ......................................................................... 17

84 Fed. Reg. 51310 (Sep. 27, 2019) ......................................................................... 6

87 Fed. Reg. 14332 (March 14, 2022) ..................................................................... 20

87 Fed. Reg. 25710 (May 2, 2022) ......................................................................... 16

CA Health & Safety Code § 43211(b) ..................................................................... 10

Cal. Code Regs. tit. 13 § 1961.3 ........................................................................ 7, 8, 9

Cal. Code Regs. tit. 13 § 1961.3(a) ........................................................................... 8

Cal. Code Regs. tit. 13 § 1961.3(b)3 ......................................................................... 9

Cal. Code Regs. tit. 13 § 1961.3.1 ............................................................................. 8

Cal. Code Regs. tit. 13 § 1962.2 ............................................................................... 7

Cal. Code Regs. tit. 13 § 1962.2(a) ........................................................................... 9

Cal. Code Regs. tit. 13 § 1962.2(b) ......................................................................... 10

Cal. Code Regs. tit. 13 § 1962.2(d)(5) ....................................................................... 9

Cal. Code Regs. tit. 13 § 1962.2(g)(7) ....................................................................... 9

Cal. Code Regs. tit. 13 § 1962.2(g)(8) ..................................................................... 10

Cal. Code Regs. tit. 13 § 1961.3(a) ......................................................................... 14

**Legislative History**

H.R. Rep. No. 103-180 (1993) ................................................................................. 29

S. Rep. No. 103-265 (1994)........................................................................................28

S. Rep. No. 93-526 (1973)............................................................................................6

**Other Authorities**

Raymond B. Ludwiszewski & Charles H. Haake, *Cars, Carbon, and Climate Change*, 102 Nw. U. L. Rev. 665 (2008)..........................................................................3, 8, 10

**INTRODUCTION**

Since 1977, the Federal Government has set the standards for motor vehicle fuel economy. Under the Energy Policy and Conservation Act of 1975 (EPCA), the Department of Transportation (DOT) carefully balances technological feasibility, economic practicability, the effects of other federal regulations, and the need to conserve energy to determine the maximum feasible average fuel economy for motor vehicles in the United States. Through expert analysis, DOT ensures that federal fuel economy standards are not so stringent as to unreasonably eliminate consumer choice. DOT's federal standards must apply nationwide to be effective. Accordingly, Congress expressly preempted all state and local regulations related to fuel economy standards.

The California Air Resources Board (CARB) has usurped federal authority and disrupted the careful balance struck by the Federal Government through parts of its Advanced Clean Cars (ACC I) suite of regulations. ACC I sets limits on tailpipe $CO_2$ emissions and requires automotive manufacturers to meet specified Zero Emissions Vehicle (ZEV) mandates. Because $CO_2$ is an inevitable byproduct of combusting hydrocarbon-based fuels such as gasoline and diesel, there is a direct mathematical relationship between the amount of tailpipe $CO_2$ a motor vehicle emits and the amount of fuel it burns. Indeed, when the Federal Government tests motor vehicle fuel economy, it measures the amount of $CO_2$ emitted per mile and converts that figure into miles per gallon. Given this relationship between $CO_2$ emissions and fuel consumption, portions of the ACC I regulations "force automakers to produce a fleet of vehicles that, as a whole, uses significantly less gasoline and other liquid fuels." *Diamond Alt. Energy, LLC v. Env'l Prot. Agency*, 606 U.S. 100, 117 (2025). "Indeed, that is the whole point of the regulations." *Id.* at 114.

But Congress has spoken, and CARB lacks any authority to set fuel economy standards or adopt regulations relating to them—only the Federal Government does. CARB's regulations defy the policy balance Congress struck in EPCA, and they prohibit vehicles that the federal fuel economy scheme allows, depriving consumers of the choices

DOT carefully protects. CARB will not stop with ACC I: Governor Newsom has reaffirmed California's goal "to have 100 percent of in-state sales of new passenger cars and trucks be zero-emission by 2035" and has ordered CARB to "develop and propose" the next phase of ACC I regulations in furtherance of that goal. Executive Order N-27-25, Dkt. No. 37. In short, CARB is slamming the e-pedal to the metal, continuing its plans to push the state to an all-electric fleet of vehicles, never mind federal law or DOT's expert judgments about the needs of consumers.

Absent judicial action, CARB will continue these requirements, which are contrary to law and interfere with the federal fuel economy program. This Court should declare the tailpipe $CO_2$ emissions standards and ZEV mandate in ACC I expressly preempted by federal law and should enjoin their implementation.

BACKGROUND

**I. For Fifty Years, the Federal Government Has Set the Standards for Motor Vehicle Fuel Economy**

In the aftermath of the energy crisis created by the 1973–1974 Mideast oil embargo, Congress enacted the Energy Policy and Conservation Act of 1975. *Ctr. For Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 793 F.2d 1322, 1324 (D.C. Cir. 1986). Among other things, "[t]he Act established a major program to bring about improved motor vehicle fuel efficiency." *Gen. Motors Corp. v. Nat'l Highway Traffic Safety Admin.,* 898 F.2d 165, 167 (D.C. Cir. 1990). EPCA charges DOT "with establishing a system of standards specifying a minimum level of average fuel economy applicable to a manufacturer in a model year." *Ophir v. City of Bos.*, 647 F. Supp. 2d 86, 89 (D. Mass. 2009). The fuel economy standards promulgated under EPCA are known as Corporate Average Fuel Economy (CAFE) standards. *California v. Gen. Motors Corp.*, No. C06-05755, 2007 WL 2726871, at *9 (N.D. Cal. Sept. 17, 2007). DOT has delegated responsibility to set CAFE standards to the National Highway Traffic Safety Administration (NHTSA), a DOT Operating Administration. *See* 49 C.F.R. §§ 1.94(c), 1.95(a).

