JULIA A. OLSON (CA Bar No. 192642)
julia@ourchildrenstrust.org
*Designated Counsel for Service*
ANDREA K. RODGERS (applicant pro hac vice)
andrea@ourchildrenstrust.org
NATHAN BELLINGER (applicant pro hac vice)
nate@ourchildrenstrust.org
PHILIP L. GREGORY, of counsel (CA Bar. No. 95217)
phil@ourchildrenstrust.org
OUR CHILDREN'S TRUST
1216 Lincoln St.
Eugene, OR 97401
Tel: (415) 786-4825

JOSEPH W. COTCHETT (CA Bar No. 36324)
jcotchett@cpmlegal.com
NANCI E. NISHIMURA (CA Bar No. 152621)
nnishimura@cpmlegal.com
ANNE MARIE MURPHY (CA Bar No. 202540)
amurphy@cpmlegal.com
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for Youth Defendant-Intervenors*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA and UNITED STATES DEPARTMENT OF TRANSPORTATION,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA AIR RESOURCES BOARD and STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board,<br><br>Defendants. | No. 2:26-cv-00847-DJC-SCR<br><br>**NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS BY YOUTH-INTERVENORS (FRCP 24)**<br><br>Date: September 24, 2026<br>Time: 1:30 p.m.<br>Location: Courtroom 7<br>Judge: Hon. Daniel J. Calabretta<br><br>Trial Date: Not set<br>Action Filed: March 12, 2026 |

# NOTICE OF MOTION AND MOTION TO INTERVENE

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 24, 2026, at 1:30 p.m., or as soon thereafter as may be heard by this Court, Proposed Defendant-Intervenors Emma Weibel, A.B. by and through his guardian D.B., Ariela Lara, C.M. by and through her guardian E.M., E.F. by and through his guardian H.S., I.W. by and through her guardian C.W., Kalālapa Winter, L.H. by and through her guardian R.H., Luca Cuniberti, M.A. by and through her guardian M.T., Maya Williams, Roan Byrne-Sarno, S.H. by and through her guardian S.H., and Z.W. by and through her guardian T.W. (collectively "Youth-Intervenors") move for leave to intervene as Defendants in this action.

Youth-Intervenors hereby move this Court for an order to intervene as Defendants in this action as a matter of right pursuant to Federal Rule of Civil Procedure 24(a). In the alternative, Youth-Intervenors request leave to intervene by permission pursuant to Federal Rule of Civil Procedure 24(b). Counsel for Youth-Intervenors corresponded by email and video conference with counsel for the existing parties to determine their positions on this Motion and were informed that Plaintiffs, the United States, et al., will oppose this motion. The named Defendants, California Air Resources Board, et al., "take no position but reserve the right to respond after reviewing the motion."

This Motion is based on this Notice of Motion and Motion to Intervene; the accompanying memorandum of points and authorities; the declaration of Dr. Judith Amanda Millstein with exhibit declarations by Dr. Elizabeth Pinsky and Dr. John Balmes; the declaration of Dr. Daniel Cayan; the declarations of proposed Youth-Intervenors Emma Weibel, Maya Williams, Kalālapa Winter, A.B., I.W., and S.H.; Youth-Intervenors' proposed Answer in Intervention, attached to this Motion as Attachment 1; the documents and pleadings previously filed in this action; and any other material the Court may consider in the briefing and oral argument of this matter.

DATED this 17th day of August, 2026.

Respectfully submitted,

*/s/ Julia A. Olson*

JULIA A. OLSON
ANDREA K. RODGERS
NATHAN BELLINGER
PHILIP L. GREGORY, of counsel

OUR CHILDREN'S TRUST

JOSEPH W. COTCHETT
NANCI E. NISHIMURA
ANNE MARIE MURPHY

COTCHETT, PITRE & McCARTHY, LLP

*Attorneys for Youth Defendant-Intervenors*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

I. INTRODUCTION ........ 1

II. FACTUAL & PROCEDURAL BACKGROUND ........ 3

A. Climate Change Disproportionately Harms the Health, Safety, Welfare, Homes, Education, Travel, and Religious Freedom of Children and Youth ........ 3

B. Youth-Intervenors' Protectable Constitutional Interests ........ 7

1. U.S. Constitution-Fundamental Rights ........ 7

2. State Constitutions-Fundamental Rights ........ 9

3. Statutory Background ........ 11

C. Regulatory Background ........ 13

D. Procedural History ........ 14

III. ARGUMENT ........ 14

A. Youth-Intervenors Meet the Ninth Circuit's Test for Intervention as a Matter of Right ........ 14

1. Youth-Intervenors Have Significant Protectable Interests at Stake in This Litigation ........ 15

2. The Disposition of This Action Will Impair Youth-Intervenors' Ability to Protect Their Interest Because Any Remedy Limiting CARB's Ability to Regulate Vehicle Emissions Harms Youth-Intervenors' Interests ........ 18

3. The Motion is Timely ........ 20

4. Youth-Intervenors' Interests Will Not Be Adequately Represented by CARB ........ 21

B. Youth-Intervenors Should Be Granted Permissive Intervention ........ 22

CONCLUSION ........ 23

## TABLE OF AUTHORITIES

### CASES

*Am. Pub. Health Ass'n v. U.S. EPA*, No. 26-2037 (D.C. Cir. filed Feb. 18, 2026), *consolidated with Venner v. U.S. EPA*, No. 26-1038 (D.C. Cir. filed Feb. 18, 2026) .......... 12, 20

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) .......... 15, 21

*Barron v. Reich,* 13 F.3d 1370 (9th Cir. 1994) .......... 4, 5

*Berman v. Parker*, 348 U.S. 26 (1954) .......... 12

*Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014) .......... 7

*Caetano v. Massachusetts*, 577 U.S. 411 (2016) .......... 8

*Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303 (E.D. Cal. 2011) .......... 16, 17

*Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.*, 386 U.S. 129 (1967) .......... 15

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893 (9th Cir. 2011) .......... 15, 21, 22

*Dunn v. Blumstein*, 405 U.S. 330 (1972) .......... 9

*Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489 (9th Cir. 1995) .......... 18

*Geer v. Connecticut*, 161 U.S. 519 (1896) .......... 11

*Gen. Motors Corp. v. United States*, 496 U.S. 530 (1990) .......... 12

*Gonzales v. Oregon*, 546 U.S. 243 (2006) .......... 11

*Gregory v. Ashcroft*, 501 U.S. 452 (1991) .......... 11

*Helling v. McKinney*, 509 U.S. 25 (1993) .......... 8

*Holt v. Hobbs*,
574 U.S. 352 (2015)........................................................................................ 7

*Huron Portland Cement Co. v. Detroit*,
362 U.S. 440 (1960)...................................................................................... 12

*Ill. Cent. R.R. Co. v. Illinois*,
146 U.S. 387 (1892)...................................................................................... 10

*In re Estate of Ferdinand E. Marcos Hum. Rts. Litig.*,
536 F.3d 980 (9th Cir. 2008) ........................................................................ 15

*In re Haw. Elec. Light Co.*,
526 P.3d 329 (Haw. 2023)............................................................................. 10

*In re Maui Elec. Co.*,
506 P.3d 192 (Haw. 2022)......................................................................... 10, 18

*In re Water Use Permit Applications*,
9 P.3d 409 (Haw. 2000)................................................................................. 10

