JULIA A. OLSON (CA Bar No. 192642)
julia@ourchildrenstrust.org
ANDREA K. RODGERS (applicant pro hac vice)
andrea@ourchildrenstrust.org
NATHAN BELLINGER (applicant pro hac vice)
nate@ourchildrenstrust.org
PHILIP L. GREGORY, of counsel (CA Bar. No. 95217)
phil@ourchildrenstrust.org
OUR CHILDREN'S TRUST
1216 Lincoln St.
Eugene, OR 97401
Tel: (415) 786-4825

JOSEPH W. COTCHETT (CA Bar No. 36324)
jcotchett@cpmlegal.com
NANCI E. NISHIMURA (CA Bar No. 152621)
nnishimura@cpmlegal.com
ANNE MARIE MURPHY (CA Bar No. 202540)
amurphy@cpmlegal.com
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for Youth Defendant-Intervenors*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA and UNITED STATES DEPARTMENT OF TRANSPORTATION,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA AIR RESOURCES BOARD and STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board,<br><br>Defendants. | No. 2:26-cv-00847-DJC-SCR<br><br>**[PROPOSED] ANSWER OF YOUTH-INTERVENORS TO FIRST AMENDED COMPLAINT**<br><br>Date: September 24, 2026<br>Time: 1:30 p.m.<br>Location: Courtroom 7<br>Judge: Hon. Daniel J. Calabretta<br><br>Trial Date: Not set<br>Action Filed: March 12, 2026 |

Pursuant to Federal Rule of Civil Procedure 8(b), [Proposed] Youth-Intervenors ("Youth-Intervenors"), by and through undersigned counsel, submit the following Answer to the claims and allegations in the "First Amended Complaint for Declaratory and Injunctive Relief" ("Complaint") (ECF No. 27) filed by United States of America, et al. ("Plaintiffs") on June 16, 2026. Youth-Intervenors are youth from the states of California and Hawaiʻi, all of whom have constitutional interests implicated by Plaintiffs' Complaint.

Youth-Intervenor **Emma Weibel** is an 18-year-old resident of La Jolla, California. Emma was diagnosed in summer 2023 with exercise-induced asthma, and uses an inhaler before physical activity. Increasing heat and bad air quality conditions due to climate change worsens Emma's asthma and makes physical activity, an important and necessary part of her life, more difficult. Emma also experiences heat sensitivity and has nausea, exhaustion, and lightheadedness that required her to stop what she is doing in high temperatures, which are increasing. Extreme heat also triggers migraines with aura, which is very painful for Emma. While in high school, she had to sit out field hockey games and practices because of heat, preventing her from competing at the high level at which she would like. Emma has a generalized anxiety disorder which is triggered by extreme climate events and politicians not acting to stop climate change. This anxiety is often immobilizing and affects her ability to function at school and in her social life.

Youth-Intervenor **A.B**. is a 15-year-old resident of Fremont, California. A.B. has participated in Scouting America since he was 11 years old and is also a member of Civil Air Patrol, the U.S. Air Force's youth development program. Through these organizations, A.B. spends much of his free time hiking, backpacking, canoeing, camping, and participating in outdoor leadership activities. Spending time outdoors has become one of the most important parts of his life, but many of A.B.'s outdoor activities have been restricted by increasingly hot weather, wildfire smoke, and wildfire-related fire restrictions. A.B. lives in an area with heavy vehicle traffic. His parents do not allow him to ride his bicycle on many of Fremont's busy roads because they are concerned about traffic safety and the number of bicycle accidents. This limits his ability to travel

independently by bicycle and spend time outdoors close to home. He is also regularly exposed to vehicle exhaust and air pollution from heavy traffic in his community. A.B. has developed a deep appreciation for California's natural environment. He hopes to continue hiking, backpacking, canoeing, camping, and participating in outdoor leadership activities throughout his life, but the increasing heat, worsening wildfire smoke, and more frequent wildfire-related restrictions are interfering with these opportunities and diminishing the outdoor experiences that have played such an important role in his childhood and development.

Youth-Intervenor **Ariela Lara** is a 20-year-old resident of San Leandro, California and is attending college at UC Berkeley. During August 2020, wildfires ignited across Northern California. Ariela opened her front doors to orange skies with air thick and heavy with smoke, causing her throat aches and watering eyes—an experience that now happens every year with the increasing wildfire season made worse by climate change. Ariela has also endured heat waves, with no air conditioning at her home and now as a college student, like many student apartments, she does not have AC. Air pollution has required Ariela to be prescribed an inhaler again, which was hard for her to hear because that was something she thought she would only need as a child. On hotter days, which are becoming more frequent, she needs to use her inhaler more and walking to classes is painful.

