ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
ROBERT N. STANDER
Deputy Assistant Attorney General
IAN M. SWENSON
Senior Counsel
Designated Counsel for Service
United States Department of Justice
Energy and Natural Resources Division
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 532-5139
Ian.Swenson@usdoj.gov

ERIC GRANT
United States Attorney
Eastern District of California

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA and UNITED STATES DEPARTMENT OF TRANSPORTATION,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA AIR RESOURCES BOARD and STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board,<br><br>Defendants. | Civil Action No. 2:26-00847−DJC−SCR<br><br>Judge Calabretta<br><br>Magistrate Judge Riordan<br><br>**Plaintiffs' Memorandum Opposing Proposed Defendant-Intervenors' Motion to Intervene (Dkt. 45)**<br><br>Hearing date: September 24, 2026, 1:30 pm<br><br>Courtroom 7 |

## TABLE OF CONTENTS


Table of Authorities ..... iii

Introduction ..... 1

Standard of Review ..... 2

Argument ..... 3

I. Youth Intervenors Lack a Significant, Legally Protectable Interest. ..... 3

A. There is no substantive due process right to the benefit of California vehicle emissions regulations. ..... 4

B. Federal law takes precedence over the asserted State law rights. ..... 6

C. Preempting California's "fuel-economy" requirements will not substantially burden religious practice. ..... 10

D. Article III standing analysis weighs against intervention. ..... 12

II. Preempting The Challenged ACC I Regulations Will Not Impair Or Impede The Youth Intervenors' Interests. ..... 13

A. The ACC I regulations – at their "maximum stringency" – did not prevent the claimed harms. ..... 14

B. The Youth Intervenors' other legal actions adequately protect their interests. ..... 14

III. California Shares The Youth Intervenors' Ultimate Objective And Will Adequately Represent Their Interests. ..... 15

IV. Permissive Intervention Should Also Be Denied. ..... 17

Conclusion ..... 18

## TABLE OF AUTHORITIES

<u>Cases</u> Pages(s)

*Akina v. Hawaii*,
835 F.3d 1003 (9th Cir. 2016) .......... 14

*Animal Legal Def. Fund v. United States*,
404 F. Supp. 3d 1294 (D. Or. 2019) .......... 5

*Apache Stronghold v. United States*,
101 F.4th 1036 (9th Cir. 2024) .......... 11

*Arakaki v. Cayetano,*
324 F.3d 1078 (9th Cir. 2003) .......... 2, 15, 16

*Aronow v. Minnesota*,
No. A12-0585, 2012 WL 4476642 (Minn. Ct. App. Oct. 1, 2012) .......... 9

*Blake v. Pallan*,
554 F.2d 947 (9th Cir. 1977) .......... 15

*Burwell v. Hobby Lobby Stores, Inc.*,
573 U.S. 682 (2014) .......... 11

*Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.,*
54 F.4th 1078 (9th Cir. 2022) .......... 3

*Cal. Dump Truck Owners Ass'n v. Nichols*,
275 F.R.D. 303 (E.D. Cal. 2011) .......... 16

*Cal. ex rel. Lockyer v. United States*,
450 F.3d 436 (9th Cir. 2006) .......... 3

*California et al.* v. *Trump, et al.*, No. 25-8013,
2026 WL 2098700 (9th Cir. July 21, 2026) .......... 4

*California v. U.S. Envtl. Prot. Agency*,
No. 18-CV-03237-HSG, 2018 WL 6069943 (N.D. Cal. Nov. 20, 2018) .......... 15, 16

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011) .......... 13, 16

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 12

*Clean Air Council v. United States*,
362 F. Supp. 3d 237 (E.D. Pa. 2019) .......... 5

*Dep't of State v. Munoz*,
602 U.S. 899 (2024) .......... 4

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,
489 U.S. 189 (1989) .......... 5

*Dilks v. Aloha Airlines*,
642 F.2d 1155 (9th Cir. 1981) .......... 3, 8

*Dobbs v. Jackson Women's Health Org.*,
597 U.S. 215 (2022) .......... 4

*Donnelly v. Glickman*,
159 F.3d 405 (9th Cir. 1998) .......... 3, 8, 14

*East Bay Sanctuary Covenant v. Biden*,
102 F.4th 996 (9th Cir. 2024) .......... 2

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) .......... 12, 13

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*,
458 U.S. 141 (1982) .......... 7

*Filippone v. Iowa Dep't of Nat'l Res.*, 829 N.W.2d 589 (Table),
No. 12-0444, 2013 WL 988627 (Iowa Ct. App. Mar. 13, 2013) .......... 9

*Greene v. United States*,
996 F.2d 973 (9th Cir. 1993) .......... 8

*Helling v. McKinney*,
509 U.S. 25 (1993) .......... 6

*Henderson v. Kennedy*,
253 F.3d 12 (D.C. Cir. 2001) .......... 11

*Ill. Cent. R.R. Co. v. Ill.*,
146 U.S. 387 (1892) .......... 9

*Juliana v. United States*,
947 F.3d 1159 (9th Cir. 2020) .......... 13

*In re Idaho Conserv. League*,
811 F.3d 502 (D.C. Cir. 2016) .......... 2

*Lighthiser v. Trump*,
No. 25-cv-54-BU-DLC, 2025 WL 2930569 (D. Mont. Oct. 15, 2025),
*aff'd*, No. 25-6714, 2026 WL 1555982 (9th Cir. June 2, 2026) .......... 15

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
591 U.S. 657 (2020) ... 11, 12, 17

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ... 12

*Lyng v. Nw. Indian Cemetery Protective Ass'n*,
485 U.S. 439 (1988) ... 10, 11

*Miller v. Ghirardelli Chocolate Co.*,
No. 12–cv–04936–LB, 2013 WL 6776191 (N.D. Cal. Dec. 20, 2013) ... 16

*Montana v. EPA*,
137 F.3d 1135 (9th Cir. 1998) ... 8

*Nat'l Sea Clammers Ass'n v. City of New York,*
616 F.2d 1222 (3d. Cir. 1980), *vacated on other grounds*, 453 U.S. 1 (1981) ... 5