The CAFE standards are measured in miles per "gallon of gasoline (or equivalent amount of other fuel)," 49 U.S.C. § 32901, and must be set at the "maximum feasible average fuel economy level that the Secretary decides the manufacturers can achieve in that model year." *Id.* § 32902(a). NHTSA determines the "maximum feasible average fuel economy" for a model year by balancing four factors: "technological feasibility, economic practicability, the effect of other motor vehicle standards of the Government on fuel economy, and the need of the United States to conserve energy." *Id.* § 32902(f). NHTSA has interpreted "economic practicability" "to mean that standards should not be so stringent as to create adverse economic consequences, such as a significant loss of jobs or the unreasonable elimination of consumer choice." *Ophir*, 647 F. Supp. 2d at 93–94 (quotation marks omitted). NHTSA sets the CAFE standards on a model-year basis and sets different standards for different classes of vehicles. NHTSA generally may not set average fuel economy standards for more than five future model years at a time. *See* 49 U.S.C. § 32902(b)(3)(B). This limit helps to ensure that NHTSA's determination of "maximum feasible average fuel economy" remains up to date. The current CAFE standards for passenger cars and light trucks (*i.e.*, light-duty vehicles) run through model year 2031. *See* 49 C.F.R. §§ 531.5(c), 533.5(a), (j).

EPCA requires the Administrator of the Environmental Protection Agency to measure fuel economy in accordance with specified procedures. 49 U.S.C. § 32904(c); *see also* 49 C.F.R. §§ 531.6(a), 533.6(b). To calculate fuel economy, EPA first measures a vehicle's exhaust emissions per mile traveled. 40 C.F.R. § 86.144-94; Pls' Statement of Undisputed Material Facts (SUMF) ¶ 4. "After essentially 'counting' the carbon atoms emitted per mile driven, the EPA uses a formula, commonly referred to as the carbon balance equation, to calculate the amount of fuel burned per mile driven." Ludwiszewski & Haake, *Cars, Carbon, and Climate Change*, 102 Nw. U. L. Rev. 665, 687 (2008) (citing 40 C.F.R. § 600.113-93(e)); SUMF ¶ 5. Because $CO_2$ accounts for over 99% of the

carbon-containing emissions, "fuel economy has become virtually synonymous with $CO_2$ emission rates." SUMF ¶¶ 3, 6.

EPCA includes an express preemption provision designed to ensure that there is one nationally uniform set of fuel economy standards. That provision preempts state laws and regulations "related to fuel economy standards or average fuel economy standards for automobiles covered by an average fuel economy standard." 49 U.S.C. § 32919(a).[1] Congress recognized that the effectiveness of a uniform "single standard" would be frustrated if states could adopt overlapping or inconsistent policies. S. Rep. No. 93-526, at 59 (1973). NHTSA likewise recognizes that "[u]niform national fuel economy standards are essential to accomplishing the goals of EPCA." 84 Fed. Reg. 51310, 51312 (Sep. 27, 2019). EPCA's preemption provision is not waivable. 49 U.S.C. § 32919(a).

## II.    CARB Sets Standards for the Same Vehicles Through the Advanced Clean Cars Regulations

In 2012, CARB adopted the ACC I suite of regulations. *See* Cal. Code Regs. tit. 13 §§ 1961.3, 1962.2. In September 2025, CARB recodified ACC I via emergency rulemaking. SUMF ¶ 9 (purpose is to ensure ACC I's requirements (along with many other unrelated regulations) "remain operative (as previously adopted)."). Two ACC I regulations are at issue here: CARB's tailpipe $CO_2$ emissions standards and its ZEV mandate. The remainder of the ACC I regulations, which address criteria pollutants, is not challenged in this case.

**Tailpipe $CO_2$ Emissions Standards.** ACC I sets limits on tailpipe $CO_2$ emissions from passenger cars and light duty trucks. *See* Cal. Code Regs. tit. 13 § 1961.3(a) and § 1961.3.1 (same). CARB's tailpipe $CO_2$ standards are measured in grams of $CO_2$ per mile. *Id*. § 1961.3(a)(1)(A)(*1*)–(*3*) (Fleet Average Carbon Dioxide Target Values for

---

[1] Neither of the two limited exceptions in 49 U.S.C. § 32919 are relevant here. The first exception allows states and localities to adopt or enforce certain "labeling" laws or regulations so long as they are "identical" to the federal requirements. *See id.* § 32919(b). The second exception applies to motor vehicle fleets that state or local governments use for their own purposes. *See id.* § 32919(c).

Passenger Cars), § 1961.3(a)(1)(B)(*1*), (*2*) and (*4*) (Fleet Average Carbon Dioxide Target Values for Light-Duty Trucks and Medium-Duty Passenger Vehicles); *see also* § 1961.3.1(a)(1)(A), (a)(1)(B) (same).  As with the CAFE program, CARB's standards operate on a fleetwide-average basis, meaning each automaker must sell a fleet of vehicles that, on average, meets prescribed targets for the relevant model year. Applicable targets in the CAFE program are stated in miles per gallon, while targets under the CARB program are stated in the corollary metric: tailpipe emissions of grams of $CO_2$ per mile.  Cal. Code Regs. tit. 13 § 1961.3(a).  CARB's tailpipe $CO_2$ standards cover 2017 through "2025 and subsequent" model years.  *Id*. § 1961.3(a)(1)(A)(*1*)–(*3*) (Fleet Average Carbon Dioxide Target Values for Passenger Cars), § 1961.3(a)(1)(B)(*1*), (*2*) and (*4*) (Fleet Average Carbon Dioxide Target Values for Light-Duty Trucks and Medium-Duty Passenger Vehicles); *see also* § 1961.3.1(a)(1)(A), (a)(1)(B) (same).  Thus, ACC's $CO_2$ limits "remain in force indefinitely into the future." *Diamond Alt. Energy*, 606 U.S. at 107. CARB enforces its tailpipe $CO_2$ emissions standards through civil penalties.  Cal. Code Regs. tit. 13 § 1961.3(b)(3).