*Ingraham v. Wright*,
430 U.S. 651 (1977)........................................................................................ 8

*Kalbers v. U.S. Dep't of Just.*,
22 F.4th 816 (9th Cir. 2021) .......................................................................... 20

*Kelley v. Johnson*,
425 U.S. 238 (1976)...................................................................................... 12

*League of United Latin Am. Citizens v. Wilson*,
131 F.3d 1297 (9th Cir. 1997) ....................................................................... 22

*Lighthiser v. Trump*,
No. 25-6714, 2026 WL 1555982 (9th Cir. June 2, 2026).................................... 2, 20

*Lighthiser v. Trump*,
No. CV 25-54-BU-DLC, 2025 WL 2930569 (D. Mont. Oct. 15, 2025)................. 2, 20

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
591 U.S. 657 (2020)...................................................................................... 15

*Mayor, Alderman & Commonalty of N.Y. v. Miln*,
36 U.S. 102 (1837)........................................................................................ 12

*Nat'l Audubon Soc'y v. Super. Ct.*,
658 P.2d 709 (Cal. 1983)............................................................................... 10

*PPL Mont., LLC v. Montana*,
565 U.S. 576 (2012)...................................................................................... 10

*Rochin v. California*,
342 U.S. 165 (1952)........................................................................................ 8

*SEC v. U.S. Realty & Improvement Co.*,
310 U.S. 434 (1940) ..... 22

*Smith v. L.A. Unified Sch. Dist.*,
830 F.3d 843 (9th Cir. 2016) ..... 20

*Smith v. Turner*,
48 U.S. 283 (1849) ..... 12

*State ex rel. Lockyer v. United States*,
450 F.3d 436 (9th Cir. 2006) ..... 15

*Sw. Ctr. for Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001) ..... 15, 19

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972) ..... 21

*United States v. Lopez*,
514 U.S. 549 (1995) ..... 12

*United States v. Oregon*,
745 F.2d 550 (9th Cir. 1984) ..... 20

*United States v. White Mountain Apache Tribe*,
537 U.S. 465 (2003) ..... 11

*United States v. Windsor*,
570 U.S. 744 (2013) ..... 9

*Washington v. Glucksberg*,
521 U.S. 702 (1997) ..... 8

*Wilkinson v. Austin*,
545 U.S. 209 (2005) ..... 9

*Wolff v. McDonnell*,
418 U.S. 539 (1974) ..... 9

*Wyeth v. Levine*,
555 U.S. 555 (2009) ..... 11

*Youngberg v. Romeo*,
457 U.S. 307 (1982) ..... 8

**CONSTITUTIONAL PROVISIONS**

Cal. Const. art. I, § 1 ..... 9

Cal. Const. art. I, § 4 ..... 10

Cal. Const. art. I, § 7(a) ..... 9

Cal. Const. art. X, § 2 ..... 9

Cal. Const. art. X, § 4 .......... 9

Cal. Const. art. XIII A, § 2.2 .......... 10

Cal. Const. art. XIX, § 3 .......... 9

Haw. Const. art. XI, § 1 .......... 10

Haw. Const. art. XI, § 2 .......... 10

Haw. Const. art. XI, § 9 .......... 10

U.S. Const. amend. I .......... 7

U.S. Const. amend. V .......... 7

U.S. Const. amend. X .......... 11

U.S. Const. amend. XIV .......... 7

**STATUTES**

42 U.S.C. § 2000bb-1 .......... 7

42 U.S.C. § 7401(a)(3) .......... 12

Cal. Code Regs. tit. 13, § 1961.1 .......... 13

Cal. Code Regs. tit. 13, § 1961.3 .......... 13

Cal. Code Regs. tit. 13, § 1962.2 .......... 13

Cal. Health & Safety Code § 38501(a) .......... 13

EPCA, Pub. L. 94-163 § 502, 89 Stat. 904 (1975) .......... 12

Haw. Rev. Stat. § 225P-8 .......... 10

**RULES**

Fed. R. Civ. P. 24(a) .......... passim

Fed. R. Civ. P. 24(b) .......... 1, 22

**OTHER AUTHORITIES**

1 William Blackstone, *Commentaries on the Laws of England* (1765) .......... 8

2 William Blackstone, *Commentaries on the Laws of England* (1766) .......... 11

Advisory Committee Notes to 1966 Amend., Fed. R. Civ. P. 24 .......... 19

Brief for United States as Amicus Curiae Supporting Petitioners, *Suncor Energy (U.S.A.) Inc. v. Cnty. Comm'rs of Boulder Cnty.*, No. 25-170, 2026 WL 1483693 (U.S. May 21, 2026) .......... 2

CARB, *Children and Air Pollution*, https://ww2.arb.ca.gov/resources/documents/children-and-air-pollution .................. 5

CARB, *Children's Health: About*, https://ww2.arb.ca.gov/our-work/programs/childrens-health/about........................... 5

CARB, *The Children's Health Study*, https://ww2.arb.ca.gov/resources/documents/childrens-health-study....................... 4

Declaration of Independence (U.S. 1776) ........................................................................ 8

EPA, *Amendments and Nonconformance Penalties for Model Year 2027 and Later Heavy-Duty Highway Engines and Amendments to Inducement Provisions for SCR-Equipped Diesel Engines*, 91 Fed. Reg. 43154 (proposed July 14, 2026) .... 19

EPA, *Rescission of the Greenhouse Gas Endangerment Finding and Motor Vehicle Greenhouse Gas Emission Standards Under the Clean Air Act*, 91 Fed. Reg. 7686 (Feb. 18, 2026) ........................................................................... 12, 19

Exec. Order No. 14154, *Unleashing American Energy*, 90 Fed. Reg. 8353 (Jan. 29, 2025) .................................................................................................. 2, 19

H.R. Rep. No. 94-340 (1975) .......................................................................... 13

James Madison, *Address to the Agricultural Society of Albemarle* (May 12, 1818) ...... 8

John Locke, Second Treatise of Government (1690) ..................................................... 8

Joint Stipulation and Order re: Settlement, *Navahine v. Haw. Dep't of Transp.*, No. 1CCV-22-0000631 (Haw. 1st Cir. Ct. June 20, 2024) .................................. 3, 10, 18

Mary Christina Wood, *Advancing the Sovereign Trust of Government to Safeguard the Environment for Present and Future Generations (Part I): Ecological Realism and the Need for a Paradigm Shift*, 39 Env't L. 43, 69 (2009) .................. 11

NHTSA, *The Safer Affordable Fuel-Efficient (SAFE) Vehicles Rule III for Model Years 2022 to 2031 Passenger Cars and Light Trucks*, 90 Fed. Reg. 56438 (proposed Dec. 5, 2025)............................................................................. 19

Samuel Johnson, A Dictionary of the English Language (1755) .................................... 8

Samuel Johnson, A Dictionary of the English Language (1773) ................................ 8, 9

The Federalist No. 45 (James Madison)......................................................................... 11

The Federalist No. 51 (James Madison)........................................................................... 7

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Moving parties Emma Weibel, A.B. by and through his guardian D.B., Ariela Lara, C.M. by and through her guardian E.M., E.F. by and through his guardian H.S., I.W. by and through her guardian C.W., Kalālapa Winter, L.H. by and through her guardian R.H., Luca Cuniberti, M.A. by and through her guardian M.T., Maya Williams, Roan Byrne-Sarno, S.H. by and through her guardian S.H., and Z.W. by and through her guardian T.W. (collectively "Defendant-Intervenors" or "Youth-Intervenors") respectfully move to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a) as Defendants in this action or, in the alternative, for permissive intervention under Rule 24(b).