Youth-Intervenor **C.M.** is a 17-year-old resident of Kailua, Oʻahu. Her home is in a low-lying area where climate change-induced extreme precipitation and flooding can isolate her from key transportation corridors that she and her family rely on for access to school and work. Outdoor activities like surfing, swimming, and snorkeling are important to C.M. and her family, but extreme precipitation events have led to brown water events that prevent C.M. and her ʻohana from accessing and enjoying the ocean. Climate change is also causing the beaches and reefs C.M. regularly visits for recreation, education, and personal well-being to disappear due to erosion, sea level rise and ocean acidification. The destruction of coral reefs makes the coastline where C.M. lives more

vulnerable to storms and further coastal erosion and inundation, putting her home in harm's way.

C.M. was a plaintiff in a case against the Hawaiʻi Department of Transportation ("HDOT"), *Navahine F. et al. v. Hawaiʻi Dept. of Transp. et al.*, Case No. 1CCV-22-0000631, resulting in a settlement where HDOT committed to zero transportation emissions in the State of Hawaiʻi by 2045. The settlement ensures protection of C.M.'s state constitutional public trust rights, and rights to a clean and healthful environment, which the Hawaiʻi Supreme Court has interpreted to encompass the right to a life sustaining climate. C.M. participated as a member of the HDOT Youth Council created by the settlement, has testified in support of bills that promote clean transportation, and otherwise acted to support HDOT's compliance with the terms of the settlement agreement. Access to EVs and reducing fossil fuel vehicles on the road in Hawaiʻi is contemplated under the settlement agreement as necessary to protect her state and federal constitutional rights.

Youth-Intervenor **E.F.** is a 15-year-old resident of Berkeley, California. E.F. has allergies, which have been getting worse each year as the climate changes. E.F. has difficulty breathing and must limit his activities outside when exposed to the wildfire smoke. In 2020, there was so much smoke that the sky turned orange, and he could not go outside, in order to protect his health. He remembers having to eat lunch in the classroom for several days because the air quality was so bad. E.F. went on a summer backpacking trip with his family and there were wildfire alerts popping up on their phones for the area in the Marble Mountains where they went, which negatively impacted his experience because he was worried for their safety. There is limited AC at his school and some of the classrooms can get very hot, which makes it hard to focus during more frequent extreme heat events and impacts his ability to learn.

Youth-Intervenor **I.W.** is a 14-year-old resident of Sebastopol, California. In 2017, when I.W. was 5 years old, she was forced to evacuate her home in the middle of the night due to the Tubbs Fire, California's most destructive wildfire at that time. I.W.'s family

had about 15 minutes notice before evacuating, and their home was completely destroyed in the fire, losing all possessions except those in their car, and the charred swing set in their yard. I.W.'s family was fortunate to escape across the bridge that burned down behind them. Since 2017, I.W. has evacuated her home two additional times due to the Kincade (2019) and Walbridge (2020) fires. During the 2018 Paradise fire, I.W. evacuated her home to escape prolonged smoke exposure. I.W. feels extreme anxiety around fires and due to increasing wildfire seasons from climate change I.W. does not feel safe, even in her own home. She regularly checks the color of the sky before going to bed to confirm there is no fire in the area.

Youth-Intervenor **Kalālapa Winter** is a 22-year-old born and raised in Hawaiʻi, with roots on both the islands of Kauaʻi and Oʻahu. In 2018, Kalālapa was harmed by a climate-induced "rain bomb" that hit Kauaʻi, breaking the U.S. record for rainfall in a 24-hour period and which destroyed subsistence crops, damaged Kalālapa's main natural water source, and cut off access into and out of her community for a year. In 2026, the Kona low storms flooded and damaged the roof of her home on Oahu. Tropical cyclones, fueled by rising temperatures, are a new and growing danger for Kalālapa on the islands, which have already forced her to board up her home and prepare for extreme flooding. Sea level rise blocks Kalālapa's movement and access around the islands and is eroding the beaches and alters traditional surf breaks where she recreates. That combined with warming oceans is destroying coral reefs and local fish populations important to Kalālapa's culture and subsistence. In 2025, she had to delay her return to college due to the LA Fires. She returned to a red sky and had to wear an N-95 mask for three weeks on campus because of the smoke and school warnings about breathing in heavy metals and other hazardous particulate matter. Every time Kalālapa returns to LA from Hawaiʻi she cannot breathe well from the already-unhealthy traffic-related smog and air pollution, and it takes her lungs a while to acclimate again. Kalālapa is a plaintiff in a case against the Hawaiʻi Department of Transportation ("HODT"), *Navahine F. et al. v. Hawaiʻi Dept. of Transp. et al.*, Case No. 1CCV-22-0000631, resulting in a settlement where HDOT

committed to zero transportation emissions in the State of Hawaiʻi by 2045. The settlement ensures protection of Kalālapa's state constitutional public trust rights, and rights to a clean and healthful environment, which the Hawaiʻi Supreme Court has interpreted to encompass the right to a life sustaining climate. Access to EVs and reducing fossil fuel vehicles on the road in Hawaiʻi is contemplated under the settlement agreement as necessary to protect her state and federal constitutional rights.