*Nw. Forest Res. Council v. Glickman*,
82 F.3d 825 (9th Cir. 1996) ... 6, 13, 16, 17

*Perry v. Proposition 8 Official Proponents*,
587 F.3d 947 (9th Cir. 2009) ... 17

*Perry v. Schwarzenegger*,
630 F.3d 898 (9th Cir. 2011) ... 2, 18

*Phillips Petrol. Co.*, *v. Miss*,
484 U.S. 469 (1988) ... 9

*PPL Montana, LLC v. Montana*,
565 U.S. 576 (2012) ... 8, 9

*Prete v. Bradbury*,
438 F.3d 949 (9th Cir. 2006) ... 15

*Priests for Life v. U.S. Dep't of Health and Human Servs.*,
772 F.3d 229 (D.C. Cir. 2014) ... 11

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*,
579 U.S. 115 (2016) ... 7

*Real Alts., Inc. v. Sec'y of HHS*,
867 F.3d 338 (3d Cir. 2017) ... 10

*Rochin v. California*,
342 U.S. 165 (1952) ... 6

*Rodriguez v. Robbins*,
715 F.3d 1127 (9th Cir. 2013) ... 4

*S. Cal. Edison Co. v. Lynch*,
307 F.3d 794 (9th Cir. 2002) .......... 3, 7, 8, 14

*Sanders-Reed ex rel. Sanders-Reed v. Martinez*,
350 P.3d 1221 (N.M. Ct. App. 2015) .......... 9

*SF Chapter of A. Philip Randolph Inst. v. U.S. E.P.A.*,
No. 07-cv-04936-CRB, 2008 WL 859985 (N.D. Cal. Mar. 28, 2008) .......... 5

*Spangler v. Pasadena City Bd. of Educ*.,
552 F.2d 1326 (9th Cir. 1977) .......... 18

*Sterling v. City of Jackson, Mississippi*,
No. 24-60370, 2026 WL 2617771 (5th Cir. Sept. 4, 2026) .......... 4, 6

*Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env'l Prot.*,
560 U.S. 702 (2010) .......... 9

*Summa Corp. v. California ex rel. State Lands Commission*,
466 U.S. 198 (1984) .......... 9

*Summers v. Earth Island Inst*.,
555 U.S. 488 (2009) .......... 12

*Sw. Ctr. for Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001) .......... 12, 13

*Sweet v. Cardona*,
121 F.4th 32 (9th Cir. 2024) .......... 7

*U.S. Navy SEALs 1-26 v. Biden*,
27 F.4th 336 (5th Cir. 2022) .......... 11

*United States v. 32.42 Acres of Land*,
683 F.3d 1030 (9th Cir. 2012) .......... 9

*United States v. Alisal Water Corp.*,
370 F.3d 915 (9th Cir. 2004) .......... 4, 14

*United States v. City of L.A.*,
288 F.3d 391 (9th Cir. 2002) .......... passim

*United States v. Mission Rock Co.*,
189 U.S. 391 (1903) .......... 9

*Venner v. U.S. EPA*,
No. 26-1038 (D.C. Cir. filed Feb. 18, 2026) .......... 15

Statutes

42 U.S.C. § 2000bb-1 ........ 1

42 U.S.C. § 2000bb-1(a) ........ 10

42 U.S.C. § 2000bb-1(c) ........ 12

49 U.S.C. § 32919(a) ........ 4, 16

Cal. Health & Safety Code § 38501(a) ........ 16

Rules

Fed. R. Civ. P. 24 ........ 1

Fed. R. Civ. P. 24(a) ........ 2

Fed. R. Civ. P. 24(a)(2) ........ passim

Fed. R. Civ. P. 24(b) ........ 1, 2, 8

Fed. R. Civ. P. 24(b)(1)(B) ........ 17

Fed. R. Civ. P. 24(b)(3) ........ 17

Regulations

40 C.F.R. § 86.1811-17 ........ 6

84 Fed. Reg. 51310 (Sept. 27, 2019) ........ 10

Cal. Code Regs., tit. 13, § 1961.2.1(a) ........ 6

Other Authority

U.S. Const., art. VI, cl. 2 ........ 6

U.S. Const. amend. I ........ 10

## INTRODUCTION

This case presents a single, narrow, and purely legal question of statutory interpretation: whether the Energy Policy and Conservation Act of 1975 (EPCA) expressly preempts two of California's Advanced Clean Cars (ACC I) light-duty vehicle regulations. Because the statutory text answers that preemption question in the affirmative, the Court need not—and should not—consider the expansive constitutional, state-law, and climate theories the proposed "Youth Intervenors" seek to inject into this case. Their participation will greatly expand the scope of this case and will not help the Court decide the sole issue.

The Court should therefore deny the Youth Intervenors' motion to intervene. *See* Dkt. No. 45 (hereinafter "Youth Mot."). No matter how sincerely the Youth Intervenors believe they are experiencing the collection of harms they describe, their motion fails to meet Fed. R. Civ. P. 24(a)'s requirements to intervene as of right. Discretionary permissive intervention under Fed. R. Civ. P. 24(b) is similarly unwarranted here. The Youth Intervenors' motion presents only generalized political grievances that do not justify intervention. This Court would be unable to remedy their grievances even if it allowed intervention.

The Youth Intervenors do not identify a single "significant protectable interest" as Fed. R. Civ. P. 24(a)(2) requires. The Constitution does not provide the Youth Intervenors a substantive due process right under the Fifth or Fourteenth Amendments "to enjoy their 'terrestrial existence' in health and . . . happiness." Likewise, any incidental effects of a court ruling that EPCA preempts the two challenged ACC I regulations will in no way "substantially burden" their free exercise of religion for purposes of the First Amendment and Religious Freedom Restoration Act. The Supremacy Clause dispenses with their claimed interests under the California and Hawaii State constitutions, and the public trust doctrine does not apply to the Federal Government. The Youth Intervenors' reliance on the *Navahine* settlement agreement with the State of Hawaii—which is enforceable only in Hawaii State court—fails for similar reasons and under its own terms.