**ZEV Mandate.**  ACC I requires manufacturers to meet specified ZEV "credit percentage" mandates by generating credits from sales of vehicles that produce zero tailpipe $CO_2$ emissions—naturally excluding vehicles powered by gasoline or diesel engines.  *See id.* § 1962.2(a), (b), (d)(5).  A manufacturer can also purchase credits from other manufacturers, use excess ZEV credits from prior years, or apply credits obtained by over-complying with the tailpipe $CO_2$ emissions standards.  *See id.* § 1962.2(d)(5). Manufacturers that do not meet their ZEV obligations in a given year "must make up the deficit by the next model year." *Id*. § 1962.2(g)(7).  Some manufacturers may be granted an extension of "up to three consecutive model years to make up a credit deficit." *Id.*  If "the ZEV deficit is not balanced by the end of the specified time allowed," a cause of action for civil penalties accrues against the manufacturer. *Id.* § 1962.2(g)(8).  The civil penalties for failing to comply with the ZEV mandate can reach $5,000 per ZEV credit.  *Id.*; CA

Health & Safety Code § 43211(b).  The ZEV credit percentage mandate started at 4.5% in 2018 and increased to 22% in 2025.  Cal. Code Regs. tit. 13 § 1962.2(b).

STANDARD OF REVIEW

"A grant of summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Frlekin v. Apple, Inc.*, 979 F.3d 639, 643 (9th Cir. 2020).  Express preemption claims are a matter of statutory interpretation that – as is "almost always" the case – present purely legal questions.  *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 761–62 (9th Cir. 2014); *Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 495 (9th Cir. 2005) (express preemption "boils down to the interpretation of the statutory provision that allegedly preempts state law.").

ARGUMENT

## I.    EPCA Preempts CARB's Tailpipe $CO_2$ Emissions Standards and ZEV Mandate

"[F]ederal law preempts contrary state law," *Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, 162 (2016), and Congress has the power to order preemption of State laws, *see Kansas v. Garcia*, 589 U.S. 191, 202 (2020).  When a statute includes an express preemption provision, there is no "presumption against pre-emption" and courts "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (quotation marks omitted).  Preempted State laws and regulations "are without effect." *Nat'l R.R. Passenger Corp. v. Su*, 41 F.4th 1147, 1152 (9th Cir. 2022).

EPCA's express preemption provision provides that when a federal fuel economy standard "is in effect, a State or a political subdivision of a State may not adopt or enforce a law or regulation **related to** fuel economy standards or average fuel economy standards for automobiles covered by an average fuel economy standard." 49 U.S.C. § 32919(a) (emphasis added).  The Supreme Court has "repeatedly recognized that the phrase relate to in a preemption clause expresses a broad pre-emptive purpose." *Coventry Health Care*

*of Mo., Inc. v. Nevils*, 581 U.S. 87, 95–96 (2017). In the preemption context, "a state law relates to" federal subject matter if the law either (i) includes a "reference to" such subject matter or (ii) has "a connection with" such subject matter. *Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384 (1992)*. "[T]o determine whether a state law has the forbidden connection," the Court looks to "the objectives of" EPCA and the nature of the "effect of the state law on" fuel economy standards. *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001). "[R]elated to" preemption provisions must be given the "expansive sweep" their plain meaning requires. *Morales*, 504 U.S. at 384; *Coventry*, 581 U.S. at 95–96.

The tailpipe $CO_2$ emissions standards and ZEV mandate are expressly preempted by EPCA. NHTSA has promulgated CAFE standards that cover fleets of light-duty passenger cars and light-duty trucks through model year 2031. *See* 49 C.F.R. § 531.5(c) (Table 3), (d) (Table 4); § 533.5(a) (Table 7), (j). CARB adopted the tailpipe $CO_2$ emissions standards and the ZEV mandate, which also cover light-duty passenger cars and light-duty trucks. Cal. Code Regs. tit. 13 §§ 1961.3(a), 1962.2(a). And both the tailpipe $CO_2$ emissions standards and the ZEV mandate are "related to fuel economy standards." 49 U.S.C. § 32919(a).