In this action, Plaintiffs the United States of America and United States Department of Transportation (collectively "Plaintiffs" or the "United States") have alleged the regulations of Defendant California Air Resources Board ("Defendant" or "CARB") that limit tailpipe carbon dioxide ("$CO_2$") emissions from light-duty vehicles and manufacturer fleet requirements for zero emission vehicles ("ZEVs") are preempted by the federal Energy Policy and Conservation Act ("EPCA"). The United States seeks declaratory and injunctive relief preventing CARB from adopting and enforcing the challenged regulations, in addition to prohibiting the promulgation of any new regulations designed to reduce $CO_2$ emissions from motor vehicles or to encourage the transition towards ZEVs. By this action, the United States seeks to strip states of their sovereign police powers and public trust duties to limit $CO_2$ pollution, which are necessary to protect children and future generations of state residents, while simultaneously taking the position in Executive Orders, federal rulemaking, and other legal proceedings that the federal government will also not limit $CO_2$ pollution or fossil fuel use. The United States, in collaboration with the fossil fuel industry, seeks to exercise total control over greenhouse gas ("GHG") emissions through its unlawful preemption theories in order to safeguard fossil fuel emitters while simultaneously harming Youth-Intervenors'

fundamental rights. *See, e.g.,* Brief for United States as Amicus Curiae Supporting Petitioners, *Suncor Energy (U.S.A.) Inc. v. Cnty. Comm'rs of Boulder Cnty.,* No. 25-170, 2026 WL 1483693, at *34 n.4 (U.S. May 21, 2026). The Department of Justice and Department of Transportation are pursuing this case at the direction of the President's Executive Orders commanding the "unleashing" of fossil fuels and a policy preference against electric vehicles. In the crosshairs is a "children's health emergency." Exec. Order No. 14154, *Unleashing American Energy*, 90 Fed. Reg. 8353 (Jan. 29, 2025); *Lighthiser v. Trump*, No. CV 25-54-BU-DLC, 2025 WL 2930569 (D. Mont. Oct. 15, 2025), *aff'd*, No. 25-6714, 2026 WL 1555982 (9th Cir. June 2, 2026); Millstein Decl. ¶ 3.

Youth-Intervenors seek to defend against imminent infringements of their constitutional and public trust rights from any federal preemption of state regulations designed to limit pollution from vehicles and mitigate the effects of climate change caused by emissions from fossil fuel transportation. A preemption decision in this matter will have significant implications for Youth-Intervenors' rights within and beyond California's borders.

Youth-Intervenors satisfy the four requirements for intervention as of right under Rule 24(a)(2). First, Youth-Intervenors have significant, legally protectable interests in preserving their fundamental rights to life and liberties, including health (bodily integrity), personal security, travel, and religious freedom, and property, including their use of and access to their public trust resources under the U.S. Constitution, their respective state constitutions, and the common law public trust doctrine in California, to which they are beneficiaries. Youth-Intervenors' protectable constitutional and public trust interests are being harmed by the tailpipe emissions CARB's regulations seek to limit, and hence these interests would be harmed by any repeal thereof. These emissions cause Youth-Intervenors' injuries such as asthma triggered and worsened by traffic pollution, extreme heat and smoke, wildfires and flooding that destroys their homes and disrupts their education and prevents religious practices, among other health- and climate-related

injuries described below. Second, Youth-Intervenors seek to defend their protectable interests by preserving the ability (and duty) of California and other states to adopt GHG emissions limits and ZEV standards pursuant to their police powers and constitutional and public trustee obligations to protect Youth-Intervenors and prevent further deprivation of Youth-Intervenors' fundamental rights. The Hawai'i Youth-Intervenors have a related and unique protectable interest in a court-approved settlement agreement with the State of Hawai'i with the commitment of achieving the emissions reductions target set by the State legislature to sequester more carbon than emitted within the State by 2045, which requires achieving zero emissions across their transportation sector. Joint Stipulation and Order re: Settlement, *Navahine v. Haw. Dep't of Transp.*, No. 1CCV-22-0000631 (Haw. 1st Cir. Ct. June 20, 2024) ("Settlement Agreement") (attached as Attachment 2, Ex. A). Hawai'i's ability to comply with the Settlement Agreement with Youth-Intervenors here is subject to, in part, the scope of Hawai'i's authority in relationship to federal law, which a preemption ruling here would undermine. Third, this Motion to Intervene is timely because the case remains at an early stage, intervention would not prejudice the parties, and the timing is reasonable as this matter is set for hearing on the same date as the motion by American Fuel and Petrochemical Association, et al., to intervene as Plaintiffs and can be heard simultaneously. Fourth, Youth-Intervenors' interests are not adequately represented by the parties because CARB will not defend the Youth-Intervenors' distinct federal and state constitutional rights or their rights under the public trust doctrine.

## II. FACTUAL & PROCEDURAL BACKGROUND

### A. Climate Change Disproportionately Harms the Health, Safety, Welfare, Homes, Education, Travel, and Religious Freedom of Children and Youth

Youth-Intervenors are children and youth ages 14 to 22 who are experiencing grave injuries to their lives, liberties, religious freedom, and public trust resources because of pollution from motor vehicles that CARB's challenged regulations are

designed to address. Children and youth shoulder the greatest health burdens from breathing in fossil fuel pollution and experiencing climate change caused by that pollution over the course of their lifetimes. Combustion of fossil fuels to power motor vehicles emits fine particulate matter ($PM_{2.5}$), nitrogen dioxide ($NO_2$), black carbon, and ozone precursors. Millstein Decl. ¶¶ 9–10, 12; *id.* Ex. 3 (hereinafter, Balmes Decl.) ¶ 17. These pollutants tend to be most highly concentrated in close proximity to pollution sources, like busy roads. CARB has correctly concluded that "Air Pollution Harms Children's Lungs for Life."[1] The health risks to children from air pollution begin prenatally, where studies show maternal exposure to $PM_{2.5}$ increases the risk of impaired lung function and development of asthma during childhood. Balmes Decl. ¶ 18; Millstein Decl. ¶¶ 14, 16. Limiting exposure to air pollution during childhood is critical for limiting chronic disease morbidity and mortality over a child's entire lifespan. Millstein Decl. ¶¶ 4, 7, 13–23; Balmes. Decl. ¶ 18. "Children are particularly susceptible to air pollution as they have developing lungs, weigh less, and breathe faster than adults, resulting in a higher effective dose of air pollution." Balmes Decl. ¶ 18.