Youth-Intervenor **L.H.** is a 14-year-old resident of Berkeley, California. Since L.H. was six, she has lived with smoke season from the increasing wildfires. L.H. cannot escape the smoke even when she is inside her home because their home is older and drafty. Smoke irritates L.H.'s eyes and makes her teary. Breathing in smoky air makes her feel physically weaker and fatigued. L.H. has missed school because of wildfire smoke and often during smoke season, L.H. has not been allowed outside at recess and has had to have PE at her desk in the classroom, which impairs her learning because she is not able to get enough movement in the day. L.H. has also been exposed to extreme heat. During summer camp there were extreme heat warnings and the camp warned that campers' ability to sleep outside, an experience L.H. treasures, may be eliminated due to heat. On the really hot days, L.H. and the other campers were forced to stay inside and play cards in the dining hall rather than doing the farming activities that were part of the camp. Access to clean transportation options is important to L.H. She takes the city bus to school and her family drives an electric vehicle when they are not taking the bus.

Youth-Intervenor **Luca Cuniberti** is an 18-year-old resident of Pupukea, Oʻahu, located on the North Shore where he was born and raised. Growing up on the North Shore, Luca has seen wildfires become more frequent. A couple of years ago the fires were so bad that there was a lot of ash in the air. Luca enjoys being outside and hiking but has had to turn around on a hike with his friends because they feared their safety due to approaching fires. During the Kona low storms in March of 2026, Luca's school was cancelled for multiple days due to flooding and the roads in and out of his community

were shut down. Coastal erosion due to severe storms and sea level rise is causing beaches on the North Shore where Luca recreates to disappear. Luca is dive certified and every time he goes out into the ocean, he sees more coral bleaching from warming ocean temperatures and has seen less overall color in the corals. Decarbonizing transportation is vital to Luca's health and the viability of his North Shore community and he advocates for public transportation and electrifying buses on Oʻahu. Luca is a beneficiary of the settlement agreement entered into in *Navahine F. et al. v. Hawaiʻi Dept. of Transp. et al*., Case No. 1CCV-22-0000631. Luca was a member of the inaugural Youth Council created by the Navahine Settlement.

Youth-Intervenor **M.A.** is a 15-year-old resident of Aliso Viejo, California but considers Santa Monica her home because that is where she grew up. When M.A is exposed to wildfires and wildfire smoke, she has difficulty breathing and is unable to do activities she enjoys like biking, hiking, and enjoying time in nature. Increasingly hot temperatures and smog cause M.A. headaches and worsens her eczema flare-ups. Poor air quality has caused her to stay home from school. M.A. practices Islam and the heat makes fasting during Ramadan difficult. Ramadan changes every year and is getting closer to summer, which is scary for her to think about going to school in even more extreme heat while fasting and not drinking water. As she looks to the future, M.A. believes that the extreme heat will inhibit her ability to wear a hijab and participate in the Hajj, the pilgrimage to Mecca that is done on foot. She gets allergic reactions on her face in bad air quality or smoggy environments.

Youth-Intervenor **Maya Williams** is a 20-year-old resident of Los Angeles, California who is attending college at UC Berkeley. Reducing vehicle emissions is important for Maya's health as she was diagnosed with bronchospasms due to her asthma and must regularly use a steroid inhaler to participate in physical activities. Exposure to extreme heat, air pollution, and wildfire smoke all worsen her asthma symptoms, causing her to have chest pains and severe headaches. The dorms and some of the buildings on the Berkeley campus do not have AC, which limits her ability to learn

during several weeks of the year. Maya started experiencing anxiety in 2020, which is worsened as she learns about climate change and how her government is trying to roll back emissions standards, worsening the effects of climate change.

Youth-Intervenor **Roan Byrne-Sarno** is an 18-year-old resident of Alameda, California. Roan has experienced orange skies, school closures lasting several days, and an inability to see the sun due to the increasing wildfires, which causes him to have anxiety and worry for his safety. Heavy rain events flood the basement of his family home where he lives, causing damage and requiring his family to have to pump the water out. Rising temperatures makes outdoor activities that are important for his health and wellbeing, such as running, hiking, and camping, more difficult and less enjoyable to do, requiring Roan to go on shorter hikes or cancel them altogether. As a resident of Alameda, an island vulnerable to sea level rise, Roan has observed his community's streets flooded and taxpayer dollars spent on digging up the coast and building sea walls to combat rising seas. Roan lives next door to a gas station and regularly smells the toxic fumes from gasoline inside his house when the windows are open. Roan feels anxiety about the future and questions his desire to bring children into the world as the heat worsens.

Youth-Intervenor **S.H.** is a 17-year-old resident of Visalia, California. An avid hiker, S.H. has experienced how climate change has worsened during her lifetime. Extreme heat has become the new normal in her community, which is difficult for her as a tennis player, where the courts are 10-20 degrees hotter than the surrounding air. Heat exhaustion amongst her teammates has become common, necessitating frequent breaks and the use of ice towels to cool down when she is feeling tired or dizzy from the heat. Visalia is in a bowl-shaped valley, so traps smoke and air pollution from surrounding wildfires, which presents a health risk to her because of her breathing problem. S.H. is Muslim and has had religious services and activities canceled due to extreme heat and air pollution.