Even if the Court recognizes any of these non-existent rights, preempting portions of ACC I will not impair or impede the Youth Intervenors' ability to protect their interests; certainly not "as a practical matter." Fed. R. Civ. P. 24(a)(2). Indeed, preempting the challenged portions of ACC I bears no causal relation to their alleged harms. The Youth Intervenors' claimed climate-related harms have occurred while—as California puts it—the ACC I $CO_2$ tailpipe emission limits have been operating at their "maximum stringency" and some vehicle manufacturers "surpassed" the annual zero emission vehicle (ZEV) sales percentage requirement. *See* Dkt. No. 35 at 1 ln. 15-17; Dkt. No. 64 at 3 ln. 6-7. Any speculative future downstream effects of preempting the two challenged aspects of California's ACC I regulations are too attenuated to impose the level of impairment that Rule 24(a) requires.

Lastly, California will adequately represent the interests of its Youth Intervenor residents. *See Arakaki v. Cayetano,* 324 F.3d 1078, 1086 (9th Cir. 2003); Fed. R. Civ. P. 24(a)(2). The Youth Intervenors and Defendants share the same ultimate objective, *i.e.*, denying that EPCA preempts ACC I's $CO_2$ tailpipe emission limits and ZEV mandate for light-duty vehicles. California's motion to dismiss and other filings underscore how vigorously it will defend itself and its regulatory prerogatives. The Youth Intervenors' participation will not meaningfully add to that effort or help the Court decide this case.

The Court should deny the Youth Intervenors' motion.

## STANDARD OF REVIEW

The Youth Intervenors bear the burden of showing that *all* requirements for intervention have been met under Fed. R. Civ. P. 24(a). *See, e.g.*, *East Bay Sanctuary Covenant v. Biden*, 102 F.4th 996, 1001 (9th Cir. 2024). "[F]ailure to satisfy any one of the requirements is fatal." *Perry v. Schwarzenegger*, 630 F.3d 898, 903 (9th Cir. 2011) (cleaned up).

Granting permissive intervention under Fed. R. Civ. P. 24(b) is discretionary with the Court. *See In re Idaho Conserv. League*, 811 F.3d 502, 515 (D.C. Cir. 2016).

## ARGUMENT

### I. <u>Youth Intervenors Lack a Significant, Legally Protectable Interest</u>.

There are two "irreducible minimum" elements to justifying intervention under Rule 24(a)(2). *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.,* 54 F.4th 1078, 1088 (9th Cir. 2022) (citation omitted). Because the Youth Intervenors fail to meet both, they "lack[ ] any 'interest' under Rule 24(a)(2), full stop." *Id*.

First, none of the Youth Intervenors' claimed interests are "protectable under some law" for purposes of Rule 24(a). *Cal. Dep't of Toxic Substances Control*, 54 F.4th at 1088. The Youth Intervenors identify broad interests: constitutional "rights to life and liberty," State law public trust rights, religious practice impacts from climate change, childhood health burdens from air pollution, and interests arising from a Hawaii state court settlement agreement. But as the sub-sections below explain, none of these purported interests are adequately "'direct, non-contingent, substantial and legally protectable'" to warrant intervention as a matter of right. *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) (quoting *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1157 (9th Cir. 1981)), *modified*, 307 F.3d 943 (9th Cir. 2002).

Second, the required "'relationship'" between the Youth Intervenors' proposed legally protected interests and the Federal Government's claims is absent. *See Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) (quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)). The absence of a relationship is evident because the Youth Intervenors' claimed harms have all occurred while the challenged portions of ACC I have been in effect at their "maximum stringency." Dkt. No. 35 at 1. That disconnect is unsurprising given that the Youth Intervenors' health, climate, and public-trust assertions depend on complex, global causal chains that neither EPCA nor this litigation controls. Consequently, the Youth Intervenors can resort only to bare speculation that granting the Federal Government's relief "'actually will affect'" them. *Cf. S. Cal. Edison Co.*, 307 F.3d at 803 (quoting *United States v. City of L.A.*, 288 F.3d 391,

398 (9th Cir. 2002)).

Furthermore, the Youth Intervenors' interests are not legally tied to the federal question being adjudicated—whether EPCA preempts two of ACC I's light-duty vehicle regulations. The text of 49 U.S.C. § 32919(a) does not contemplate considering alleged downstream climate or health impacts.[1] The Youth Intervenors' purported interests are, thus, "several degrees removed" from the "backbone of this litigation," and they fail to allege the required nexus to this action. *United States v. Alisal Water Corp.*, 370 F.3d 915, 920 (9th Cir. 2004); *see also California et al.* v. *Trump et al.*, 2026 WL 2098700, at *2, No. 25-8013 (9th Cir. July 21, 2026) (affirming denial of intervention as of right because asserted downstream economic interests were too attenuated to constitutional challenge of Congressional Review Act resolutions).

A. <u>There is no substantive due process right to the benefit of California vehicle emissions regulations</u>.

The substantive due process rights the Youth Intervenors ask this Court to recognize are "entirely unknown in American law" and wrongly invite "freewheeling judicial policymaking." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 231, 240 (2022). There is no substantive due-process right—"deeply rooted in this Nation's history and tradition"—to force the federal government not to preempt California's vehicle emissions regulations. The Youth Intervenors point to absolutely no basis in law for a personal right to the benefit of California's Advanced Clean Cars regulation. That is enough to resolve this issue.