CARB's $CO_2$ emissions standards "relate to" fuel economy standards because they "reference" fuel economy. *Egelhoff*, 532 U.S. at 147. Fuel economy can be expressed in various units. EPCA's text refers to fuel economy in miles per gallon of gasoline. 49 U.S.C. § 32901. "Because there is a mathematical relationship between fuel consumption and carbon dioxide emissions," fuel economy can also be expressed as grams of $CO_2$ emitted per mile. *Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*, 508 F. Supp. 2d 295, 342 n.49 (D. Vt. 2007); SUMF ¶ 7. In fact, EPA tests vehicle fuel economy for NHTSA's CAFE program by measuring $CO_2$ emissions per mile and converting that figure into miles per gallon. *See* SUMF ¶¶ 4, 5; 49 C.F.R. §§ 531.6(a), 533.6(b); 40 C.F.R. § 86.144-94; 40 C.F.R. § 600.113-12. "After essentially 'counting' the carbon atoms emitted per mile driven, the EPA uses a formula, commonly referred to as the carbon

balance equation, to calculate the amount of fuel burned per mile driven." Ludwiszewski & Haake, Cars, Carbon, and Climate Change, 102 Nw. U. L. Rev. 665, 687 (2008) (citing 40 C.F.R. § 600.113-93(e)); SUMF ¶ 5. Because $CO_2$ accounts for over 99% of the carbon-containing emissions, "fuel economy has become virtually synonymous with $CO_2$ emission rates." SUMF ¶¶ 3, 6. So while CARB's tailpipe $CO_2$ emissions standards are expressed in grams of $CO_2$ per mile, *see* Cal. Code Regs. tit. 13 § 1961.3, they could be expressed in miles per gallon. For example, for model year "2025 and subsequent" CARB has set a limit of 131 grams of $CO_2$ per mile on "passenger cars with a footprint of less than or equal to 41 square feet." *Id.* § 1961.3(a)(1)(A)(1). Using the carbon balance formula, 131 grams of $CO_2$ per mile converts to 67.8 miles per gallon for a gasoline powered car. 40 C.F.R. § 600.113-93(e). In contrast, the CAFE standard currently operative for passenger cars of the same footprint is significantly less stringent—approximately 60 miles per gallon for model year 2025. *See* 49 C.F.R. § 531.5(c); *see also* Fig. II-1, 87 Fed. Reg. 25710, 25733 (May 2, 2022). Because CARB's standards are virtually synonymous with fuel economy standards, they reference, and thus relate to, fuel economy.

CARB's tailpipe $CO_2$ emissions standards further "relate to" fuel economy standards because they "implicate[] an area of core [EPCA] concern." *Egelhoff*, 532 U.S. at 147. When passing EPCA, "Congress's undoubted intent was to make the setting of fuel economy standards exclusively a federal concern." *Metro. Taxicab Bd. of Trade v. City of New York*, 633 F. Supp. 2d 83, 101 (S.D.N.Y. 2009), *aff'd,* 615 F.3d 152 (2d Cir. 2010). State laws that have "the effect" of forcing automakers "to meet an mpg threshold" contravene Congress's intended uniformity, disrupt the careful balancing behind the CAFE standards, and are expressly preempted. *Metro. Taxicab Bd. of Trade*, 633 F. Supp. 2d at 102. Here, CARB's tailpipe $CO_2$ emissions standards are the "functional equivalent[]" of fuel economy standards. *See* Average Fuel Economy Standards for Light Trucks, 71 Fed. Reg. 17566, 17670 (Apr. 6, 2006). CARB itself recognizes the direct relationship between reducing tailpipe $CO_2$ emissions and increasing fuel economy. SUMF ¶ 8; *see*

*also* Ex. A.[2]  CARB's tailpipe $CO_2$ emissions standards therefore implicate EPCA's core concern of setting a uniform, national fuel economy standard and are expressly preempted.

CARB "can't skirt" EPCA's broad express preemption provision by "indirectly" regulating fuel economy by limiting tailpipe $CO_2$ emissions.  *California Restaurant Association v. City of Berkeley*, 89 F.4th 1094, 1107 (9th Cir. 2024).  In *Cal. Restaurant Association*, the Ninth Circuit held that another provision of EPCA expressly preempted a city of Berkeley ordinance that prohibited natural gas piping in new buildings.  *Id.* at 1098–99.  The EPCA provision at issue in *Cal. Restaurant Association*, 42 U.S.C. § 6297(c), preempts regulations "concerning" natural gas consumption by appliances.  The Ninth Circuit held that "'concerning' means 'relating to'," and that, "as a matter of ordinary meaning, a regulation may 'concern'" or relate to "something without directly regulating that thing."  89 F.4th at 1103 (citations omitted; alteration in original).  Thus, Berkeley's attempt to regulate the input of natural gas (through building piping) was just as preempted as a direct regulation of the output (consumption of natural gas by a kitchen appliance) would have been.  Similarly here, although CARB's regulations do not limit the input of fuel economy (hydrocarbon fuel), they "relate to" fuel economy by limiting the necessary output ($CO_2$ emitted from the tailpipe).[3]  Under *California Restaurant Association*, CARB's tailpipe $CO_2$ emissions standards are expressly preempted.

Other courts have had little trouble finding that EPCA preempts State laws with indirect connections to fuel economy.  For example, the Second Circuit held that EPCA preempts local taxi-fleet rules merely encouraging the adoption of hybrid taxis.  *See Metro.*

---

[2] Exhibit A is attached to the accompanying declaration of Steven Shermer.

[3] The Ninth Circuit also rejected Berkeley's argument that a prohibition on natural gas piping was not a regulation of energy use.  "[A] building code regulation that imposes a total ban on natural gas is not exempt from EPCA just because it lowers the 'quantity of energy' consumed to 'zero.'" 89 F.4th at 1102 ("In other words, a regulation on 'energy use' fairly encompasses an ordinance that effectively eliminates the 'use' of an energy source."). Likewise, the fact that a ZEV does not consume any fuel does not remove it from the scope of EPCA's fuel economy preemption provision.

*Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152.  That court explained that EPCA's broad preemption provision covers State laws that "draw a distinction between vehicles with greater or lesser fuel efficiency."  *Id.* at 157.  The district court in *Ophir* considered a similar rule mandating an all-hybrid taxi fleet by a date certain and likewise found that EPCA expressly preempted it.  *See Ophir*, 647 F. Supp. 2d at 87–88, 94.  "Given the direct and inextricable link between $CO_2$ regulations and fuel economy standards," the Court should conclude CARB's tailpipe $CO_2$ emissions standards "are preempted."  Raymond B. Ludwiszewski & Charles H. Haake, *Cars, Carbon, and Climate Change*, 102 Nw. U. L. Rev. 665, 690 (2008).

Because CARB's tailpipe $CO_2$ emissions standards relate to fuel economy, it follows *a fortiori* that CARB's ZEV mandate, which requires the production of vehicles that produce zero emissions and therefore use no hydrocarbon fuel at all, relates to fuel economy.  In fact, this Court preliminarily enjoined an earlier CARB ZEV mandate after quickly concluding that the ZEV requirements "'relate to' fuel economy because they 'clearly have the purpose of regulating fuel economy performance.'"  *Cent. Valley Chrysler-Plymouth v. CARB*, No. CV-F-02-5017, 2002 WL 34499459, at *2–3 (Jun. 11, 2002).  This Court should follow suit and hold the current ZEV mandate is preempted.

**II.    EPCA Preemption Applies Irrespective of any Clean Air Act Section 209 Waiver**

The Clean Air Act does not save ACC I from EPCA preemption.  Although ACC I received a waiver of Clean Air Act preemption from the EPA in 2013, that waiver was rescinded, the recission of the waiver was subsequently rescinded, and whether the ACC's Clean Air Act waiver is valid is the subject of ongoing litigation.  87 Fed. Reg. 14332 (March 14, 2022) (EPA reconsideration of recission); *Ohio v. Env'l Prot. Agency*, 98 F.4th 288 (D.C. Cir. 2024) (challenge to validity of waiver).  This Court, however, need not decide the validity of the ACC's Clean Air Act waiver because that waiver is irrelevant to whether the portions of ACC I at issue here are preempted by a different federal statute—EPCA.  State tailpipe $CO_2$ emissions standards and ZEV mandates, even if subject to an EPA

waiver, remain regulations "adopt[ed] or enforc[ed]" by "a State or political subdivision of a State" and therefore are subject to EPCA preemption.  49 U.S.C. § 32919(a).

The Clean Air Act expressly preempts state standards "relating to the control of emissions from new motor vehicles" but allows California to apply for a "waiver" of "application of th[at] section."  42 U.S.C. § 7543(a), (b)(1).  The text of the Clean Air Act's preemption provision for motor vehicle emissions standards does not refer to EPCA or any other federal statute.  *Id.* § 7543.  The Clean Air Act's provision allowing other states to adopt California standards that have received a waiver is equally clear that compliance with a California standard that has received a waiver is only treated as compliance with "Federal standards for purposes of this subchapter," i.e. the Clean Air Act.  *Id.* §§ 7507, 7543(b)(3).  Where, as here, "the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'"  *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)).  The Clean Air Act's preemption provision does not waive the preemptive effect of EPCA or any other federal statute.

Nor does EPCA's preemption provision incorporate the Clean Air Act.  EPCA plainly states that a state "may not adopt or enforce" a law or regulation related to fuel economy standards—no exceptions.  49 U.S.C. § 32919(a).  There is no provision allowing for waiver of EPCA preemption.  *Id.*  And EPCA's preemption provision does not incorporate by reference a waiver under the Clean Air Act.  *Id.*  Congress's prior enactment of the Clean Air Act's waiver provision only further demonstrates that its decision to omit a similar waiver from EPCA's preemption clause was a "deliberate congressional choice" the Court must honor.  *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 184–85 (1994); *See Azar v. Allina Health Servs.*, 587 U.S. 566, 576–77 (2019). There is nothing in the text of EPCA's preemption provision that would make a Clean Air Act waiver applicable to EPCA.

That a Clean Air Act waiver is inapplicable to EPCA preemption does not create a conflict between the two statutory schemes.  To be sure, the statutory mandates of the

EPA and DOT "overlap." *Massachusetts v. Env'l Prot. Agency*, 549 U.S. 497, 501 (2007). But "[w]hen confronted with two Acts allegedly touching on the same topic, this Court [is not at 'liberty to pick and choose among congressional enactments,' and] must [instead] strive 'to give effect to both.'" *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018) (quoting *Morton v. Mancari*, 417 U.S. 535, 551 (1974)). The plain text of EPCA's preemption provision draws the boundary between the Clean Air Act and EPCA and allows the Court to give effect to both acts. Regulations that affect fuel economy in a "tenuous, remote, or peripheral" manner are not "related to" fuel economy and are not subject to preemption. *Morales*, 504 U.S. at 390; *cf. Chevron USA Inc. v. Plaquemines Par.,* 146 S. Ct. 1052, 1061 (2026) ("The ordinary understanding of "relating to" requires a connection that is not "tenuous, remote, or peripheral." (quotation marks omitted)). EPCA does not preclude CARB from adopting and seeking Clean Air Act waivers to address pollutants from vehicles as long as those regulations are not related to fuel economy. To that point, the government is not challenging in this case the portions of ACC I that address criteria pollutants. But state laws that "reference" or have "a connection, with" fuel economy are preempted by EPCA, irrespective of their status under the Clean Air Act. *Morales*, 504 U.S. at 384; *Egelhof*, 532 U.S. at 147.