Many Youth-Intervenors live close to, or bike along, busy roads where traffic pollution is especially dangerous for children. A.B. Decl. ¶ 8; Emma Decl. ¶ 4; Maya Decl. ¶ 6; Balmes Decl. ¶ 19. The health harms are heightened for Youth-Intervenors like Emma and Maya who have been diagnosed with asthma made worse by increasing heat and poor air quality, as well as those living in already-over-polluted communities, like Kalālapa in Los Angeles, S.H. in Visalia, and Emma in San Diego, places which get Failing grades for ozone and PM pollution. Proposed Answer at 2, 5–8; Kalālapa Decl. ¶ 5; S.H. Decl. ¶ 6; Maya Decl. ¶¶ 3, 6; Emma Decl. ¶¶ 3–4; Dkt. 35 at 5 (CARB describing

[1] CARB, *The Children's Health Study*, https://ww2.arb.ca.gov/resources/documents/childrens-health-study (last visited Aug. 17, 2026), attached hereto as Attachment 3. The summary of this ten-year, $18 million study funded by U.S. EPA and CARB, produced results showing how air pollution reduces children's lung growth and function, impacts respiratory health in asthmatic children, including new asthma cases and contributes to increased school absences and can be judicially noticed as a formal agency report. *See Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

California's "extreme" and persistent air pollution problems). Breathing in traffic-related pollution is strongly associated with the development of childhood asthma, as is exposure to $PM_{2.5}$, black carbon, and $NO_2$. Balmes Decl. ¶ 19. Exposure to fossil fuel pollution during childhood has been associated with reduced memory and cognitive function in children, as well as other adverse neurodevelopmental and neurocognitive outcomes, including academic achievement. Balmes Decl. ¶ 22. Breathing in fossil fuel pollution when one is a child leads to life-long injuries. Millstein Decl. ¶ 19.

Studies conducted by CARB that examine long-term health trends show reductions in air pollution are associated with "significantly reduced bronchitic symptoms and clinically significant positive effects on lung-function growth in" children, which "demonstrate how CARB's regulations to reduce pollution emissions can result in health benefits in one of our most sensitive groups, our children."[2] "Improvements in $NO_2$ and $PM_{2.5}$ levels between 1993 and 2014 were associated with decreased asthma incidence in children in California, and communities that experienced greater air quality improvements saw the greatest reductions in new asthma cases. Cleaner air is healthier air, and healthier air means healthier children." Balmes Decl. ¶ 26. Thus, any reductions in air pollution attributed to the CARB rules that the United States seeks to preempt would improve the health and wellbeing of Youth-Intervenors. Millstein Decl. ¶¶ 23–24. Enjoining the rules, and preventing new ones, would have the opposite effect.

CARB's regulations that the United States seeks to preempt are also designed to reduce GHG emissions created by burning fossil fuels. Millstein Decl. ¶¶ 3–4, 23; Cayan Decl. ¶¶ 3, 5, 8, 10, 21, 26.

Youth-Intervenors are living through unprecedented extreme heat events that are harmful to their health and disrupt pursuits central to their growth and development,

---

[2] CARB, *Children's Health: About*, https://ww2.arb.ca.gov/our-work/programs/childrens-health/about (last visited Aug. 17, 2026), attached hereto as Attachment 4. *See also* CARB, *Children and Air Pollution* https://ww2.arb.ca.gov/resources/documents/children-and-air-pollution (last visited Aug. 17, 2026), attached hereto as Attachment 5. The Court can take judicial notice of these summaries of CARB's report. *Barron*, 13 F.3d at 1377.

including schools, sports, recreational activities, and religious practices. *See, e.g.*, A.B. Decl. ¶¶ 4–7 (Civil Air Patrol and Scouting America outdoor activities interrupted by extreme heat and wildfire smoke); Ariela (learning disrupted because there is no air conditioning at college); Roan (hikes canceled due to heat); S.H. Decl. ¶¶ 4–5, 8–9 (tennis practices, educational opportunities, and religious gatherings canceled in high heat); Maya Decl. ¶ 5 (disruption to education); Millstein Decl. ¶¶ 14–15, 18. For example, Emma, an 18-year-old resident of La Jolla, CA, was diagnosed with exercise-induced asthma which is worsened by extreme heat. Emma Decl. ¶ 3. M.A., who is Muslim, says extreme heat inhibits her ability to wear a hijab and participate in the Hajj, the pilgrimage to Mecca done on foot in which M.A. plans to participate. Proposed Answer at 7. S.H., who is also Muslim, says extreme heat limits her ability to wear traditional clothing while attending mosque in Visalia. S.H. Decl. ¶ 9.

Climate change is increasing the severity and duration of the wildfire season, which is reversing improvements in air quality from stricter emission standards. Millstein Decl. ¶ 14. A recent study estimates that climate change created by burning fossil fuels contributed to 15,000 wildfire smoke deaths between 2006 and 2020, with an estimated cost of $11 billion per year. Millstein Decl. ¶ 20. Exposure to wildfire smoke worsens childhood asthma control, increases the risk of asthma flares, Millstein Decl. ¶ 15, and leads to forced evacuations for Youth-Intervenors, and the loss of their homes, missed school days, canceled activities, and orders to remain inside. I.W. Decl. ¶¶ 3–5; S.H Decl. ¶¶ 2–11; A.B. Decl. ¶¶ 6–7; Proposed Answer at 4, 8–9. Youth-Intervenor I.W. has already lost her home in the Tubbs wildfire, and has been forced to evacuate several other times, leading to extreme distress. I.W. Decl. ¶¶ 3–5. Avoiding exposure to wildfire smoke is essential to preserving lung health, Millstein Decl. ¶ 23, but for Youth-Intervenor S.H. who lives in Visalia within a bowl-shaped valley that traps wildfire smoke from even far-away fires, smoke is inescapable. S.H. Decl. ¶ 5. The lost ability to travel while avoiding poor air quality, and being trapped inside their homes where air quality can still

be unhealthy, are regular infringements on Youth-Intervenors' liberty interests and pursuit of happiness that will worsen. A.B. Decl. ¶ 4; I.W. Decl. ¶ 4; S.H. Decl. ¶¶ 5, 7. Reducing fossil fuel emissions is necessary to prevent the worsening of the dry and hot conditions (fire weather days) leading to unprecedented wildfires plaguing these Youth-Intervenors. Cayan Decl. ¶¶ 19–21, 28.

### B. Youth-Intervenors' Protectable Constitutional Interests

Youth-Intervenors' federal and state constitutional rights, and public trust beneficiary rights, are legally protectable interests.

#### 1. U.S. Constitution-Fundamental Rights

The constitutional structure of the United States sets forth a comprehensive federalism scheme of federal and state constitutional protections of the fundamental rights to life, liberties, and property of individual Youth-Intervenors. Federal preemption analysis must be conducted in light of the constitutional structure's aim to divide power to better preserve the liberties at stake here. *See* The Federalist No. 51 (James Madison). The First Amendment commands: "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. Const. amend. I. Congress enhanced protection for religious freedom by enacting the Religious Freedom Restoration Act ("RFRA"), which directs: "Government shall not substantially burden a person's exercise of religion" unless it can demonstrate the burden furthers "a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1. RFRA offers "broad protection for religious liberty" beyond that afforded by the First Amendment. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 706 (2014); *Holt v. Hobbs*, 574 U.S. 352, 356 (2015).

The Fifth and Fourteenth Amendments ensure "no person" shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amends. V, XIV. Life and liberty include protections of bodily integrity and personal security. The Framers understood the fundamental right to life as the right of current and future generations of

living persons to enjoy their "terrestrial existence" in health and the pursuit of happiness. *See, e.g.*, Samuel Johnson, A Dictionary of the English Language (1755) (defining "life" as "[e]njoyment, or possession of terrestrial existence"); James Madison, *Address to the Agricultural Society of Albemarle* (May 12, 1818) ("Animals, including man, and plants may be regarded as the most important part of the terrestrial creation. . . . To all of them, the atmosphere is the breath of life. Deprived of it, they all equally perish."); 1 William Blackstone, *Commentaries on the Laws of England* 123, 125 (1765) ("absolute rights" include "a person's legal and uninterrupted enjoyment of his life, his limbs, his body, his health"); John Locke, Second Treatise of Government 2.6 (1690) (inalienable natural rights include health). The right to life protects Youth-Intervenors from government acts that threaten essential aspects of their "terrestrial existence," interfering with their health, safety, or natural lifespan, including a livable future.