Youth-Intervenor **Z.W.** is a 14-year-old resident of El Cerrito, California. Growing up in California for Z.W. means there are always a couple of weeks when the sky is orange from climate change induced wildfires. For example, in 2018, smoke from wildfires caused Z.W. to miss school because it was too smoky to attend. She remembers the sky looked almost black and she had to wear a mask. Wildfire smoke causes her to have itchy eyes and she has an air purifier in her room during the smoke season. Z.W. learned about climate change in third grade and seeing the impacts play out in her own life causes her deep distress.

The numbered paragraphs of this Answer correspond to the numbered paragraphs of Plaintiffs' Complaint.[1] The paragraph found before the first numbered paragraph of the Complaint constitutes introductory material to which no response is required. To the extent a response is deemed required, the paragraph is denied.

## INTRODUCTION

1. Youth-Intervenors admit that the Energy Policy and Conservation Act ("EPCA"), 49 U.S.C. § 32919(a), established a federal fuel-economy program. 42 U.S.C. § 6201(5). The remainder of the allegations in Paragraph 1 contain legal conclusions for which no response is required. To the extent a response is required, Youth-Intervenors deny the allegations.

2. Youth-Intervenors admit Defendant California Air Resources Board ("CARB") has adopted and enforced state standards limiting fleetwide tailpipe carbon dioxide emissions for light-duty vehicles. *See* Cal. Code Regs. tit. 13, §§ 1961.3, 1961.3.1, 1962.2, 1962.2.1. Youth-Intervenors deny the second and third sentences of Paragraph 2.

---

[1] The section headings and subheadings used in this Answer follow the headings and subheadings used in Plaintiffs' Complaint and are included solely for the purpose of organizational convenience in matching the answers provided herein with the allegations in the Complaint. The headings are not part of Defendants-Intervenors' answer to the allegations.

3. Youth-Intervenors admit that reducing or eliminating tailpipe carbon dioxide (“$CO_2$”) emissions from internal-combustion automobiles can have the effect of increasing fuel economy, but the remainder of the allegations of the first sentence in Paragraph 3 contain legal conclusions for which no response is required. To the extent a response is required, Youth-Intervenors deny the allegations. Youth-Intervenors admit Plaintiffs accurately quote a portion of 76 Fed. Reg. 57106, 57124-25 (Sept. 15, 2011). Youth-Intervenors otherwise lack information sufficient to form a belief about the remaining allegations in Paragraph 3.

4. Youth-Intervenors deny the allegations in Paragraph 4.

## JURISDICTION AND VENUE

5. Youth-Intervenors admit that the United States District Court for the Eastern District of California has subject matter jurisdiction over Plaintiffs’ claims under 28 U.S.C. §§ 1331 and 1345.

6. Paragraph 6 contains legal conclusions for which no response is required. To the extent a response is required, Youth-Intervenors deny the allegations.

7. Youth-Intervenors deny the allegations in Paragraph 7.

8. Paragraph 8 contains legal conclusions for which no response is required. Nonetheless, to the extent a response is required, Youth-Intervenors admit that Plaintiffs accurately quote or paraphrase the statutory authorities cited in Paragraph 8.

9. Paragraph 9 contains legal conclusions for which no response is required. Nonetheless, to the extent a response is required, Youth-Intervenors admit that Plaintiffs accurately quote or paraphrase the statutory authorities cited in Paragraph 9.

10. Paragraph 10 contains legal conclusions for which no response is required. To the extent a response is required, Youth-Intervenors deny the allegations.

11. Youth-Intervenors deny the allegations in Paragraph 11, but admit that CARB’s $CO_2$ tailpipe standards and ZEV mandates alter the composition of light-duty fleets produced by manufacturers in the United States, shifting that composition toward increasing percentages of EVs.

12. Youth-Intervenors admit the first sentence of Paragraph 12. Youth-Intervenors are without information to form a belief as to the second, third, and fourth sentences of Paragraph 12. Youth-Intervenors deny the fifth sentence of Paragraph 12.

13. Youth-Intervenors are without information to form a belief as to the allegations in Paragraph 13.

14. Youth-Intervenors deny the allegations in Paragraph 14.

15. Paragraph 15 contains legal conclusions for which no response is required. To the extent a response is required, Youth-Intervenors admit "this Court has the authority to declare the legal rights and obligations of the parties." Youth-Intervenors deny the remaining allegations of Paragraph 15.

16. Paragraph 16 contains legal conclusions for which no response is required. To the extent a response is required, Youth-Intervenors admit "[t]his Court may also order injunctive relief under the Supremacy Clause, U.S. Const. art. VI, cl. 2; the All Writs Act, 28 U.S.C. § 1651; its authority to hear cases in equity seeking to enjoin violations of federal law; and its inherent equitable powers under Article III. *See Arizona*, 567 U.S. 387; *Ex Parte Young*, 209 U.S. 123 (1908); *see also Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015); *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010)."