If more were needed, the Youth Intervenors also cannot support their assertion of a more generalized right to a "terrestrial existence in health" or a particular kind of atmosphere. Youth Mot. at 8; *Dep't of State v. Munoz*, 602 U.S. 899, 911 (2024); *see also Sterling v. City of Jackson, Mississippi*, No. 24-60370, 2026 WL 2617771, at *3-5 (5th Cir. Sept. 4, 2026) (no substantive due-process right to clean water). Youth Intervenors point

[1] The Youth Intervenors are not the object of the Plaintiffs' requested injunctive relief. However, like the Defendants, they too "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).

to no history or precedent recognizing an individual's fundamental right to a particular mix of atmospheric gases, to be free from climate change, to a preferred outdoor temperature, to eliminate fossil fuel use or resulting emissions, or to a certain number of naturally occurring events, like wildfires. *Cf*. Youth Mot. at 7, 16, 17, 20. Indeed, federal courts have repeatedly rejected the existence of a fundamental constitutional right to a "life-sustaining climate system," a "pollution-free environment," or similar interests. *Clean Air Council v. United States*, 362 F. Supp. 3d 237, 250-52 (E.D. Pa. 2019); *Nat'l Sea Clammers Ass'n v. City of New York,* 616 F.2d 1222, 1238 (3d. Cir. 1980), *vacated on other grounds*, 453 U.S. 1 (1981); *SF Chapter of A. Philip Randolph Inst. v. U.S. E.P.A.*, No. 07-cv-04936-CRB, 2008 WL 859985, at *7 (N.D. Cal. Mar. 28, 2008) (right to be free of climate change pollution "not protected by the Fourteenth Amendment"); *Animal Legal Def. Fund v. United States*, 404 F. Supp. 3d 1294, 1302 (D. Or. 2019) (no fundamental "right to wilderness"). The due-process rights Youth Intervenors claim are unlike other fundamental rights the Supreme Court recognizes.

Relatedly, the due process clause does not require the Federal Government to affirmatively protect anyone. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989) (due process clause "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security"). The Department of Transportation (DOT) thus has no constitutional duty to give the Youth Intervenors a life that is "free from danger" and "free from hurt." Youth Mot. at 8.

Youth Intervenors wrongly rely on Blackstone's *Commentaries on the Laws of England* and dictionaries, and misrepresent an 1818 address by James Madison observing that the "atmosphere is the breath of life." Youth Mot. at 8-9, 11. But none of these historical secondary sources say anything about an individual's constitutional right to a particular mixture of atmospheric gases, preferred temperatures, or acceptable number of wildfires, let alone about a right to the benefit of a specific set of California's vehicle emissions regulations. For precedent, Youth Intervenors principally misrely on inapposite criminal cases in which, for example, sheriffs ordered the forced stomach

pumping of a suspected drug dealer (*Rochin v. California*, 342 U.S. 165, 172 (1952)) and prison guards intentionally subjected a prisoner to second-hand smoke in violation of the Eighth Amendment (*Helling v. McKinney*, 509 U.S. 25 (1993)). *See id.* at 8; *cf. Sterling*, 2026 WL at *3.

Youth Intervenors likewise cannot bolster their substantive due process claims by contending that their health is harmed by exposure to emissions of non-greenhouse-gas "criteria" pollutants like particulate matter (PM), ozone, and nitrogen dioxide ($NO_2$) that stem from general "traffic-related pollution." Youth Mot. at 4-5. Whatever interests—substantive due process or otherwise—the Youth Intervenors may have regarding emissions of these pollutants are unimpaired. *Cf.* Fed. R. Civ. P. 24(a)(2). Both the United States Environmental Protection Agency and California have standards, still in force, that specifically regulate light-duty vehicle criteria-pollutant exhaust emissions. *See, e.g.*, 40 C.F.R. § 86.1811-17 (exhaust emissions standards) and Cal. Code Regs., tit. 13, § 1961.2.1(a) (same).

B. Federal law takes precedence over the asserted State law rights.

Federal law is "the supreme Law of the Land." U.S. Const. art. VI, cl. 2. And supremacy means that the Youth Intervenors' claimed State law interests do not override the federal interests Congress protected in EPCA's framework for setting motor vehicle fuel-economy standards, as its express preemption provision specifically evidences. *See Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (finding no "significantly protectable interest" under Rule 24(a)(2) based on state legal rights or duties that are subject to a federal preemption statute). DOT's authority to set average fuel economy standards for light-duty vehicles is thus not subject to the influence of California or Hawaii state laws. Although the Youth Intervenors recognize EPCA's "nationwide fuel-economy framework," they wrongly explain that Congress directed DOT to account for California state vehicle emission standards when administering federal fuel-economy requirements. Youth Mot. at 12; *cf.* Memo. In Supp. of Pls.' Mot. for Summ. J. at 13-16 (Dkt. 43-1) (explaining why EPCA's fuel-economy-standard-setting provision does not

refer to state law tailpipe emissions standards or require DOT to consider them).

Invoking States' "traditional police powers"—which the Youth Intervenors acknowledge are "discretionary"—does not change this result. *See* Youth Mot. at 1, 3, 11-12. EPCA holds supremacy over California's and Hawaii's legal frameworks regardless of whether they involve a matter of traditional or special state concern. *See, e.g.*, *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982); *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (when a statute includes an express preemption provision, there is no "presumption against pre-emption").

1. *A Hawaii state court will oversee how Hawaii meets its commitments under the Navahine settlement agreement over the next 20 years.*

The Hawaii state court *Navahine* settlement agreement also does not support intervention. *See* Youth Mot. at 3, 10, 17-18; *see also* Dkt. No. 45-2. Because five of the six Youth Intervenors are not parties to the *Navahine* settlement agreement, they lack any protectable interest this federal action could directly impair or legally prejudice. *See Sweet v. Cardona*, 121 F.4th 32, 41, 45-46, 48 (9th Cir. 2024), *cert. denied*, 146 S. Ct. 1658 (2026); *see also* Dkt. No. 45-8, 45-9, 45-10, 45-12, and 45-13 (declarations of California resident Youth Intervenors). And any "distinct" legal interest (Youth Mot. at 17) the lone Hawaiian Youth Intervenor[2] may have under the agreement is far too contingent for purposes of Rule 24(a)(2). *See* Dkt. No. 45-11; *see also S. Cal. Edison Co.*, 307 F.3d at 803 (interest must be "'direct, non-contingent, substantial and legally protectable'").

It is pure speculation that Hawaii's compliance with the settlement agreement—which never references the ACC I regulations—will be undermined if this Court grants the federal government's requested relief against California. *See* Youth Mot. at 3, 10, 13, 17-18. Hawaii still has two decades to meet its commitments, subject to the bounds of federal authority. *See* Dkt. No. 45-2 at 4 (¶ 1). Granting the Federal Government's requested relief does not change these commitments. Moreover, all the Parties, including the

[2] The Youth Intervenors' motion references, but does not include, declarations from other apparent Hawai'i residents. *See* Youth Mot. at 17 (referencing missing declarations of "Luca" and "C.M."); *cf.* Dkt. 45.

relevant Youth Intervenor, entered into the *Navahine* settlement aware of its unremarkable caveat that Hawaii's "authority has limitations, and that [Hawaii] cannot take any actions beyond the scope of the authority allocated to it under federal law." *Id*. at 12 (¶ 12.a).