### III.    Controlling Law Discredits Two Prior District Court Decisions Finding EPCA Did Not Preempt a Predecessor to ACC I

Almost two decades ago in cases not involving the Federal Government, this district and a district court in Vermont applied different but equally flawed preemption and statutory interpretation analyses that resulted in decisions holding that EPCA did not preempt $CO_2$ emissions standards subject to a Clean Air Act waiver. *Cent. Valley Chrysler-Jeep, Inc. v. Goldstene*, 529 F. Supp. 2d 1151 (E.D. Cal. 2007); *Green Mountain*, 508 F. Supp. 2d 295. Although both courts recognized the relationship between tailpipe $CO_2$ emissions standards and fuel economy, they applied atextual interpretations of the Clean Air Act and EPCA to find that such State standards were not preempted. The

decisions are contrary to controlling precedents governing both statutory interpretation and application of express preemption and should not be followed.

### A. *Central Valley* improperly gave EPCA's preemption provision the "narrowest" possible interpretation.

In *Central Valley*, a coalition of auto dealerships and trade associations brought an action for injunctive and declaratory relief against CARB arguing, among other things, that EPCA preempts CARB regulations designed to regulate tailpipe $CO_2$ emissions by motor vehicles. 529 F. Supp. 2d at 1176. The court recognized "that carbon dioxide comprises approximately 99 percent of the carbon-containing emissions from modern motor vehicle engines." *Id.* at 1158. But the Court wrongly concluded that NHTSA must consider California standards that have received a Clean Air Act waiver when setting CAFE standards. *Id.* at 1175. That error led the Court to rule CARB's $CO_2$ emissions standards were not preempted if they were granted a waiver of preemption under the Clean Air Act. *Id*. at 1189–1190. *Central Valley* thus turned EPCA on its head. Where Congress said that States cannot act in this area, the *Central Valley* court suggested that NHTSA instead should "reformulate CAFE standards to harmonize with" CARB's regulations. *See id.* at 1189.

EPCA's CAFE-standard-setting provision does not refer to state law tailpipe emissions standards or require NHTSA to consider them. EPCA requires NHTSA to balance four factors in determining the "maximum feasible average fuel economy," including "the effect of **other motor vehicle standards of the Government** on fuel economy." 49 U.S.C. § 32902(f) (emphasis added). The phrase "other motor vehicle standards of the Government" in EPCA's standard setting provision was originally written as "the effect of other **Federal motor vehicle standards on fuel economy**." Pub. L. 94-163 § 502, 89 Stat. 871, 905 (1975) (emphasis added). Although the statutory wording changed in 1994 when Congress recodified the transportation laws, Congress made clear in statutory text that the recodification worked no "substantive change" of EPCA. Pub. L.

103-272, 108 Stat. 745 (1994). Contrary to *Central Valley*, EPCA directs NHTSA to consider only *federal* motor vehicle standards when formulating CAFE standards.

The use of the definite article "the" in the phrase "the motor vehicle standards of the Government" further shows that EPCA only requires NHTSA to consider federal motor vehicle standards. 49 U.S.C. § 32902(f). The Court must "giv[e] each word its ordinary, contemporary, common meaning." *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 408 (2017) (quotation marks omitted). "The word the … refers to a particular person or thing that … is understood without further description." *Definite Article*, Garner's Modern English Usage (4th Ed. 2016). If Congress wanted NHTSA to consider standards promulgated by state governments, Congress would not have used an article (e.g. "other government motor vehicle standards"). Or Congress would have used the indefinite article "a" to "point[] to a nonspecific object…that is not distinguished from the other members of a class" (e.g. "standards of a government"). *Indefinite Article*, Garner's Modern English Usage (4th Ed. 2016). Congress's use of the word "the" demonstratives that § 32902(f) only requires NHTSA to considers the motor vehicle standards of one government, the Federal Government.

The legislative history of the recodification further confirms that "other motor vehicle standards of the Government" means federal standards. The Senate report accompanying EPCA's recodification clarified that

> "United States Government' is substituted for 'United States' (when used in referring to the Government), 'Federal Government,' and other terms identifying the Government the first time the reference appears in a section. Thereafter, in the same section, 'Government' is used unless the context requires the complete term to be used to avoid confusion with other governments."

S. Rep. No. 103-265, at 4 (1994). Consistent with that legislative history, 49 U.S.C. § 32902—which includes the CAFE standard-setting provision—refers to the "United States Government" to distinguish it from "State or local government" in subsection (e). Section 32902 then refers to the United States Government as "the Government" in

subsection (f), the CAFE standard setting provision. The legislative history supports what a plain reading of the statute suggests, that section (f) only requires NHTSA to consider federal motor vehicle standards when setting CAFE standards.

The *Central Valley* court's erroneous conclusion that state regulations with a Clean Air Act waiver are "other motor vehicle standards of the Government" that NHTSA must consider was based in part on mistaken consideration of an irrelevant and no longer extant provision of EPCA. 529 F. Supp. 2d at 1173. When Congress originally enacted EPCA in 1975, Congress set a specific CAFE standard by statute for passenger cars in model years 1978, 1979, and 1980. Pub. L. 94-163 § 502(a)(1), 89 Stat. at 902. For model years 1978, 1979, and 1980 only, Congress also established a process for a manufacturer to apply for a modification of that statutory standard. To obtain a modification, a manufacturer needed to meet specified requirements, including establishing that a "Federal standards fuel economy reduction is likely to exist for such manufacturer" for the relevant model year. § 502(d)(1)–(2), 89 Stat. at 904. The modification provision specified four categories of "Federal standards," one of which was "[e]missions standards under section 202 of the Clean Air Act, and emissions standards applicable by reason of section 209(b) of such Act." § 502(d)(3), 89 Stat. at 904–05. This made both EPA's own emissions standards and State emissions standards relevant to a request for modification of the CAFE standard for model years 1978–1980. But by its express terms, this text applied only "[f]or purposes of this subsection," *i.e.*, the 1978–1980 standards modification provision in subsection (d). *Id.* The modification provision in subsection (d) no longer had any relevance *after* the 1980 model year. So when Congress recodified the transportation laws in 1994, there was no reason to retain this text in the statute. Congress therefore omitted subsection (d) in its entirety in the recodified statute. *See* H.R. Rep. No. 103-180, at 233 (1993) ("15:2002(d) is omitted from the revised title as executed.") (formatting omitted).