Youth-Intervenors enjoy a fundamental liberty interest in being free from governmental endangerment of their health and safety. *See, e.g.*, *Rochin v. California*, 342 U.S. 165, 172 (1952) (forced "stomach pumping" violates due process); *Youngberg v. Romeo*, 457 U.S. 307, 321, 324 (1982); *Helling v. McKinney*, 509 U.S. 25, 33, 35 (1993) (risk to prisoners' future health from exposure to tobacco smoke); *see also Caetano v. Massachusetts*, 577 U.S. 411, 421 (2016) (Alito & Thomas, JJ., concurring) ("A State's most basic responsibility is to keep its people safe."). "[T]he 'liberty' specially protected by the Due Process Clause includes the right[] . . . to bodily integrity[.]" *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). The related "right . . . to personal security is not only sacred in the estimation of the common law, but it is inalienable[.]" *Id.* at 714; Declaration of Independence (U.S. 1776) (focus on Safety of Life). Personal security encompasses freedom from government-induced bodily harm. *Ingraham v. Wright*, 430 U.S. 651, 661, 672–73 (1977); *see also Rochin*, 342 U.S. at 172. From the founding era, "safe" has been defined as "free from danger" and "free from hurt." *Safe*, Samuel Johnson, A Dictionary of the English Language (1773). "Security" was defined

as "freedom from fear," "protection," "the act of giving caution." *Security*, Samuel Johnson, A Dictionary of the English Language (1773).

Youth-Intervenors enjoy the right of freedom to travel without having to jeopardize their health and safety. "Freedom to travel throughout the United States has long been recognized as a basic right under the Constitution." *Dunn v. Blumstein*, 405 U.S. 330, 338 (1972) (citation modified) (collecting cases).

A Fifth Amendment-protected "liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' . . . or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citation modified); *see Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); *United States v. Windsor*, 570 U.S. 744, 764, 766, 769 (2013) (protecting state-recognized right to marry and declaring federal law to the contrary unconstitutional).

**2. State Constitutions-Fundamental Rights**

Under the California Constitution, "[a]ll people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Cal. Const. art. I, § 1; *see also id.* art. I, § 7(a) ("A person may not be deprived of life, liberty, or property without due process of law" and "protecting the health and safety of all public school pupils" "and protecting the environment" are "compelling public interests" protected within the Declaration of Rights). The California Constitution protects the public's right to reasonable and beneficial use and access to water resources, and protection against its waste, for the benefit of the general welfare of Californians. *See, e.g.*, Cal. Const. art. X, §§ 2, 4. The California Constitution creates a protectable interest in having state agencies use motor vehicle revenues to enforce vehicle laws for "the mitigation of the environmental effects of motor vehicle operation due to air and sound emissions." Cal. Const. art. XIX, § 3. The California Constitution also states an intent of the Legislature and the people to "ensure all communities are

protected from wildfires, and safeguard the lives of millions of Californians." Cal. Const. art. XIII A, § 2.2. Akin to federal law, "[f]ree exercise and enjoyment of religion without discrimination or preference are guaranteed." Cal. Const. art. I, § 4.

Protecting public trust-beneficiary rights of the citizens of a state to use and enjoy state public trust resources like air and water is traditionally within a state's authority. *See, e.g.*, *Ill. Cent. R.R. Co. v. Illinois*, 146 U.S. 387, 453 (1892); *PPL Mont., LLC v. Montana*, 565 U.S. 576, 603–04 (2012). In California, the dominant tenet of the public trust doctrine "is the state's sovereign power and duty to exercise continued supervision over the trust." *Nat'l Audubon Soc'y v. Super. Ct.*, 658 P.2d 709, 721 (Cal. 1983). The public trust doctrine "is an affirmation of the duty of the state to protect" public trust resources, "surrendering that right of protection only in rare cases when the abandonment of that right is consistent with the purposes of the trust." *Id.* at 724.

Under the Hawaiʻi Constitution, in addition to similar protections to life, liberty, and religious freedom, Youth-Intervenors C.M. and Kalālapa have "the right to a clean and healthful environment," which "subsumes a right to a life-sustaining climate system." Haw. Const. art. XI, § 9; *In re Maui Elec. Co.*, 506 P.3d 192, 202 n.15 (Haw. 2022); *see* Settlement Agreement. In Hawaiʻi, "the State and its political subdivisions shall conserve and protect Hawaii's natural beauty and all natural resources, including land, water, air, minerals and energy sources . . . ." Haw. Const. art. XI, § 1. "All public natural resources are held in trust by the State for the benefit of the people." Haw. Const. art. XI, § 2. "The beneficiaries of the public trust are not just present generations but those to come." *In re Water Use Permit Applications*, 9 P.3d 409, 455 (Haw. 2000); *see* Haw. Rev. Stat. § 225P-8 (requiring state to reduce GHG emissions from transportation); *In re Maui Elec. Co.*, 506 P.3d at 202 & n.15 (the right is an "affirmative [state] constitutional obligation[]" that "subsumes a right to a life-sustaining climate system," including "[t]he need to mitigate the catastrophic effects of anthropogenic climate change"); *In re Haw. Elec. Light Co.*, 526 P.3d 329, 336 (Haw. 2023).

Pursuant to the public trust doctrine, the sovereign trustees—governments—are affirmatively obligated to prevent substantial impairment or waste of trust property, and use skill and care to preserve the trust property for present and future generations. *See* Mary Christina Wood, *Advancing the Sovereign Trust of Government to Safeguard the Environment for Present and Future Generations (Part I): Ecological Realism and the Need for a Paradigm Shift*, 39 Env't L. 43, 69 (2009). Unlike discretionary police powers, the public trust doctrine imposes *affirmative* duties on trustees to preserve and maintain trust assets. *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 475 (2003). Air and water have long been understood to be among the resources protected by the public trust doctrine. 2 William Blackstone, *Commentaries on the Laws of England* 14 (1766) ("[T]here are some few things which, notwithstanding the general introduction and continuance of property, must still unavoidably remain in common . . . . Such (among others) are the elements of light, air, and water[.]"); *Geer v. Connecticut*, 161 U.S. 519, 525–26 (1896).

### 3. Statutory Background

The Tenth Amendment ensures that powers not specifically granted to the federal government remain with the States and the people, including Youth-Intervenors. U.S. Const. amend. X; *Gregory v. Ashcroft*, 501 U.S. 452, 457–58 (1991); *see also Wyeth v. Levine*, 555 U.S. 555, 584–85 (2009) (Thomas, J., concurring) ("In accordance with the text and structure of the Constitution, '[t]he powers delegated by the proposed constitution to the federal government, are few and defined' and '[t]hose which are to remain in the state governments, are numerous and indefinite.'" (quoting The Federalist No. 45, at 237–38 (James Madison)).