17. Youth-Intervenors admit Paragraph 17.

## PARTIES

18. Paragraph 18 contains legal conclusions for which no response is required. To the extent a response is required, Youth-Intervenors deny the allegations.

19. Paragraph 19 contains legal conclusions for which no response is required. To the extent a response is required Youth-Intervenors admit the U.S. Department of Transportation is an agency of the Executive Branch that develops and coordinates national transportation policies, among other things.

20. Paragraph 20 contains legal conclusions for which no response is required. To the extent a response is required, Youth-Intervenors admit one of the responsibilities

of NHTSA is to administer EPCA's automobile fuel economy provisions pursuant to 49 U.S.C. Chapter 329.

21. Paragraph 21 contains legal conclusions for which no response is required. To the extent a response is required, Youth-Intervenors admit Plaintiffs accurately describe some of the authorities and responsibilities of CARB, including: "The agency is tasked with designing, promulgating, and enforcing California's motor vehicle pollution control program. CARB is headquartered in Sacramento, located in the Eastern District of California, and it performs its official duties throughout the State of California."

22. Paragraph 22 contains legal conclusions for which no response is required. To the extent a response is required, Youth-Intervenors admit Plaintiffs accurately describe some of the authorities and responsibilities of the Executive Officer of CARB, and where the Executive Officer maintains an office and performs his official duties.

## LEGAL BACKGROUND

### I. ENERGY POLICY AND CONSERVATION ACT (EPCA) OF 1975

23. Youth-Intervenors admit Congress directed NHTSA to establish national fuel economy standards, commonly referred to as the Corporate Average Fuel Economy ("CAFE") program. EPCA, Pub. L. No. 94-163, 89 Stat. 871 (1975). Youth-Intervenors admit Plaintiffs accurately quote the definition of "Fuel Economy" in 49 U.S.C. § 32901(a)(11). Youth-Intervenors lack information sufficient to form a belief about the remainder of the allegations in Paragraph 23.

24. Paragraph 24 contains legal conclusions that do not require a response. To the extent a response is required, Youth-Intervenors admit Plaintiffs accurately quote or paraphrase the session report and statutory authorities cited.

25. Paragraph 25 contains legal conclusions that do not require a response. To the extent a response is required, Youth-Intervenors admit Plaintiffs accurately quote or appropriately paraphrase 49 U.S.C. § 32902(a).

26. Paragraph 26 contains legal conclusions that do not require a response. To the extent a response is required, Youth-Intervenors admit fuel economy, as specified by Congress, is measured using test procedures that gauge carbon emissions. 49 U.S.C. § 32904(c).

27. Paragraph 27 contains legal conclusions that do not require a response. To the extent a response is required, Youth-Intervenors deny the allegations.

28. Youth-Intervenors admit Paragraph 28.

29. Youth-Intervenors deny Paragraph 29.

30. Youth-Intervenors deny the first sentence of Paragraph 30, but admit Plaintiffs accurately quote Article VI, Clause 2 of the U.S. Constitution.

31. Youth-Intervenors deny Paragraph 31.

32. Paragraph 32 contains legal conclusions for which no response is required. To the extent a response is required, Youth-Intervenors deny the allegations.

33. Youth-Intervenors admit Plaintiffs accurately summarize NHTSA's and EPA's joint SAFE I Rule in Paragraph 33, but deny the SAFE I Rule expressly preempted California's $CO_2$ standards. Youth-Intervenors admit that in 2021 NHTSA repealed the Safe I Rule, but is without information sufficient to form a belief as to the remainder of the allegations in Paragraph 33.

## II. THE CLEAN AIR ACT'S PREEMPTION AND WAIVER PROVISIONS

34. Paragraph 34 contains legal conclusions for which no response is required. To the extent a response is required, Youth-Intervenors admit Plaintiffs accurately quote *Brown v. EPA*, 940 F.3d 1342, 1345 (D.C. Cir. 2019) and paraphrase Section 209(a) of the Clean Air Act.

35. Paragraph 35 contains legal conclusions for which no response is required. To the extent a response is required, Youth-Intervenors admit Plaintiffs summarize Section 209(b) of the Clean Air Act.

36. Paragraph 36 contains legal conclusions for which no response is required. To the extent a response is required, Youth-Intervenors admit EPCA contains no provision allowing for the waiver of preemption under 49 U.S.C. § 32919(a), but otherwise deny the allegations in Paragraph 36.

37. Paragraph 37 contains legal conclusions for which no response is required. To the extent a response is required, Youth-Intervenors are without information sufficient to form a response to the allegations in Paragraph 37.

38. Youth-Intervenors admit the EPA has rescinded its withdrawal of the waiver for California's ACC I in March 2022. 87 Fed. Reg. 14332 (Mar. 14, 2022). Youth-Intervenors lack information sufficient to form a belief about the remainder of the allegations in Paragraph 38.