Under Ninth Circuit precedent, intervention is unavailable where a pending action merely exerts an indirect or contingent effect on a hypothetical future lawsuit—particularly when the proposed intervenor can fully vindicate that interest in the future litigation itself. *See, e.g.*, *S. Cal. Edison*, 307 F.3d at 803 (no protected interest for creditor asserting regulation would affect debtor's ability to repay); *Donnelly*, 159 F.3d at 410 (no protected interest for men seeking to assert employment claims against same employer as women plaintiffs); *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993) (no protected interest for Tribe seeking to protect fishing rights in case involving recognition of other Tribe); *Montana v. EPA*, 137 F.3d 1135, 1142 (9th Cir. 1998) (no protected interest for water users in case where Tribe seeks authority to regulate water quality); *Dilks*, 642 F.2d at 1157 (no protected interest for union asserting potential liability if court interpreted collective bargaining agreement). And all else aside, those hypothetical future disputes under the settlement agreement would not belong in this Court. The agreement expressly preserves "continuing jurisdiction to enforce the Parties' obligations" in Hawaiian state court.[3] *See* Dkt. No. 45-2 at 11 (¶ 9).

For similar reasons, any "state-law-derived" interests under the *Navahine* settlement agreement will not be impeded or impaired as a practical matter if the Federal Government's relief is granted. *See* Fed. R. Civ. P. 24(a)(2).

2. *The public trust doctrine does not bind the United States*.

The public trust doctrine does not provide the Youth Intervenors with protectable "public trust rights from any federal preemption of state regulations." Dkt. No. 45 at 2. The Supreme Court has explained that the public trust doctrine is a creature of State law and imposes no obligations on the Federal Government. *PPL Montana, LLC v. Montana*, 565

[3] For the same reason, the *Navahine* settlement agreement does not support permissive intervention under Fed. R. Civ. P. 24(b). *See City of L.A.*, 288 F.3d at 403 (explaining that there must be "independent grounds for jurisdiction").

U.S. 576, 603-04 (2012); *United States v. 32.42 Acres of Land*, 683 F.3d 1030, 1038 (9th Cir. 2012).[4] The Youth Intervenors seem to recognize this. *See* Youth Mot. at 10 ("Protecting public trust-beneficiary rights of the citizens of a state . . . is traditionally within a state's authority"). The Supreme Court held in *PPL Montana* that "the public trust doctrine remains a matter of state law," and that its "contours . . . do not depend upon the Constitution." *PPL Montana*, 565 U.S. at 603-04. The Court explained that the public trust doctrine, was "subject . . . to the federal power to regulate vessels and navigation under the Commerce Clause and admiralty power." *Id.* at 604. *PPL Montana* made clear that a public trust doctrine would never apply to the Federal Government, *id*. at 603-04, and different facts would not change that result. The Youth Intervenors' purported interest pursuant to the public trust doctrine is thus foreclosed by binding Supreme Court precedent.

In any event, no federal court has held that the climate system or atmosphere is protected by a public trust doctrine. Indeed, the concept has been widely rejected.[5] Public trust cases have historically involved State ownership of specific types of natural resources, usually limited to submerged and submersible lands, tidelands, and waterways. *See, e.g.*, *PPL Montana*, 565 U.S. at 603-04 (riverbeds); *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env'l Prot.*, 560 U.S. 702, 707-08 (2010) (submerged lands); *Phillips Petrol. Co.*, *v. Miss*, 484 U.S. 469, 476-77 (1988) (tidelands); *Summa Corp. v. California ex rel. State Lands Commission*, 466 U.S. 198, 205-06 (1984) (tidelands); *United States v. Mission Rock Co.*, 189 U.S. 391, 406-07 (1903) (tidelands); *Ill. Cent. R.R. Co. v. Ill.*, 146

[4] The Youth Intervenors' proposed answer concedes that the public trust rights they envision come from state constitutional law. *See, e.g.*, Dkt. No. 45-1 at 4 ("C.M.'s state constitutional public trust rights"), 6 ("Kalālapa's state constitutional public trust rights").

[5] *See, e.g.*, *Sanders-Reed ex rel. Sanders-Reed v. Martinez*, 350 P.3d 1221, 1225 (N.M. Ct. App. 2015) ("Plaintiffs have cited no cases — and we have found none — where another jurisdiction's appellate court has concluded that common law public trust principles independently apply to management of the atmosphere."); *Filippone v. Iowa Dep't of Nat'l Res.*, 829 N.W.2d 589 (Table), No. 12-0444, 2013 WL 988627, at *3 (Iowa Ct. App. Mar. 13, 2013) (the defendant "does not have a duty under the public trust doctrine to restrict greenhouse gases to protect the atmosphere"); *Aronow v. Minnesota*, No. A12-0585, 2012 WL 4476642, at *3 (Minn. Ct. App. Oct. 1, 2012) ("no Minnesota appellate court has held that the public-trust doctrine applies to the atmosphere").

U.S. 387, 453-60 (1892) (submerged lands). The climate system or atmosphere is unlike any resource previously deemed subject to a public trust. It cannot be owned and, due to its ephemeral nature, cannot remain within the jurisdiction of any single government.

C. Preempting California's "fuel-economy" requirements will not substantially burden religious practice.

Youth Intervenors' religious freedom claims are equally meritless. Their First Amendment claim ends with the text. Youth Intervenors point to no law "prohibiting the free exercise" of religion. U.S. Const. amend. I. The Religious Freedom Restoration Act (RFRA) likewise does not provide them with a protectable interest sufficient to intervene. Religion is in no way "directly implicated" by a case about DOT's authority to set federal fuel-economy standards for light-duty vehicles. *Real Alts., Inc. v. Sec'y of HHS*, 867 F.3d 338, 360 (3d Cir. 2017) (collecting cases).