*Central Valley* recognized that when EPCA was recodified in 1994 "all reference to the modification process applicable for model years 1978 through 1980, including the

categories of federal standards, was omitted as executed.'' 529 F. Supp. 2d at 1173. But the court mistakenly concluded that ''[i]f the recodification worked no substantive change in the law, then the term 'other motor vehicle standards of the Government' continues to include . . . emission standards for which EPA has issued a waiver under section 209(b) of the Clean Air Act, as it did when enacted in 1975.'' *Id.* In fact, the modification provision's definition of "federal standard" *never* applied to the separate CAFE standard setting provision. The modification provision defined "federal standard" only "[f]or purposes of this subsection." *See* § 502(d)(3), 89 Stat. at 904. And the CAFE-standard-setting provision originally required NHTSA to consider a different term, "other Federal motor vehicle standards," when determining "maximum feasible average fuel economy." § 502(e)(3), 89 Stat. at 905. This difference in statutory language "demonstrates that Congress intended to convey a different meaning," and these provisions should be interpreted differently. *United States v. Lemus*, 93 F.4th 1255, 1261 (9th Cir. 2024) (quotation marks omitted). Put simply, the modification provision was not the CAFE-standard-setting provision, and its definitions did not apply to the CAFE-standard-setting provision. The now-lapsed definition of "Federal standard" in the modification provision did not (and does not) apply to EPCA's ongoing requirement to determine "maximum feasible average fuel economy." 49 U.S.C. § 32902(f). *Central Valley* incorrectly extended an inapplicable definition from a time-limited, now-expired portion of EPCA.

Misconstruing EPCA as requiring NHTSA to consider standards that have received a Clean Air Act waiver when setting CAFE standards led *Central Valley* to an improperly narrow interpretation of EPCA's preemption provision. *Central Valley* held that Congress could not have intended for EPCA's preemption provision to apply to "standards promulgated by California and granted [a] waiver" under the Clean Air Act when Congress also directed NHTSA to consider the effect of such regulations when determining "maximum feasible average fuel economy." *Cent. Valley*, 529 F. Supp. 2d at 1175–76. To reconcile this apparent tension, *Central Valley* held EPCA's preemption provision "extends very narrowly." *Id.* at 1176. But because NHTSA is not required to consider

standards that have received a Clean Air Act waiver when setting CAFE standards, there is no statutory tension to resolve, and therefore no justification for narrowing EPCA's express preemption provision. The full scope of EPCA's express preemption provision applies to state laws "related to fuel economy standards," irrespective of those state laws' status under other federal statutes. To hold otherwise would deny the "overlap" between EPA's and DOT's authority over "carbon dioxide emissions from motor vehicles" and instead elevate EPA over a sister agency. *Massachusetts*, 549 U.S. at 531–32 (2007).

Given the myriad errors in *Central Valley*, the Court should afford that decision no weight. The Court should, instead, apply the plain meaning of EPCA's express preemption provision and hold that CARB's tailpipe $CO_2$ emissions standards and ZEV mandate are preempted.

**B. *Green Mountain* Failed to Apply EPCA's Express Preemption Provision to State Regulations and Strayed from EPCA's Text.**

An earlier district court relied on different but equally flawed reasoning to uphold the same ACC I predecessor regulations, as adopted by Vermont, in a challenge brought by automotive industry plaintiffs. *See Green Mountain*, 508 F. Supp. 2d at 397–98. As in *Central Valley*, *Green Mountain* acknowledged that "[t]here is indeed a mathematical relationship between the carbon content of a fuel and the carbon which is released through emissions of hydrocarbons, carbon monoxide, or carbon dioxide." *Id.* at 351. And the court recognized that "the express language of EPCA's preemption provision appears literally to forbid the enactment or enforcement of Vermont's GHG regulation." *Id.* at 350. Nevertheless, the court evaded the plain application of EPCA preemption by elevating state regulations that receive a Clean Air Act waiver to the status of federal law. *See id.* at 350. Reasoning that a federal regulation cannot be preempted, the court concluded that "[t]he Supremacy Clause is not implicated" and "preemption doctrines do not apply." *Id.* at 343, 350.

Even *Central Valley* observed that "[t]he *Green Mountain* court never actually offers a legal foundation for the conclusion that a state regulation granted waiver under section

209 is essentially a federal regulation such that any conflict between the state regulation and EPCA is a conflict between federal regulations" and rejected this bizarre basis for avoiding preemption. *Central Valley*, 529 F. Supp. 2d at 1165. And the *Green Mountain* Court's conclusion is at odds with the plain text of the Clean Air Act preemption provision, which says only that EPA shall "waive application of" the preemption provision under certain circumstances, not that EPA will adopt the California standard as federal law. 42 U.S.C. § 7543(b). The Court should reject *Green Mountain*'s interpretation.