The regulation of air pollution from vehicles falls squarely within the scope of the States' traditional police powers[3] to protect the health, safety, and welfare of their

[3] Police power is the plenary power to make any and all laws necessary "as to the protection of the lives, limbs, health, comfort, and quiet of all persons," among other ends. *Gonzales v. Oregon*, 546 U.S. 243, 270 (2006); *Kelley v. Johnson*, 425 U.S. 238, 247

citizens. *See, e.g.*, *Huron Portland Cement Co. v. Detroit*, 362 U.S. 440, 445 (1960); *Smith v. Turner*, 48 U.S. 283, 357–58 (1849) (holding protecting people from health injury is broadly within the States' authority, not the federal government's). Under the Tenth Amendment, "[i]t is not only the right, but the bounden and solemn duty of a state, to advance the safety, happiness and prosperity of its people, and to provide for its general welfare, by any and every act of legislation which it may deem to be conducive to these ends[.]" *Mayor, Alderman & Commonalty of N.Y. v. Miln*, 36 U.S. 102, 139 (1837). Indeed, the Clean Air Act ("CAA") makes "the States and the Federal Government partners in the struggle against air pollution." *Gen. Motors Corp. v. United States*, 496 U.S. 530, 532 (1990); 42 U.S.C. § 7401(a)(3). Now that the federal government currently denies the CAA authorizes federal regulation of vehicle GHG emissions *at all*, a matter being litigated in the D.C. Circuit, CARB's regulations are all the more important for Youth-Intervenors' constitutionally protectable interests. *See* EPA, *Rescission of the Greenhouse Gas Endangerment Finding and Motor Vehicle Greenhouse Gas Emission Standards Under the Clean Air Act*, 91 Fed. Reg. 7686, 7686 (Feb. 18, 2026) ("The EPA determines that CAA section 202(a)(1) does not authorize the Agency to prescribe emission standards in response to global climate change concerns[.]"); *Am. Pub. Health Ass'n v. U.S. EPA*, No. 26-2037 (D.C. Cir. filed Feb. 18, 2026).

Congress enacted the Energy Policy and Conservation Act ("EPCA") in 1975. Even while creating a nationwide fuel-economy framework to conserve energy use, Congress expressly recognized that California would continue enforcing vehicle-emissions standards pursuant to CAA waivers and directed federal regulators to account for the effects of those standards when administering federal fuel-economy requirements. *See* EPCA, Pub. L. 94-163 § 502(d)(3)(D)(i), 89 Stat. 904 (1975); H.R.

---

(1976) ("The promotion of safety of persons and property is unquestionably at the core of the State's police power"); *Berman v. Parker*, 348 U.S. 26, 32 (1954). States have police power; the federal government does not. *United States v. Lopez*, 514 U.S. 549, 566 (1995).

Rep. No. 94-340, at 86–87 (1975). CARB's motor vehicle emissions standards and EPCA fuel efficiency standards have coexisted for decades. *See* Dkt. 35 at 2–7.

### C. Regulatory Background

The California legislature found climate change from burning fossil fuels causes numerous environmental and public-health harms within the State, including worsening ozone pollution, heat-related impacts, wildfires, and other threats to public welfare. *See* Cal. Health & Safety Code § 38501(a); Dkt. 35 at 5 (referencing California's "extraordinary climate-related harms, including worsening ozone pollution caused by rising temperatures"). CARB thus adopted the Nation's first ZEV regulation in 1990 and vehicle GHG standards in 2004. *See* Cal. Code Regs. tit. 13, § 1961.1.

In 2012, California updated its light-duty vehicle emissions program known as Advanced Clean Cars I ("ACC I") "as part of its longstanding regulatory efforts to reduce vehicle emissions and thereby mitigate the severe air pollution challenges faced by the State." *See* Cal. Code Regs. tit. 13, §§ 1961.3, 1962.2; Dkt. 35 at 1. ACC I integrated California's traditional criteria-pollutant standards, GHG standards, and ZEV requirements into a coordinated regulatory framework governing light-duty vehicles sold in the State. *See* Dkt. 35 at 5–7. In 2022, CARB amended ACC I ZEV standards to expire after model year 2025. Dkt. 35 at 6.

CARB's existing and future vehicle regulations are needed to protect the fundamental rights of Youth-Intervenors by requiring reductions in the air and climate pollution that invades their bodies, harms their health, reduces their lifespans, damages their property including public trust resources, impedes their right to travel, interferes with their education, increases their risk of mortality, and substantially burdens their religious practices. The ability of any State, including Hawai'i, to regulate vehicle emissions without facing a claim of federal preemption, is vital to the legally protectable interests of Youth-Intervenors, including Hawai'i youth who have an enforceable settlement agreement with their State to bring vehicle GHG emissions to zero by 2045.

### D. Procedural History

On March 12, 2026, the United States, et al., sued CARB and its Executive Officer Steven Cliff, in his official capacity, seeking declaratory and injunctive relief on preemption grounds against CARB "for adopting and enforcing regulations related to fuel economy standards for light-duty vehicles in violation of the Energy Policy Conservation Act, 49 U.S.C. § 32919(a), and the U.S. Constitution [Supremacy Clause]." Dkt. 1 at 1–2. On May 26, 2026, CARB filed a motion to dismiss arguing the United States lacked standing to bring their claims. Dkt. 15. The same day, the American Fuel & Petrochemical Manufacturers, National Association of Convenience Stores, and Energy Marketers of America moved to intervene as Plaintiffs ("Industry-Intervenors"), Dkt. 17. The United States took no position on the motion and CARB ultimately opposed the motion. *Id.*; Dkt. 33. The United States filed a First Amended Complaint on June 16, 2026, Dkt. 27, which CARB moved to dismiss on July 7, 2026. Dkt. 35. The parties then filed a Joint Stipulation Setting Briefing Schedule for the Motion to Dismiss on July 15, 2026, Dkt. 38, which the Court entered on July 21, 2026. Dkt. 39. The Court scheduled a hearing on CARB's Motion to Dismiss the First Amended Complaint and Industry-Intervenors' Motion to Intervene for September 24, 2026 at 1:30pm. Dkt. 39. On August 12, Plaintiffs filed a motion for summary judgment, Dkt. 43, which CARB moved to stay or defer until resolution of the pending motion to dismiss. Dkt. 44.

## III. ARGUMENT

### A. Youth-Intervenors Meet the Ninth Circuit's Test for Intervention as a Matter of Right

Federal Rule of Civil Procedure 24(a)(2) provides:

> On a timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). To be granted intervention of right, the applicant must meet four requirements: (1) the motion is timely; (2) the applicant has a significant protectable

interest relating to the property or transaction that is the subject of the action; (3) without intervention, the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the existing parties may not adequately represent the applicant's interests. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). These four requirements "are broadly interpreted in favor of intervention." *Id.*; *see also State ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006) (The Ninth Circuit "construe[s] Rule 24(a) liberally in favor of potential intervenors.").[4]

Courts "take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed . . . answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001). Youth-Intervenors' allegations and declarations in support thereof establish their right to intervene.

### 1. Youth-Intervenors Have Significant Protectable Interests at Stake in This Litigation

A proposed intervenor has a "significantly protectable interest" relating to the property or transaction at issue if the interest is "protectable under some law," and there is a "relationship" between it and the claims at issue. *Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003). The requisite interest need not be direct, provided it may be impaired by the outcome of the litigation. *Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.*, 386 U.S. 129, 135–36 (1967). The Ninth Circuit views this test as "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *In re Estate of Ferdinand E. Marcos Hum. Rts. Litig.*, 536 F.3d 980, 985 (9th Cir. 2008) (citation modified); *Cal. Dump*

[4] Youth-Intervenors need not show Article III standing because they are not the party invoking the Court's jurisdiction with a claim for relief. *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020) ("An intervenor of right must independently demonstrate Article III standing if it pursues relief that is broader than or different from the party invoking a court's jurisdiction.").

*Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 304, 306 (E.D. Cal. 2011) (granting intervention to organization whose members had "interests in reducing the public health impacts of diesel emissions in California," in action brought by a dump truck owners' association to enjoin enforcement of a CARB emissions regulation on preemption grounds); *id*. at 306–07 (finding it sufficient that intervenors "benefit[ted] from the challenged legislation by way of improved air quality and health.").

Here, Youth-Intervenors have significant protectable interests in preventing infringements of their federal and state constitutional and public trust rights from the fossil fuel pollution CARB's rules seek to limit and the United States seeks to enjoin. *See id.* at 306–07. The challenged regulations are designed to reduce GHG emissions and localized air pollution, Dkt. 35 at 2–7, thereby mitigating, and preventing the worsening of, Youth-Intervenors' harms to their lives, liberties, public trust resources, and religious freedom. Cayan Decl. ¶¶ 3, 13, 28. Youth-Intervenors' constitutional interests are personal, concrete, ongoing, and urgent. Youth-Intervenor Maya, for example, has asthma. Heat, air pollution, and wildfire smoke exacerbate her condition and limit her ability to safely participate in outdoor activities. Maya Decl. ¶¶ 3–4, 6; *see also* Emma Decl. ¶ 3; S.H. Decl. ¶ 7 (breathing in smoke worsens respiratory ailment); Millstein Decl. ¶¶ 15, 18, 20–22; Cayan Decl. ¶¶ 15, 20, 26–27. Youth-Intervenors S.H. and M.A., who are Muslim, have had religious activities canceled due to bad air quality and wearing traditional religious clothing is becoming untenable due to extreme heat. S.H. Decl. ¶ 9; Millstein ¶ 15. Any avoided heat, air pollution, or wildfire smoke from reductions in vehicle tailpipe emissions reduces harm to Maya, Emma, S.H., and M.A. and benefits their health, safety, and religious upbringing. Millstein Decl. ¶ 23; *id.* Ex. 2 (hereinafter Pinsky Decl.) ¶¶ 7, 25, 30, 38–40, 42, 48; Balmes Decl. ¶¶ 20, 26, 28; Cayan Decl. ¶¶ 3, 13, 18. A.B., who is a Scout and a member of Civil Air Patrol, as well as an outdoor enthusiast who enjoys backcountry travel, has already had his ability to travel for outdoor activities, bicycle in his community, and participate in important educational and training

opportunities harmed by vehicle pollution, increasing heat, wildfire danger, and smoke. A.B. Decl. ¶¶ 2–9. The United States' request for relief will worsen each of these injuries. Thus, the California-based Youth-Intervenors possess significant protectable legal interests in preserving CARB regulations designed to protect them. *See Cal. Dump Truck Owners Ass'n*, 275 F.R.D. at 306–07.

Because Youth-Intervenors disproportionately bear the health burdens of childhood exposure to air pollution and climate change over their lifetimes as compared to older generations, Millstein Decl. ¶¶ 16–18, Balmes Decl. ¶¶ 18–19, 22, their constitutional interests in maintaining regulations designed to reduce GHG emissions as necessary to protect their lives, liberties, and religious freedoms are particularly direct and substantial. As child and adolescent psychiatrist and pediatrician, Dr. Pinsky states, "[t]he only intervention to fully protect children from the health harms associated with pollution from fossil fuel-powered vehicles, and to avoid new ones, is to limit exposure to that pollution." Pinsky Decl. ¶¶ 1, 7, 4 ("[E]missions from fossil fuel powered vehicles of greenhouse gases (GHG) and other pollutants cause and exacerbate respiratory, allergic, cardiovascular, gastrointestinal, neuropsychiatric, endocrinologic, and infectious diseases in children and youth, leading to suffering and endangering the quality and length of their lives."). The outcome of this litigation will affect the severity of pollution and climate-related harms Youth-Intervenors experience in the years and decades ahead, including increased exposure to extreme heat, wildfire smoke, drought, flooding, and other climate-related risks, which harm them physically, invading their personal security and bodily integrity, and also impede their fundamental rights to travel or practice their faiths without risking physical injury. Cayan Decl. ¶¶ 15, 19-21, 26-27; Pinsky Decl. ¶¶ 7, 25-48, 62.

Youth-Intervenors Kalālapa, Luca, and C.M. seek to protect their distinct legal interests as citizens of Hawai'i, beneficiaries, and/or parties of the Settlement Agreement in *Navahine v. Haw. Dep't of Transp.*, where the State of Hawai'i "committed to reducing

GHG emissions from its statewide transportation system according to 'the best available science' and the governing legal mandates to address climate change and protect the constitutional rights of Hawai'i citizens." Settlement Agreement at 3; Kalālapa Decl. ¶ 6. The settlement, which commits the State to achieving zero emissions in ground, marine, and inter-island air transportation no later than 2045, acknowledges: "[t]he State's public trust considerations include 'those related to protection of air and other trust resources affected by climate change.'" Settlement Agreement at 4 (quoting *In re Maui Elec. Co.*, 506 P.3d at 202). A preemption ruling of CARB's regulations in the Ninth Circuit would interfere with Hawai'i's ability to similarly regulate vehicles to comply with its Settlement Agreement obligations, thereby harming the legally protectable interests of these Youth-Intervenors. Kalālapa, who as a Native Hawaiian calls Hawai'i home, and who attended school in and is also a resident of California, is doubly harmed. Kalālapa Decl. ¶¶ 2, 5.

In sum, Youth-Intervenors have significant, specific interests, protectable under law, with a plain and direct relationship to the instant litigation. Such interests are sufficient to justify intervention under Rule 24(a)(2).

### 2. The Disposition of This Action Will Impair Youth-Intervenors' Ability to Protect Their Interest Because Any Remedy Limiting CARB's Ability to Regulate Vehicle Emissions Harms Youth-Intervenors' Interests

A proposed intervenor must show the disposition of an action "may," as a practical matter, impede the intervenor's ability to protect its interests in the subject of the action. Fed. R. Civ. P. 24(a)(2). "[T]he court is not limited to consequences of a strictly legal nature." *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1497–98 (9th Cir. 1995). A judgment in the United States' favor would impair the interests of Youth-Intervenors because the federal government seeks a declaration and injunction precluding California (and consequently other states, especially in the Ninth Circuit) from enforcing regulations designed to reduce the pollution from light-duty vehicles, all the while the federal government eviscerates its own GHG regulations of vehicles. Dkt. 27 ¶ 4. If the United States succeeds, the health and safety benefits of CARB's regulatory

regime—including not only these regulations, but also regulations CARB or other states could potentially enact in the future, including more stringent regulations—will be lost, as will a crucial mechanism to protect Youth-Intervenors from the climate crisis*. C.f. Sw. Ctr. for Biological Diversity*, 268 F.3d at 822–23 (holding when an action seeks to invalidate a regulatory regime that a proposed intervenor benefits from, disposition of the action may, as a practical matter, impair the intervenor's interests); *see also* Advisory Committee Notes to 1966 Amend., Fed. R. Civ. P. 24 ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.").