## FACTUAL BACKGROUND

### I. THE DIRECT RELATIONSHIP BETWEEN $CO_2$ STANDARDS, ZEV MANDATES, AND FUEL ECONOMY

39. Youth-Intervenors lack information sufficient to form a belief about the allegations in Paragraph 39.

40. Youth-Intervenors lack information sufficient to form a belief about the allegations in Paragraph 40.

41. Youth-Intervenors lack information sufficient to form a belief about the allegations in Paragraph 41.

42. Youth-Intervenors admit Plaintiffs accurately quote the report issued by CARB on Comparison of Greenhouse Gas Reductions for The United States and Canada under U.S. CAFE Standards and California Air Resources Board Greenhouse Gas Regulations (Feb. 25, 2008), but otherwise lack information sufficient to form a belief about the remaining allegations in Paragraph 42.

43. Youth-Intervenors lack information sufficient to form a belief about the allegations in Paragraph 43, but admit Congress specified in EPCA that fuel economy

should be measured using test procedures for gauging carbon emissions. *See* 49 U.S.C. § 32904(c); 38 Fed. Reg. 10868 (May 2, 1973).

44. Youth-Intervenors lack sufficient information to form a belief about the allegations in Paragraph 44.

45. Youth-Intervenors lack sufficient information to form a belief about the allegations in Paragraph 45.

46. Youth-Intervenors lack information sufficient to form a belief about the allegations in Paragraph 46.

47. Youth-Intervenors lack information sufficient to form a belief about the allegations in Paragraph 47, but admit Plaintiffs accurately quote 84 Fed. Reg. 51310, 51320 (Sept. 27, 2019).

48. Youth-Intervenors deny the allegations in Paragraph 48, as the authority cited does not refer to ZEV mandates.

49. Youth-Intervenors lack information sufficient to form a belief about the allegations in Paragraph 49.

## II. CALIFORNIA'S ADOPTION AND ENFORCEMENT OF $CO_2$ STANDARDS AND ZEV MANDATES UNDER ACC I RELATE TO VEHICLE FUEL ECONOMY

50. Youth-Intervenors deny the allegations in Paragraph 50.

51. Youth-Intervenors admit CARB adopted ACC I to control motor vehicle emissions, and the regulation was in effect through 2025 and subsequent model years. *See* Cal. Code Regs. tit. 13, §§ 1961.3, 1962.2. Youth-Intervenors lack information sufficient to form a belief as to the remaining allegations in Paragraph 51, but admit Plaintiffs accurately quote *Diamond Alternative Energy, LLC v. Environmental Protection Agency*, 606 U.S. 100, 107 (2025).

52. Youth-Intervenors admit ACC I requires certain $CO_2$ exhaust target values, Cal. Code Regs. tit. 13, § 1961.3(a), but deny the remaining allegations in Paragraph 52.

53. Paragraph 53 contains legal conclusions that do not require a response. To the extent a response is required, Youth-Intervenors lack information sufficient to form a belief as to the allegations in Paragraph 53.

54. Paragraph 54 contains legal conclusions that do not require a response. To the extent a response is required, Youth-Intervenors lack information sufficient to form a belief as to the allegations in Paragraph 54.

55. Paragraph 55 contains legal conclusions that do not require a response. To the extent a response is required, Youth-Intervenors admit manufacturers not in compliance with CARB's $CO_2$ standards may be subject to civil penalties.

56. Paragraph 56 contains legal conclusions that do not require a response. To the extent a response is required, Youth-Intervenors deny sales requirements for ZEV mandates pertaining to ACC I are currently in effect. Youth-Intervenors admit that in 2025, the ZEV mandate imposed a 22-percent ZEV requirement. Cal. Code Regs. tit. 13, § 1962.2(b).

57. Paragraph 57 contains legal conclusions that do not require a response. To the extent a response is required, Youth-Intervenors admit Plaintiffs accurately quote excerpts from the regulatory provisions cited in Paragraph 57.

58. Paragraph 58 contains legal conclusions that do not require a response. To the extent a response is required, Youth-Intervenors lack information sufficient to form a belief as to the allegations in Paragraph 58.

59. Youth-Intervenors admit CARB has entered into settlement agreements with six major light-duty vehicle manufacturers, but otherwise lack information sufficient to form a belief as to the remaining allegations in Paragraph 59.

60. Youth-Intervenors lack information sufficient to form a response as to the allegations in Paragraph 60, but admit Plaintiffs accurately quote the source cited.

61. Youth-Intervenors lack information sufficient to form a response as to the allegations in Paragraph 61.

62. Youth-Intervenors admit the first two sentences of Paragraph 62. The remaining allegations in Paragraph 62 contain legal conclusions that do not require a response. To the extent a response is required, Youth-Intervenors admit that Plaintiffs accurately quote the sources cited in Paragraph 62.