The RFRA generally prohibits the federal government from "substantially burden[ing] a person's exercise of religion." 42 U.S.C. § 2000bb-1(a). The government may nonetheless do so if the substantial burden "is in furtherance of a compelling governmental interest"—such as DOT's ability to set uniform national fuel economy standards—and uses the "least restrictive means" to further that interest. *Id.* § 2000bb-1(b); *see also* 84 Fed. Reg. 51310, 51312 (Sep. 27, 2019). Whether the government has imposed a "substantial burden" under RFRA is a question of law. *See, e.g.*, *Real Alts.*, 867 F.3d at 356.

Preempting ACC I's $CO_2$ tailpipe emission limits and ZEV mandate for light-duty vehicles poses no substantial burden on the Youth Intervenors' freedom of religion. Indeed, the Federal Government's requested relief does not require the Youth Intervenors to take any action at all. This case in no way "coerce[s]" the Youth Intervenors "into violating their religious beliefs" or "penalize[s] religious activity by denying [them] an equal share of the rights, benefits, and privileges enjoyed by other citizens." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 449 (1988). That is the standard. The Youth Intervenors' alleged concerns about it becoming too hot or smoky to wear heavier,

traditional religious clothing or comfortably attend religious services or events fall far short. *See, e.g.*, Youth Mot. at 6, ln. 4-12; *id*. at 16, ln. 18-20. Hypothetical incidental effects of allowing manufacturers to sell more internal-combustion vehicles are not government burdens within RFRA's purview.

The Supreme Court rejected similar complaints in *Lyng*, finding that such "incidental effects," even if they may make it more difficult for certain religious practices, do not suffice because they do not "coerce individuals into acting contrary to their religious beliefs." *Lyng* at 450-51; *see also, e.g.*, *Apache Stronghold v. United States*, 101 F.4th 1036, 1061 (9th Cir. 2024) (RFRA "must be understood as having similarly adopted" *Lyng*'s substantial-burden test); *Henderson v. Kennedy*, 253 F.3d 12, 15-16 (D.C. Cir. 2001) (claimants could not show a substantial burden from a ban on selling religious t-shirts on the National Mall that neither forced them to engage in conduct forbidden by their religion nor prevented them from engaging in conduct their religion required). The absence of any affirmative government action regulating the Youth Intervenors—let alone the absence of government-threatened penalties—also distinguishes this case from *Burwell v. Hobby Lobby Stores*, *Inc.*, 573 U.S. 682 (2014). *See* Youth Mot. at 7.

Relatedly, the relief Youth Intervenors seek is not available to them under RFRA. Because RFRA is violated only if the government regulates the claimant, the remedy under RFRA is to remove that burden, often through a religious exemption from the challenged law. *See, e.g.*, *U.S. Navy SEALs 1-26 v. Biden*, 27 F.4th 336 (5th Cir. 2022) (vaccine mandate); *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657 (2020) (contraceptive mandate). RFRA is not a mechanism for adherents to use religious objections to dictate government or third-party conduct. *Priests for Life v. U.S. Dep't of Health and Human Servs.*, 772 F.3d 229, 246 (D.C. Cir. 2014). Indeed, if the Youth Intervenors were right, RFRA could be used to commandeer all kinds of government regulation. No doubt reducing speed limits nationwide would on average make it safer to drive to church, as would prompt plowing of all roads after blizzards. But RFRA does not allow adherents to force such government actions. The Court should not allow the Youth

Intervenors to use RFRA to do so here.

D. Article III standing analysis weighs against intervention.

For many of the reasons explained above, the Youth Intervenors also cannot meet Article III's traditional standing requirements. That failure defeats their claimed significant protectable interests for purposes of Fed. R. Civ. P. 24(a)(2). RFRA explicitly requires that Article III standing be shown "to assert a claim *or defense.*" *See* 42 U.S.C. § 2000bb-1(c) (emphasis added); *see also Little Sisters of the Poor Saints Peter & Paul Home*, 591 U.S. at 674 n.6 ("An intervenor of right must independently demonstrate Article III standing if it pursues relief that is broader than or different from the party invoking a court's jurisdiction."). And though the Ninth Circuit may not generally require that potential defendant-intervenors satisfy Article III standing requirements, the analysis remains relevant here because it is "at least implicitly addressed by our requirement that the [intervenor] applicant must assert an interest relating to the property or transaction which is the subject of the action." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 n.3 (9th Cir. 2001) (cleaned up); Youth Mot. at 15 n.4.

The Youth Intervenors cannot meet their "substantially more difficult" burden to prove standing here because none of them are the object of the challenged ACC I regulations or this preemption case. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992). First, for the reasons explained above, the Youth Intervenors' generalized grievances and hypothetical harms are far from the required concrete, personal, and particularized injuries-in-fact. *See, e.g.*, *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) ("By requiring the plaintiff to show an injury in fact, Article III standing screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action"); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). A "generalized anxiety disorder which is triggered by…politicians' refusal to act against climate change" or that similar aspirational environmental goals may be harmed by preempting the ACC I regulations are not cognizable. *See, e.g.*, Decl. of Emma Weibel ¶ 6 (Dkt. No. 45-8); *Summers v. Earth Island Inst*., 555 U.S. 488, 494 (2009) (holding that

a claim of "generalized harm to the forest or the environment will not alone support standing"). Indeed, the Ninth Circuit in *Nw. Forest Res. Council v. Glickman* cautioned that environmental advocacy alone is unlikely a "significantly protectable interest" required under Fed. R. Civ. P. 24(a)(2). *See Glickman*, 82 F.3d at 836-37.

Second, even if the Youth Intervenors could trace some of their alleged climate-related injuries to greenhouse-gas emissions generally, they could not prove the harms would be caused by any tailpipe greenhouse-gas emissions that might hypothetically result from preempting the challenged ACC I regulations. *See All. for Hippocratic Med.*, 602 U.S. at 382. And lastly, the Ninth Circuit has already dismissed similar climate-related substantive due process and public trust doctrine claims on standing grounds for lack of redressability. *See Juliana v. United States*, 947 F.3d 1159, 1170-71 (9th Cir. 2020); *see also All. for Hippocratic Med.*, 602 U.S. at 380 (noting that "causation and redressability . . . are often flip sides of the same coin" (citation modified)). Likewise, here, denying the federal government's preemption claim will not redress the existing harms the Youth Intervenors complain of.