As an alternative holding, *Green Mountain* concluded that even if preemption were applicable to state regulations that had received a Clean Air Act waiver, such regulations would not be preempted. As with *Central Valley*, *Green Mountain* wrongly applied a presumption against preemption to EPCA's express preemption provision. *Green Mountain*, 508 F. Supp. 2d at 353–54. As with *Central Valley*, *Green Mountain* misunderstood EPCA's statutory history and the irrelevance of the long-removed modification provision, which led to *Green Mountain* incorrectly holding that NHTSA must consider State regulations with Clean Air Act waivers as "other motor vehicle standards of the Government." *Id.* at 354; 49 U.S.C. § 32902(f). And as with *Central Valley*, these errors led to *Green Mountain* applying a flawed construction to EPCA's preemption provision. *Green Mountain*, 508 F. Supp. 2d at 354. Indeed, *Green Mountain* went so far as to turn the breadth of EPCA's preemption provision into an argument against preemption, holding that "[t]he general language of the preemption clause and the absence of any indication of Congressional intent about its limits" indicated that "Congress did not clearly intend to preempt" regulations of tailpipe $CO_2$ emissions. *Id.* at 354. *Green Mountain*'s repudiated and atextual approaches to statutory interpretation and preemption render it, like *Central Valley*, a decision of no persuasive value. *See Puerto Rico*, 579 U.S. 125 (When a statute includes an express preemption provision, there is no "presumption against pre-emption" and courts "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." (quotation marks omitted)).

**IV.   The Court Should Enjoin CARB from Enforcing Its Tailpipe $CO_2$ Emissions Standards and ZEV Mandate**

The Court considers four factors when determining whether to grant a permanent injunction: (1) irreparable injury; (2) the inadequacy of legal remedies; (3) that the balance of hardships favors equitable relief; and (4) that the public interest supports entry of an injunction. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also* 28 U.S.C. § 2202.

All four factors are met here, and the Court should grant the United States permanent injunctive relief. Absent injunctive relief, the United States will suffer "*per se* irreparable harm*,*" from CARB's adoption and enforcement of preempted regulations and there is no sufficient legal remedy. *Daimler Truck N. Am. LLC v. CARB*, No. 2:25-CV-02255, 2025 WL 3049944, at *17 (E.D. Cal. Oct. 31, 2025) (collecting cases).[4] That is because a violation of the Supremacy Clause constitutes "irreparable harm." *United States v. Arizona*, 641 F.3d 339, 366 (9th Cir. 2011), *aff'd in part, rev'd on other grounds,* 567 U.S. 387 (2012). And the balance of equities and public interest, which merge here, tip in the United States' favor because in these "circumstances, the interest of preserving the Supremacy Clause is paramount." *Id.* (quotation marks omitted). There can be no doubt "that it would not be equitable or in the public's interest to allow [Defendants] . . . to violate the requirements of federal law." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013). Finally, CARB "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). The Court should grant the United States permanent injunctive relief

---

[4] *See also United States v. Idaho*, 623 F. Supp. 3d 1096, 1115 (D. Idaho 2022); *United States v. Texas*, 557 F. Supp. 3d 810, 821 (W.D. Tex. 2021); *Nat'l Collegiate Athletic Ass'n v. Christie*, 926 F. Supp. 2d 551, 578 (D.N.J. 2013), *rev'd on other grounds, Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461 (2018).

**V.    The Court Should Declare CARB's Tailpipe $CO_2$ Emissions Standards and ZEV Mandate Preempted**

The Court should award a declaratory judgment when there is an actual controversy, a party prevails on the merits, and a declaratory judgment would clarify the parties' legal relations or resolve the uncertainty underlying the dispute. *See Principal Life Ins. Co. v. Robinson,* 394 F.3d 665, 672 (9th Cir. 2005); 28 U.S.C. § 2201. Here, there is an actual conflict over the scope of federal and state authority, the United States has shown CARB's tailpipe $CO_2$ emissions standards and ZEV mandate are expressly preempted by federal law, and declaratory relief will clarify the uncertainty underlying this dispute. The Court should grant the United States a declaratory judgment holding that CARB's tailpipe $CO_2$ emissions standards and ZEV mandate are expressly preempted by federal law.

CONCLUSION

The United States respectfully requests that this Court declare CARB's tailpipe $CO_2$ emissions standards and ZEV mandate in ACC I expressly preempted by EPCA and that this Court permanently enjoin their application and enforcement. Accordingly, this Court should grant the United States motion and:

- Declare that the tailpipe $CO_2$ emissions standards, the ZEV mandate, and the portions of the Emergency Rule that incorporate the tailpipe $CO_2$ emissions standards and the ZEV mandate are preempted under 49 U.S.C. § 32919(a), and therefore are void and unenforceable; and

- Permanently enjoin the Defendants from taking actions to implement or enforce the tailpipe $CO_2$ emissions standards, the ZEV mandate, or the portions of the Emergency Rule that incorporate the tailpipe $CO_2$ emissions standards and the ZEV mandate.

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
ROBERT N. STANDER
Deputy Assistant Attorney General

 s/ *Ian M. Swenson*

Designated Counsel for Service:  IAN M. SWENSON
Counsel
California Bar No. 344260
Energy and Natural Resources Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 532-5139
Ian.Swenson@usdoj.gov

ERIC GRANT
United States Attorney
Eastern District of California

*Attorneys for the Plaintiffs*

OF COUNSEL:

GREGORY ZERZAN
General Counsel
GREGORY COTE
Principal Deputy General Counsel
CHARLES E. ENLOE
Assistant General Counsel
ERIN D. HENDRIXSON
Senior Trial Attorney

PETER SIMSHAUSER
Chief Counsel
DYLAN J. VONEIFF
Trial Attorney
National Highway Traffic Safety Administration