Importantly, the United States seeks to preempt CARB's existing and future rules, not to ensure greater air quality protections through federal law, but to prevent the regulation of GHGs entirely in order to "unleash" fossil fuels. *See* Exec. Order No. 14154, 90 Fed. Reg. 8353 (Jan. 29, 2025). While litigating this case, the United States is simultaneously rescinding and repealing nearly all federal regulations designed to reduce GHG emissions from motor vehicles and other sources, including EPA's Endangerment Finding which serves as a precursor for EPA to regulate GHGs. *See, e.g.*, EPA, *Rescission of the Greenhouse Gas Endangerment Finding*, 91 Fed. Reg. 7686 (Feb. 18, 2026); NHTSA, *The Safer Affordable Fuel-Efficient (SAFE) Vehicles Rule III for Model Years 2022 to 2031 Passenger Cars and Light Trucks*, 90 Fed. Reg. 56438 (proposed Dec. 5, 2025) (to be codified at 49 C.F.R. pts. 523, 531, 533, 536 & 537); EPA, *Amendments and Nonconformance Penalties for Model Year 2027 and Later Heavy-Duty Highway Engines and Amendments to Inducement Provisions for SCR-Equipped Diesel Engines*, 91 Fed. Reg. 43154 (proposed July 14, 2026) (to be codified at 40 C.F.R. pts. 86, 1036, 1037, 1039, 1065, and 1071). Some Youth-Intervenors have demonstrated their interest in vindicating their constitutional rights by filing a petition for review and seeking to stay EPA's rescission of the Endangerment Finding and repeal of GHG emission standards for motor vehicles and by suing to invalidate President Trump's

Executive Order directing the "unleashing" of fossil fuels. *See* Maya Decl. ¶ 9; Emma Decl. ¶ 7; Kalālapa Decl. ¶ 7; *Venner v. U.S. EPA*, No. 26-1038 (D.C. Cir. filed Feb. 18, 2026); *Lighthiser*, 2025 WL 2930569, *aff'd*, 2026 WL 1555982. Other Youth-Intervenors are seeking to protect their legal interests as parties to and beneficiaries of the *Navahine v. HDOT* Settlement Agreement. Thus, an order in the United States' favor would impede Youth-Intervenors' ability to protect their constitutional and other interests that are being harmed by fossil fuel pollution from vehicles.

**3. The Motion is Timely**

"Timeliness is determined by the totality of the circumstances facing would-be intervenors, with a focus on three primary factors: (1) the stage of the proceedings at which the applicant seeks to intervene; (2) the prejudice to the other parties; and (3) the reason for and the length of the delay." *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (citation modified). "[T]he timeliness requirement for intervention as of right should be treated more leniently than for permissive intervention because of the likelihood of more serious harm." *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984). The "stage of proceeding" factor "examine[s] whether the district court has substantively—and substantially—engaged the issues in the case." *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 826 (9th Cir. 2021) (citation modified).

Here, all three timeliness factors favor intervention. The litigation remains at the earliest stage. The original complaint was filed on March 12, 2026, and an amended complaint on June 16, 2026. *See* Compl., Dkt. 1; First Am. Compl., Dkt. 27. As in *Kalbers*, the original parties have appeared and responded to the pleadings, but the Court has not substantively engaged the merits of the dispute or issued any substantive rulings. *See* 22 F.4th at 826. Thus, Youth-Intervenors seek to intervene "just as this case beg[ins] gathering speed." *Id.* Nor will the timing of the intervention prejudice the existing parties. Because the Court has not issued any substantive rulings, discovery has not commenced, and this motion is noticed for September 24, 2026, to be heard

simultaneously with the intervention motion filed by applicant Industry-Intervenors and CARB's motion to dismiss, intervention will not disrupt any merits determinations or require the parties to revisit issues already decided.

#### 4. Youth-Intervenors' Interests Will Not Be Adequately Represented by CARB

The inadequate representation prong of Rule 24(a)(2) "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). To determine the adequacy of representation, the Ninth Circuit considers three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki*, 324 F.3d at 1086. "The most important factor . . . is how the interest compares with the interest of existing parties." *Id*. There is no presumption of aligned interests between the government and a private party simply because "both entities occupy the same posture in the litigation." *Citizens for Balanced Use*, 647 F.3d at 899 (citation omitted).

Youth-Intervenors advance distinct defenses based on the federal and state constitutions, as well as the public trust doctrine, to protect their legal interests in life, liberties, religious freedom, property, public trust resources, and a court-approved settlement agreement, and that preserving state authority to regulate vehicle emissions is necessary to safeguard those rights—defenses CARB is unlikely to raise and has not addressed in its Motion to Dismiss. *See* Dkt. 35; Proposed Answer at 21-22. Based on CARB's position in its Motion to Dismiss, CARB's defense will focus on protecting California's regulatory authority and institutional interests. In contrast, the defenses of Youth-Intervenors will focus on vindicating their own individual constitutional, public-trust beneficiary, and settlement agreement enforcement interests, which are not adequately

represented by the existing parties. *C.f. Citizens for Balanced Use*, 647 F.3d at 899 ("fundamentally differing points of view between [defendant] and [defendant-intervenor] on the litigation as a whole" established the inadequate representation prong was met).

Because Youth-Intervenors have satisfied all requirements for intervention of right under Rule 24(a)(2), this Motion to Intervene should be granted.

**B. Youth-Intervenors Should Be Granted Permissive Intervention**

In the alternative, the Court should also grant Youth-Intervenors permissive intervention because their "timely motion" presents a "defense that shares with the main action a common question of law or fact." *See* Fed. R. Civ. P. 24(b)(1). This Court has discretion to grant permissive intervention as an alternative basis if "(1) [the applicant has] independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997). Rule 24(b) "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." *SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 459 (1940).

For all of the reasons described above, permissive intervention is warranted here. Youth-Intervenors' Motion is timely; allowing Youth-Intervenors to intervene would not prejudice the rights of any parties or cause any undue delay. Youth-Intervenors have concrete interests in this litigation and seek protection of their constitutional rights implicated by claims set forth in the Amended Complaint. There are no legally protectable interests more fundamental than the "certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness" for which our governments were established and guaranteed by our Constitutions. Allowing the litigation to proceed without Youth-Intervenors would impair their legally protected interests. Thus, even if the Court does not grant Youth-Intervenors intervention as of right, it should exercise its broad discretion to allow intervention on a permissive basis.

**CONCLUSION**

For the foregoing reasons, Youth-Intervenors respectfully request this Court grant this Motion to Intervene and allow them to file their Proposed Answer.

DATED this 17 day of August, 2026.

Respectfully submitted,

*/s/ Julia A. Olson*

JULIA A. OLSON
ANDREA K. RODGERS
NATHAN BELLINGER
PHILIP L. GREGORY, of counsel

OUR CHILDREN'S TRUST

JOSEPH W. COTCHETT
NANCI E. NISHIMURA
ANNE MARIE MURPHY

COTCHETT, PITRE & McCARTHY, LLP

*Attorneys for Youth Defendant-Intervenors*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of August, 2026, a true and complete copy of the foregoing NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS BY YOUTH-INTERVENORS (FRCP 24) has been filed with the Clerk of the Court pursuant to the Court's electronic filing procedures, and served on counsel of record via the Court's electronic filing system.

*/s/ Julia A. Olson*
Julia Olson