63. Paragraph 63 contains legal conclusions that do not require a response. To the extent a response is required, Youth-Intervenors admit CARB's "emergency" vehicle emissions rulemaking reinstated earlier-adopted state standards. *See* Cal. Code Regs. tit. 13, § 1962.2.1 (2026). Youth-Intervenors deny that § 1961.3.1 generally purports to adopt ACC I standards. Youth-Intervenors admit Plaintiffs accurately quote the Emergency Rule. Youth-Intervenors admit CARB permanently adopted the Emergency Rule on March 26, 2026.

64. Youth-Intervenors admit Plaintiffs accurately cite the Emergency Rule's codification in the California Code in Paragraph 64, but deny that the Emergency Rule purports to adopt ACC I standards for ZEV mandates.

65. Youth-Intervenors admit the Emergency Rule includes standards from 2025. Youth-Intervenors lack information sufficient to form a response to the remaining allegations in Paragraph 65.

66. Youth-Intervenors admit Plaintiffs accurately quote language from CARB's Emergency Rule. Youth-Intervenors deny the remaining allegations in Paragraph 66.

67. Paragraph 67 contains legal conclusions to which no response is required. To the extent a response is required, Youth-Intervenors deny Plaintiffs' legal interpretation of said regulations.

68. Youth-Intervenors lack information sufficient to form a response to the allegations in Paragraph 68, but admit Executive Order N-27-25 is accurately quoted.

69. Paragraph 69 contains legal conclusions to which no response is required. To the extent a response is required, Youth-Intervenors admit Plaintiffs accurately quote the sources cited.

70. Youth-Intervenors deny Paragraph 70.

## CLAIMS FOR RELIEF

### COUNT I – $CO_2$ Standards Under Cal. Code Regs., tit. 13, §§ 1961.3 & 1961.3.1

### (Preemption under EPCA, 49 U.S.C. § 32919(a), and Violation of the Supremacy Clause)

71. Paragraph 71 contains legal conclusions that do not require a response. To the extent a response is required, Youth-Intervenors admit or deny the allegations as more fully set forth above.

72. Youth-Intervenors deny the allegations in Paragraph 72.

73. Paragraph 73 contains legal conclusions that do not require a response. To the extent a response is required, Youth-Intervenors admit Plaintiffs accurately quote the Supremacy Clause of the United States Constitution.

74. Youth-Intervenors deny the allegations in Paragraph 74.

75. Paragraph 75 contains legal conclusions that do not require a response. To the extent a response is required, Youth-Intervenors admit Plaintiffs accurately quote EPCA as related to fuel economy standards.

76. Paragraph 76 contains legal conclusions that do not require a response. To the extent a response is required, Youth-Intervenors admit Plaintiffs accurately quote 76 Fed. Reg. at 57124-25.

77. Paragraph 77 contains legal conclusions that do not require a response. To the extent a response is required, Youth-Intervenors admit Plaintiffs accurately describe NHTSA's obligations.

78. Paragraph 78 contains legal conclusions that do not require a response. To the extent a response is required, Youth-Intervenors admit Plaintiffs accurately quote CARB's $CO_2$ standards pursuant to Cal. Code Reg., tit. 13, §§ 1961.3, 1961.3.1.

79. Youth-Intervenors deny the allegations in Paragraph 79.

80. Youth-Intervenors deny the allegations in Paragraph 80.

81. Youth-Intervenors deny the allegations in Paragraph 81.

82. Youth-Intervenors deny the allegations in Paragraph 82.

83. Youth-Intervenors deny the allegations in Paragraph 83.

84. Paragraph 84 contains legal conclusions that do not require a response. To the extent a response is required, Youth-Intervenors admit Plaintiffs accurately quote some of the factors the Department of Transportation considers in setting fuel economy standards, pursuant to the EPCA.

85. Youth-Intervenors deny the allegations in Paragraph 85.

86. Youth-Intervenors deny the allegations in Paragraph 86.

87. Youth-Intervenors deny the allegations in Paragraph 87.

88. Youth-Intervenors deny the allegations in Paragraph 88.

89. Paragraph 89 contains legal conclusions that do not require a response. To the extent a response is required, Youth-Intervenors admit the U.S. Constitution has a supremacy clause.

90. Youth-Intervenors admit the United States has legally protected interests in ensuring federal fuel economy standards under EPCA, but deny the remaining allegations in Paragraph 90.

91. Youth-Intervenors deny the allegations in Paragraph 91.

**COUNT II – ZEV Mandates Under Cal. Code Regs. tit. 13, §§ 1962.2 and 1962.2.1**

**(Preemption under EPCA, 49 U.S.C. § 32919(a), and Violation of the Supremacy Clause)**

92. Paragraph 92 contains legal conclusions that do not require a response. To the extent a response is required, Youth-Intervenors deny the allegations.

93. Youth-Intervenors deny the allegations in Paragraph 93.

94. Youth-Intervenors admit CARB's ZEV mandates previously required the sale of vehicles that have zero tailpipe $CO_2$ emissions.

95. Paragraph 95 contains legal conclusions that do not require a response. To the extent a response is required, Youth-Intervenors lack information sufficient to form a response.