Given that they cannot establish Article III standing, the Youth Intervenors cannot satisfy the "significant protectable interest" requirement needed to intervene as of right.

## II. Preempting The Challenged ACC I Regulations Will Not Impair Or Impede The Youth Intervenors' Interests.

Even if the Court agrees that the Youth Intervenors have a significant protectable interest, they cannot show the Federal Government's requested relief creates a practical impairment to protecting it. *See Glickman*, 82 F.3d at 838 ("The third [impairment] factor presupposes that the prospective intervenor has a protectable interest."). If reaching this issue is necessary, this Court should be "'guided primarily by practical considerations, not technical distinctions.'" *See Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (quoting *Sw. Ctr. for Biological Diversity*, 268 F.3d at 818).

A. <u>The ACC I regulations – at their "maximum stringency" – did not prevent the claimed harms</u>.

Preserving the "health and safety benefits" the Youth Intervenors argue will be lost if the ACC I and similar future regulations are preempted makes no difference to their ability to protect their asserted constitutional and public-trust interests. *See* Youth Mot. at 19-20. The Youth Intervenors' alleged climate harms actually occurred *while* California's $CO_2$ emission standards were operating at maximum stringency and vehicle manufacturers were exceeding ZEV sales targets. *See* Dkt. No. 35 at 1, 13-14; Dkt. No. 64 at 3 ln. 6-7. Because these injuries persisted under—according to California—full regulatory compliance, they cannot be attributed to the potential preemption of those same standards. Arguing that preempting the challenged ACC I regulations will cause the same harms the Youth Intervenors are already experiencing is simply an irrelevant, self-fulfilling prophecy. It fails to prove any practical impairment or impediment to the Youth Intervenors' ability to protect their speculative, attenuated interests. *See S. Cal. Edison Co.,* 307 F.3d at 803 (citing *Donnelly,* 159 F.3d at 410).

The Youth Intervenors' vague concerns about a higher probability—which is neither certain nor great—of future climate conditions, wildfire smoke, heat waves, and asthmatic events are also legally insufficient. This speculation is not supported by how or to what extent preempting the challenged ACC I regulations will increase emissions of $CO_2$ or other traffic-related pollutants, or what effect that hypothetical increase will have on their interests. The expert declarations Youth Intervenors rely on do not draw these connections. *See* Dkt. No. 45-6 and 45-7.

B. <u>The Youth Intervenors' other legal actions adequately protect their interests</u>.

In addition, the Youth Intervenors cannot show a practical impairment of their interests because they can "adequately protect their interests in separate litigation." *Akina v. Hawaii*, 835 F.3d 1003, 1012 (9th Cir. 2016); *see also Alisal Water*, 370 F.3d at 921 (no impairment when prospective intervenor had alternative means of redress). Several of the Youth Intervenors are already actively litigating in other courts to vindicate some of the

same interests they assert here, as well as to advocate for climate policies they prefer. Indeed, the majority of their discussion about how *this* action will impair their interests is instead about legal challenges they have filed over grievances with the Federal Government's broader policies about greenhouse-gas regulation and energy security. *See* Youth Mot. at 19-20. For example, some Youth Intervenors filed a petition for review in the D.C. Circuit Court of Appeals challenging EPA's rescission of the Endangerment Finding and repeal of its greenhouse-gas emission standards for motor vehicles. *See* Youth Mot. at 19 (citing *Venner v. U.S. EPA*, No. 26-1038 (D.C. Cir. filed Feb. 18, 2026)). Some have sued to invalidate President Trump's Executive Order directing the "unleashing" of fossil fuels. *See id*. at 19-20 (citing *Lighthiser v. Trump*, No. 25-cv-54-BU-DLC, 2025 WL 2930569 (D. Mont. Oct. 15, 2025), *aff'd*, No. 25-6714, 2026 WL 1555982 (9th Cir. June 2, 2026)). Others sought to protect their legal interests as parties to and beneficiaries of the *Navahine* settlement agreement. *Id*. at 20.

The "[m]ere inconvenience" of requiring the Youth Intervenors to continue litigating separately "is not the sort of adverse practical effect contemplated by Rule 24(a)(2)." *Blake v. Pallan*, 554 F.2d 947, 954 (9th Cir. 1977).

## III. <u>California Shares The Youth Intervenors' Ultimate Objective And Will Adequately Represent Their Interests</u>.

Although Rule 24 is broadly interpreted to favor intervention, the burden of establishing inadequacy of representation "is not without teeth . . . ." *Prete v. Bradbury*, 438 F.3d 949, 956 (9th Cir. 2006). Here, the Youth Intervenors cannot make the "compelling showing" to overcome the presumption that California will adequately represent their interests. *See Arakaki*, 324 F.3d at 1086 (internal citations omitted). California is presumed to adequately represent its constituents' interests when it acts on their behalf, and five of the six Youth Intervenors are California residents. *See id*. at 1086-87; Dkt. No. 45-8, 45-9, 45-10, 45-12, and 45-13. This specific presumption flows from the more general one that "where a proposed intervenor and an existing party 'share the same ultimate objective, a presumption of adequacy of representation arises.'" *California*

*v. U.S. Envtl. Prot. Agency*, No. 18-CV-03237-HSG, 2018 WL 6069943, at *3 (N.D. Cal. Nov. 20, 2018) (quoting *Citizens for Balanced Use*, 647 F.3d at 898). In such cases, a "compelling showing" is required to overcome this presumption. *Citizens for Balanced Use*, 647 F.3d at 898) (quoting *Arakaki*, 324 F.3d at 1086); *Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 307 (E.D. Cal. 2011).