96. Youth-Intervenors deny the allegations in Paragraph 96.

97. Paragraph 97 contains legal conclusions that do not require a response. To the extent a response is required, Youth-Intervenors admit Plaintiffs accurately quote EPCA, but deny such language preempts state conduct.

98. Paragraph 98 contains legal conclusions that do not require a response. To the extent a response is required, Youth-Intervenors admit Plaintiffs accurately quote the source cited, but otherwise deny the remaining allegations in Paragraph 98.

99. Youth-Intervenors deny the allegations in Paragraph 99.

100. Youth-Intervenors deny the allegations in Paragraph 100.

101. Paragraph 101 contains legal conclusions that do not require a response. To the extent a response is required, Youth-Intervenors admit Plaintiffs accurately quote the sources cited, but otherwise deny the remaining allegations.

102. Youth-Intervenors deny the allegations in Paragraph 102

103. Youth-Intervenors deny the allegations in Paragraph 103.

104. Youth-Intervenors deny the allegations in Paragraph 104.

## PRAYER FOR RELIEF

105. Youth-Intervenors deny Plaintiffs are entitled to the relief requested or to any relief at all.

106. Youth-Intervenors deny Plaintiffs are entitled to the relief requested or to any relief at all.

107. Youth-Intervenors deny Plaintiffs are entitled to the relief requested or to any relief at all.

108. Youth-Intervenors deny Plaintiffs are entitled to the relief requested or to any relief at all.

109. Youth-Intervenors deny Plaintiffs are entitled to the relief requested or to any relief at all.

110. Youth-Intervenors deny Plaintiffs are entitled to the relief requested or to any relief at all.

**FIRST AFFIRMATIVE DEFENSE**

111. The Complaint fails to state a claim against Defendants upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

112. Plaintiffs do not present an actual controversy.

**THIRD AFFIRMATIVE DEFENSE**

113. Plaintiffs' claims and requested relief violate the separation of powers doctrine.

**FOURTH AFFIRMATIVE DEFENSE**

114. Defendants' conduct was at all times legally required to protect the fundamental rights of children and youth.

**FIFTH AFFIRMATIVE DEFENSE**

115. Plaintiffs' claims and requested relief would deprive and substantially burden Youth-Intervenors' rights preserved by the First, Fifth and Fourteenth Amendments to the U.S. Constitution, as informed by the Posterity Clause.

**SIXTH AFFIRMATIVE DEFENSE**

116. Plaintiffs' claims and requested relief would violate the Tenth Amendment.

**SEVENTH AFFIRMATIVE DEFENSE**

117. Plaintiffs' claims and requested relief would unlawfully intrude on the public trust doctrine duties of state trustees and the Youth-Intervenors' rights as beneficiaries.

**EIGHTH AFFIRMATIVE DEFENSE**

118. Plaintiffs' claims and requested relief would interfere with the court-approved settlement agreement in *Navahine v. Hawai'i Department of Transportation,*

to which some Youth-Intervenors are a party and another is a beneficiary.

**NINTH AFFIRMATIVE DEFENSE**

119. Plaintiffs' claims and requested relief are being pursued at the direction of Presidential Executive Orders that are unconstitutional and ultra vires.

**TENTH AFFIRMATIVE DEFENSE**

120. Plaintiffs have unclean hands, are engaged in unfair conduct, and are operating in bad faith.

**ELEVENTH AFFIRMATIVE DEFENSE**

121. Plaintiffs' claims fail on equitable estoppel grounds.

**TWELFTH AFFIRMATIVE DEFENSE**

122. Plaintiffs' claims and requested relief constitute a state-created danger that shocks the conscience.

**THIRTEENTH AFFIRMATIVE DEFENSE**

123. Plaintiffs claims and requested relief fail for illegality.

**FOURTEENTH AFFIRMATIVE DEFENSE**

124. Youth-Intervenors reserve the right to assert any additional affirmative defenses that become apparent in the future and to seek leave to amend this Answer to allege any such defenses and to assert any other defenses, claims, and counterclaims as discovery and the evidence may merit.

Wherefore, having answered, Youth-Intervenors respectfully request the Court enter judgment in their favor, award Youth-Intervenors their costs, and provide such other relief as the Court deems just and proper.

DATED: Berkeley, California, August 17, 2026.

Respectfully submitted,

*/s/ Julia A. Olson*
JULIA A. OLSON

ANDREA K. RODGERS
NATHAN BELLINGER
PHILIP L. GREGORY, of counsel

OUR CHILDREN'S TRUST

JOSEPH W. COTCHETT
NANCI E. NISHIMURA
ANNE MARIE MURPHY

COTCHETT, PITRE & McCARTHY, LLP

*Attorneys for Youth Defendant-Intervenors*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of August, 2026, a true and complete copy of the foregoing has been filed with the Clerk of the Court pursuant to the Court's electronic filing procedures, and served on counsel of record via the Court's electronic filing system.

*/s/ Jula Olson*
Julia Olson