Here, the Youth Intervenors and California seek the same relief, and both reference the same California state health and safety legislation that addresses the same climate-related harms allegedly occurring "within the State." *See* Proposed Ans. of Youth Intervenors to First Amd. Compl. at 20-21 (Prayer for Relief) (Dkt. No. 45-1); Youth Mot. at 13, ln. 4-9 (citing Cal. Health & Safety Code § 38501(a) and Dkt. No. 35). This alignment of interests is "[t]he most important factor" in determining whether an existing party adequately represents the interests of a proposed intervenor. *Arakaki*, 324 F.3d at 1086. Indeed, California did not oppose the Youth Intervenors' motion.

The Youth Intervenors fail to demonstrate that their objectives meaningfully differ from California's interests in protecting its residents' health and welfare. And the Youth Intervenors have not raised any other circumstances that might overcome the presumption of adequate representation, such as collusion, adversity of interest, nonfeasance, incompetence, or lack of financial resources. *Cf. Miller v. Ghirardelli Chocolate Co.*, No. 12–cv–04936–LB, 2013 WL 6776191, at *8 (N.D. Cal. Dec. 20, 2013) (collecting cases). To the contrary, California has shown—in this case and others—that it will vigorously defend its interests and regulatory prerogatives. *See* Defs.' Mots. to Dismiss (Dkt. Nos. 15 and 35); Pls.' Memo. Opposing Defs.' Rule 12(b)(1) Mot. to Dismiss First Amd. Compl. at 19, ln. 7-22 (Dkt. No. 40) (discussing recent lawsuit California filed in D.C. Circuit Court of Appeals to maintain ACC I's requirements and the state's enforcement authority). Conclusory statements that California is unlikely to raise their constitutional arguments—that are legally infirm and irrelevant under 49 U.S.C. § 32919(a)—do not suffice. Youth Mot. at 21. Nor would "mere [ ] differences in [litigation] strategy ..." *City of L.A.*, 288 F.3d at 402-03; *see also Glickman*, 82 F.3d at 838 ("minor differences in opinion" between the

parties and proposed intervenor "fail[ ] to demonstrate inadequacy of representation"). Pointing out their "distinct" defenses—which are irrelevant in this express preemption case—only serves to confirm that the Youth Intervenors have not met their burden to establish standing. *See Little Sisters of the Poor Saints Peter & Paul Home*, 591 U.S. at 674 n.6; Youth Mot. at 21, ln. 19.

California is the entity whose actions are being challenged, and the State is best suited to defend the interests at stake. Even if the Youth Intervenors had a significant protectable interest, they have not made a compelling showing to rebut California's presumed adequate representation. *Cf. Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 952-955 (9th Cir. 2009) (asserted differences not sufficient to meet burden of "compelling showing" of inadequate representation).

## IV. <u>Permissive Intervention Should Also Be Denied.</u>

The Youth Intervenors provide no separate reasons to justify why the Court should exercise its discretion to allow permissive intervention. *See* Youth Mot. at 22, ln. 17 ("[f]or all of the reasons described above"). And doing so would only serve to introduce new, unnecessary factual and legal issues that will needlessly complicate and delay resolving the straightforward statutory interpretation question this case involves. *See* Fed. R. Civ. P. 24(b)(3).

Permissive intervention may be allowed "'where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common.'" *City of L.A.*, 288 F.3d at 403 (quoting *Glickman*, 82 F.3d at 839). The Youth Intervenors may share the same ultimate objective as California. But their arguments and interests about the effects of climate change, federal constitutional rights to a "life-sustaining climate system," religious-exercise burdens, and public-trust resource theories have nothing in common, legally or factually, with whether EPCA preempts the challenged ACC I regulations. *See* Fed. R. Civ. P. 24(b)(1)(B).

Other factors courts consider in evaluating whether to allow permissive intervention also weigh heavily in favor of denying the Youth Intervenors' request. To the extent these factors mirror Rule 24(a)(2), the same reasons explained above for denying Youth Intervenors' request for intervention as of right also support denying their permissive intervention request. These overlapping factors include: the nature and extent of the Youth Intervenors' interest, their standing to raise relevant legal issues,[6] the legal position they seek to advance and its probable relation to the merits of the case, and whether their interests are adequately represented by other parties. *See, e.g.*, *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

But the Youth Intervenors' participation also would not further the "just and equitable adjudication of the legal questions presented." *Spangler*, *id*. Because preemption is purely legal matter, there are no genuine issues of disputed material fact. *See* Pls. Mot. for Summ. J. (Dkt. No. 43). There is therefore no need for the Youth Intervenors to help develop a factual record. *Id*. Indeed, the substantial list of factual and legal issues the Youth Intervenors seek to present far exceeds the proper scope of this suit. It would dramatically expand briefing, increase the potential for expert witness disputes and evidentiary burdens, prejudicing existing parties and derailing efficient resolution of this case.

Allowing permissive intervention would transform a narrow statutory interpretation case into a broad constitutional and climate-policy challenge. It would only prolong or unduly delay the litigation. The many factual and legal issues raised by the Youth Intervenors' non-justiciable political grievances should not become part of this lawsuit.

## CONCLUSION

The Court should deny Defendant-Intervenors' motion to intervene (Dkt. 45).

[6] While generally a lack of Article III standing is not a *per se* reason to deny permissive intervention, *see* *Schwarzenegger*, 630 F.3d at 906, it does speak to the questionable extent of the Youth Intervenors' interest in this matter and to the fact that their participation is not needed to fully develop this litigation.

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
ROBERT N. STANDER
Deputy Assistant Attorney General

*s/ Ian M. Swenson*

Designated Counsel for Service: IAN M. SWENSON
Senior Counsel
California Bar No. 344260
Energy and Natural Resources Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 532-5139
Ian.Swenson@usdoj.gov

ERIC GRANT
United States Attorney
Eastern District of California

*Attorneys for the Plaintiffs*

OF COUNSEL:

GREGORY ZERZAN
General Counsel
GREGORY COTE
Principal Deputy General Counsel
CHARLES E. ENLOE
Assistant General Counsel
ERIN D. HENDRIXSON
Senior Trial Attorney

PETER SIMSHAUSER
Chief Counsel
DYLAN J. VONEIFF
Trial Attorney
National Highway Traffic Safety Administration