JULIA A. OLSON (CA Bar No. 192642)
julia@ourchildrenstrust.org
ANDREA K. RODGERS (pro hac vice)
andrea@ourchildrenstrust.org
NATHAN BELLINGER (pro hac vice)
nate@ourchildrenstrust.org
PHILIP L. GREGORY, of counsel (CA Bar. No. 95217)
phil@ourchildrenstrust.org
OUR CHILDREN'S TRUST
1216 Lincoln St.
Eugene, OR 97401
Tel: (415) 786-4825

JOSEPH W. COTCHETT (CA Bar No. 36324)
jcotchett@cpmlegal.com
NANCI E. NISHIMURA (CA Bar No. 152621)
nnishimura@cpmlegal.com
ANNE MARIE MURPHY (CA Bar No. 202540)
amurphy@cpmlegal.com
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for Youth Defendant-Intervenors*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA and UNITED STATES DEPARTMENT OF TRANSPORTATION,

Plaintiffs,

v.

CALIFORNIA AIR RESOURCES BOARD and STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board,

Defendants.

No. 2:26-cv-00847-DJC-SCR

**REPLY IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS BY YOUTH-INTERVENORS**

Date: September 24, 2026
Time: 1:30 p.m.
Location: Courtroom 7
Judge: Hon. Daniel J. Calabretta

Trial Date: Not set
Action Filed: March 12, 2026

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .................... ii

INTRODUCTION .................... 1

ARGUMENT .................... 2

I. Plaintiffs' Arguments for Opposing Intervention as of Right are Unavailing .................... 2

A. Youth-Intervenors' Interests are Protectable "Under Some Law" .................... 2

B. Legal Interests Deriving from State Law and the *Navahine* Settlement are Legally Protectable .................... 5

C. Youth-Intervenors Do Not Need to Establish Article III Standing to Intervene as Defendants .................... 7

D. An Adequate Relationship Exists Because a Ruling in Plaintiffs' Favor Would Impair Youth-Intervenors' Interests .................... 8

E. No Other Party Will Adequately Represent Youth-Intervenors' Interests .................... 11

II. At Minimum, Youth-Intervenors Meet the Criteria for Permissive Intervention .................... 13

CONCLUSION .................... 14

## TABLE OF AUTHORITIES

**CASES**

*Akina v. Hawai'i*, 835 F.3d 1003 (9th Cir. 2016) .......... 11

*Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053 (9th Cir. 2018) .......... 12

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) .......... 11, 12

*Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179 (2022) .......... 11

*Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078 (9th Cir. 2022) .......... passim

*Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303 (E.D. Cal. 2011) .......... 2, 11

*California ex rel. Lockyer v. United States*, 450 F.3d 436 (9th Cir. 2006) .......... 13

*California v. Trump*, No. 25-8013, 2026 WL 2098700 (9th Cir. July 21, 2026) .......... 10

*Cent. Valley Chrysler-Jeep, Inc. v. Goldstene*, 529 F. Supp. 2d 1151 (E.D. Cal. 2007) .......... 14

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893 (9th Cir. 2011) .......... 2

*Clark v. Martinez*, 543 U.S. 371 (2005) .......... 13

*Dilks v. Aloha Airlines*, 642 F.2d 1155 (9th Cir. 1981) .......... 4

*Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*, 508 F. Supp. 2d 295 (D. Vt. 2007) .......... 14

*Juliana v. United States*, 947 F.3d 1159 (9th Cir. 2020) .......... 8, 10

*Juliana v. United States*, 949 F.3d 1125 (9th Cir. 2018) .......... 10

*Juliana v. United States*, No. 24-645, 2024 WL 5125252 (U.S. Dec. 9, 2024) .......... 10

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657 (2020) .......... 7

*N.L.R.B. v. Cath. Bishop of Chicago*,
440 U.S. 490 (1979).......... 3

*S. Cal. Edison Co. v. Lynch*,
307 F.3d 794 (9th Cir. 2002) .......... 4

*Sw. Ctr. for Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001) ..........passim

*Sweet v. Cardona*,
121 F.4th 32 (9th Cir. 2024) .......... 5

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972).......... 12

*United States v. Alisal Water Corp.*,
370 F.3d 915 (9th Cir. 2004) .......... 10, 11

*United States v. City of Los Angeles*,
288 F.3d 391 (9th Cir. 2002) .......... 14

*United States v. Windsor*,
570 U.S. 744 (2013).......... 3

*White v. Texas Am. Bank/Galleria, N.A.*,
958 F.2d 80 (5th Cir. 1992).......... 4

*Wolff v. McDonnell*,
418 U.S. 539 (1974).......... 3

**CONSTITUTIONAL PROVISIONS**

Haw. Const. art. XI, § 1 .......... 5

Haw. Const. art. XI, § 9 .......... 5

U.S. Const. amend. I .......... 2

U.S. Const. amend. V.......... 2

U.S. Const. amend. X.......... 2

U.S. Const. amend. XIV .......... 2

**RULES**

Fed. R. Civ. P. 24(a).......... 2, 6

**OTHER AUTHORITIES**

Black's Law Dictionary (12th ed. 2024) .......... 3

## INTRODUCTION

Plaintiffs correctly admit that "Rule 24 is broadly interpreted to favor intervention," and that Youth-Intervenors' motion is timely. Dkt. 66 at 15; *see also* Dkt. 45 at 15 (citing cases). Instead of focusing on Youth-Intervenors' intervention arguments, Plaintiffs' opposition to intervention is more akin to a motion for summary judgment on the merits of legal claims Youth-Intervenors have *not* brought. *See, e.g.*, Dkt. 66 at 10–12 (arguing "Youth Intervenors' religious freedom claims are equally meritless."). These youth have not initiated this case. Rather, they have moved to intervene as Defendants to protect their interests in health, safety, and religious freedom, which are protected under state and federal law, and would be harmed by granting any of Plaintiffs' requested remedies. To the extent Plaintiffs address Youth-Intervenors' legally protected interests in protecting their health and safety, Plaintiffs ignore Youth-Intervenors' proffered evidence, write explicit constitutional rights out of the Constitution's text, *id.* at 4–5 (arguing against a right to life), and concoct an overly broad argument that the Energy Policy and Conservation Act ("EPCA") not only preempts the two rules at issue in this case, but also "California's and Hawaii's legal frameworks regardless of whether they involve a matter of traditional or special state concern." *Id.* at 7. Such arguments are unavailing. Additionally, contrary to Plaintiffs' views, Youth-Intervenors seek no relief beyond that requested by the parties, which is why their standing is not "implicitly" at issue. *Id.* at 12–13. While Youth-Intervenors do share the common goal of this case being resolved in California Air Resources Board's ("CARB") favor, they have different interests and raise distinct defenses that preclude CARB from adequately representing Youth-Intervenors' interests. In short, Plaintiffs have provided this Court with no lawful basis to deny Youth-Intervenors' motion to intervene as of right in this case. In the alternative, Youth-Intervenors should be granted permissive intervention.

## ARGUMENT

### I. Plaintiffs' Arguments for Opposing Intervention as of Right are Unavailing

#### A. Youth-Intervenors' Interests are Protectable "Under Some Law"

Federal Rule of Civil Procedure 24(a) requires a significant protectable interest relating to the property or transaction at issue in the action. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). Youth-Intervenors' "significant" interests include, but are not limited to, asthma triggered by traffic pollution, exposure to deadly heat and wildfire smoke, and other health, property, and religious harms from the tailpipe pollution that CARB's rules are designed to limit. *See* Dkt. 45 at 2–7, 16–18 (describing interests and citing declarations). Plaintiffs do not, and cannot, dispute the factual reality of these health harms; the expert and youth declarations stand unrebutted, even as Plaintiffs contest (wrongly) that these kinds of interests are sufficient for intervention as of right. *See, e.g.*, *Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 304 (E.D. Cal. 2011) (holding an environmental group's interest in reducing the health impacts of diesel emissions in California was sufficient to intervene as a defendant in a suit challenging a CARB emission regulation as preempted by federal law).

Instead, Plaintiffs claim Youth-Intervenors' interests are not "protectable under some law." Dkt. 66 at 3 (quoting Fed. R. Civ. P. 24(a)). However, Youth-Intervenors' interests are protectable through the legal defenses they will raise, which include (but are not limited to) the First, Fifth, Tenth, and Fourteenth Amendments to the federal Constitution. Dkt. 45 at 7–9; Dkt. 45-1 ¶¶ 111–20. Those Amendments protect individual, enumerated fundamental rights to life, liberty, and religious free exercise, and reserve core components of federalism (such as public-trust duties and police powers) to the states. U.S. Const. amends. I, V, X, XIV. These Amendments are relevant to the preemption analysis. For example, fundamental individual rights under the First, Fifth, and Fourteenth Amendments constrain the statutes that Congress may constitutionally enact, and also constrain the judiciary's construction of those statutes. *See, e.g.*, *United*

*States v. Windsor*, 570 U.S. 744, 774 (2013) ("[T]hough Congress has great authority to design laws to fit its own conception of sound national policy, it cannot deny the liberty protected by the Due Process Clause of the Fifth Amendment."); *N.L.R.B. v. Cath. Bishop of Chicago*, 440 U.S. 490, 500 (1979) ("[A]n Act of Congress ought not be construed to violate the Constitution if any other possible construction remains available."). State law provides additional protections for state-recognized interests and rights, many of which enjoy procedural protection through the federal Fourteenth Amendment, further affecting the preemption analysis. Dkt. 45 at 9–11; *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).

Plaintiffs attempt to transform the "interest" analysis into an analysis of the merits of Youth-Intervenors' asserted interests and legal defenses. Dkt. 66 at 3–11. However, none of the federal government's cited cases supports their attempt to twist the "interest" test into a merits test.

In *California Department of Toxic Substances Control v. Jim Dobbas, Inc.* ("*Toxic Substances Control*"), the district court denied the motion to intervene of three insurers, concluding they lacked a protectable interest because they refused to stipulate to cover the original defendant's liability for any judgment against it, and the court could not determine which insurer, if any, would ultimately be liable for such a judgment. 54 F.4th 1078, 1084 (9th Cir. 2022). The Ninth Circuit reversed because the asserted interest need only be "protectable under some law." *Id.* at 1088. "The key factor is whether the insurer provided the insured with a defense, not whether" the insurer would ultimately be liable on the merits. *Id.* at 1091 (citation modified). Stated otherwise, the interest must be "legally cognizable," *id.* at 1087, i.e., "capable of being judicially tried or examined before a designated tribunal; within the court's jurisdiction[.]" *Cognizable*, Black's Law Dictionary (12th ed. 2024). Because some law—a California statute—provided the insurers with an arguable basis for defending the case, the "protectable interest" requirement was satisfied. *Toxic Substances Control*, 54 F.4th at 1092.

Similarly, here the First, Fifth, Tenth, and Fourteenth Amendments are each respectively, and unquestionably, "some law." So too, are the other federal and state

laws cited in Youth-Intervenors' opening brief on this Motion, including the Religious Freedom Restoration Act, the public trust doctrine, and the *Navahine* settlement. Dkt. 45 at 7–11. Like the California statute in *Toxic Substances Control*, each of these sources of law provides Youth-Intervenors with a discrete legal basis for defending their health, safety, and religious interests in the case. It is within this Court's jurisdiction—i.e., cognizable—to evaluate the merits of these legal defenses at such time when the merits of those defenses are at issue. *See, e.g.*, *White v. Texas Am. Bank/Galleria, N.A.*, 958 F.2d 80, 83 (5th Cir. 1992) ("[O]nly when the court permitted them to intervene . . . were they entitled to litigate fully the merits of their claims[.]"). At this early stage, Youth-Intervenors have met their burden to show they have legal interests protectible under Rule 24(a).

The other cases cited by the federal government are unavailing. In *Southern California Edison Co. v. Lynch*, two applicants for intervention failed to demonstrate a significant protectable interest because their sole claim for money-owed was against an entity that was neither a party to the case, nor in privity with a party. 307 F.3d 794, 803 (9th Cir. 2002). Because the applicants sought to intervene in the wrong case, the applicants' interest was not "legally protectable." *Id.* The decision in *Southern California Edison* did not assess the legal merits of the proposed intervenors' claims at the motion to intervene stage, as Plaintiffs improperly ask this Court to do here. Dkt. 66 at 3, 7–8.

*Dilks v. Aloha Airlines*—a two-page per curiam opinion—reached no holding whatsoever on the "interest" prong of intervention. 642 F.2d 1155, 1157 (9th Cir. 1981). There, the Ninth Circuit used the phrase "legally protectable" without deciding whether a labor union's interests were adequate for purposes of intervention. Because the union failed to satisfy a different prong of the intervention test (the adequate representation prong), "[e]ven were some interest of [the union] thought to afford it a right to intervene," denial of intervention was warranted. *Id.* In short, none of the cases cited by Plaintiffs support their attempt to turn the intervention-friendly "interest" standard into a summary judgment on the merits of Youth-Intervenors' proposed defenses.

### B. Legal Interests Deriving from State Law and the *Navahine* Settlement are Legally Protectable

The federal government incorrectly asserts Youth-Intervenors from Hawaiʻi do not have legally protectable interests at stake in this case. First, Plaintiffs entirely disregard the nature of Hawaiʻi-based youths' health and safety interests. *See* Dkt. 45 at 10, 17–18; Kalālapa Decl. ¶¶ 2, 5. Second, contrary to Plaintiffs' proposition that state-law rights are not protectable under Rule 24(a), a protectable interest can be "protectable under *either* federal or state law." *Toxic Substances Control*, 54 F.4th at 1089 n.12. Third, the constitutional interests recognized and protected by both the Hawaiʻi state constitution and the *Navahine* settlement extend to all Youth-Intervenors, not only the two who are *Navahine* parties. *Contra* Dkt. 66 at 7–8 (wrongly stating the number of *Navahine* parties here). Rather, under the *Navahine* settlement, the Hawaiʻi Department of Transportation ("HDOT") agreed to change how it operates the state transportation system, and to set and achieve specific greenhouse gas ("GHG") reduction benchmarks, "for the benefit of present and future generations" and to protect "each person['s]" "right to a clean and healthful environment." Haw. Const. art. XI, §§ 1, 9. Thus, the protections secured under the *Navahine* settlement extend far beyond the parties to the case.

The sole case the federal government relies upon in support of its theory that Youth-Intervenors from Hawaiʻi lack legally protected interests, *Sweet v. Cardona*, 121 F.4th 32, 48–49 (9th Cir. 2024), is inapposite as it concerned an intervenor's "virtual[ly] impossib[le]" risk of bearing a financial cost and "interest in participating in a [Borrower Defense] proceeding," hardly akin to the Hawaiʻi Youth-Intervenors' interest, supported by uncontested testimony of a medical expert, in avoiding the dose-proportional harms from the traffic pollution that would be avoided by any emissions reductions achieved through full compliance with the *Navahine* settlement. *See* Millstein Decl. ¶¶ 23–24; *id.* Ex. 2 (hereinafter Pinsky Decl.) ¶¶ 25–30, 38, 60; *id.* Ex. 3 (hereinafter Balmes Decl.) ¶¶ 26–28.

Further, it is not speculative that federal preemption of CARB's regulations in this

case "may" impair or impede the Hawaiʻi youths' legal interests secured by the Hawaiʻi Constitution and the *Navahine* settlement. Fed. R. Civ. P. 24(a); *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 821 (9th Cir. 2001) (sufficient that applicants' projects "may be affected"). First, any preemption of existing (or future) regulations promulgated by CARB is likely to result in more pollution being emitted into the atmosphere, which exacerbates the injuries the Hawaiʻi youth are experiencing and the *Navahine* settlement seeks to ameliorate. Plaintiffs themselves claim the "whole point" of CARB's ACC I regulations are to encourage vehicles that use "less gasoline and other liquid fuels." Dkt. 40 at 1. Consequently, taking Plaintiffs' allegations as true, it is likely that preemption of CARB's ACC I regulations will result in burning more gasoline, and thus more harms to Youth-Intervenors' interests. *See infra* I.D. Second, Plaintiffs allege CARB's regulations "have an outsized effect on the national market and broader economy," and "impact vehicle manufacturers' decisions about what vehicles to produce," which necessarily includes Hawaiʻi. Dkt. 27 at ¶¶ 12–13. The settlement clearly contemplates the need for "[s]upport and adoption by private stakeholders of zero emissions vehicles" and the "[a]vailability and delivery of new vehicles and technologies from private parties (such as medium- and heavy-duty electric vehicles)." Dkt. 45-2, Ex. A at 6–7 (*Navahine* Settlement § 2(k)(ii), (vi)). Therefore, again taking Plaintiffs' allegations as true, preemption of CARB's regulations may impair or impede HDOT's ability to comply with the *Navahine* settlement as necessary to protect Youth-Intervenors' interests. Youth-Intervenors from Hawaiʻi have legally protectible interests that may be impaired or impeded by the resolution of this case.[1]

[1] Plaintiffs' argument that the public trust doctrine does not bind the federal government is a red herring and repeats its error of ignoring that interests protected by state law are valid bases for intervention as of right. Dkt. 66 at 8–9. The question for purposes of intervention is not whether the law is binding on all parties, but whether the asserted interest is "protectable under some law" and whether there is "a relationship between the legally protected interest and the claims at issue." *Toxic Substances Control*, 54 F.4th at 1088. Plaintiffs do not otherwise dispute Youth-Intervenors' arguments that a ruling in Plaintiffs' favor would impair or impede their interests in public trust resources secured under Hawaiʻi and California law. Dkt. 45 at 9–11.

### C. Youth-Intervenors Do Not Need to Establish Article III Standing to Intervene as Defendants

While Youth-Intervenors have distinct interests in this case and raise defenses CARB may not raise, they are not seeking any new forms of relief, nor do they bring any counter-claims. *See generally* Dkt. 45-1 (asserting affirmative defenses); *contra* Dkt. 66 at 11 (“the relief Youth Intervenors seek”). Therefore, Plaintiffs’ argument that Youth-Intervenors “cannot meet Article III’s traditional standing requirements” is irrelevant to the intervention question at bar. Dkt. 66 at 12. Plaintiffs acknowledge that intervenors “seek[ing] the same relief sought by at least one party to the case need not” establish standing to intervene. *Toxic Substances Control*, 54 F.4th at 1085 (citing *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020)); Dkt. 66 at 12 (“the Ninth Circuit may not generally require that potential defendant-intervenors satisfy Article III standing requirements”). Youth-Intervenors’ standing is not “implicitly” at issue, and Plaintiffs do not cite a single case in which a proposed defendant-intervenor was denied intervention due to lack of standing. Dkt. 66 at 12–13.

The lone case cited in support of importing a standing analysis into the intervention test predates controlling Supreme Court authority. Dkt. 66 at 12 (citing *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822). *Southwest Center for Biological Diversity* ventured to speculate about whether any “standing requirement is at least implicitly addressed” by the “interest” requirement only because, at the time of *Southwest Center for Biological Diversity*, “the Supreme Court ha[d] declined to decide whether a would-be intervenor under Rule 24(a)(2) must satisfy Article III's standing requirements[.]” 268 F.3d at 822 n.3. The Supreme Court has since answered that question in the negative. In 2020, in *Little Sisters of the Poor*, the Supreme Court held that intervenors seeking no different relief from the original parties need not establish standing. 591 U.S. at 674 n.6. Plaintiffs’ attempt to transform the minimal burden of demonstrating a significant protectable interest into a requirement to establish Article III standing has no support in

the law, and should be rejected.[2] Youth-Intervenors have met their burden of showing protectable interests in this case; no more is required. *Supra* I.A–B.

### D. An Adequate Relationship Exists Because a Ruling in Plaintiffs' Favor Would Impair Youth-Intervenors' Interests

Plaintiffs claim that since Youth-Intervenors' injuries existed while CARB's regulations were "operating at maximum stringency and vehicle manufacturers were exceeding ZEV sales targets," any additional impairment of Youth-Intervenors' interests is irrelevant. Dkt. 66 at 13–14. No case law supports Plaintiffs' theory. Further, in addition to preempting CARB's existing ACC I and ZEV standards, Plaintiffs' complaint seeks to "permanently enjoin [CARB] from adopting or enforcing *new* regulations related to fuel economy, such as tailpipe $CO_2$ emissions standards," at any point in the future, including standards that are more stringent than the ACC I regulations, and also "from adopting or enforcing *new* or previously adopted regulations related to ZEV mandates[.]"[3] Dkt. 27 ¶¶ 106, 108 (emphasis added). As Youth-Intervenors' experts make clear, prohibiting CARB from *ever* adopting or enforcing such regulations is likely to increase fossil fuel demand and increase the ensuing air pollution that is harming Youth-Intervenors. Millstein Decl. ¶¶ 3–4, 23; Cayan Decl. ¶¶ 3, 5, 8, 10, 21, 26; Dkt. 35 at 23 (acknowledging Plaintiffs' "policy preference in favor of lower fuel economy standards and higher consumption of fossil fuels").

---

[2] Even though standing is not relevant to whether Youth-Intervenors' motion should be granted, Plaintiffs' standing arguments misstate the law and the facts. The Ninth Circuit has previously found that climate change-related injuries like those harming Youth-Intervenors are "concrete and particularized" based on "evidence that climate change is affecting them now in concrete ways and will continue to do so unless checked." *Juliana v. United States*, 947 F.3d 1159, 1168 (9th Cir. 2020) (rejecting same generalized grievance argument raised by Plaintiffs here). Youth-Intervenors have proffered evidence, contrary to Plaintiffs' unsupported statements, that GHG emissions resulting from preempting CARB's regulations will exacerbate their ongoing injuries. *See generally* Cayan Decl.; Millstein Decl. Finally, the redressability hurdle that served as the sole basis for dismissal in *Juliana* does not exist here since Youth-Intervenors' sole requested remedy is judgment in CARB's favor, which is clearly within this Court's power to award.

[3] CARB has moved to dismiss Plaintiffs' requests to preempt any future regulations, Dkt. 35 at 18, 25, and that motion is pending at the time of this filing.

Moreover, even if CARB were to adopt no new regulations in the future, maintaining CARB's existing ACC I regulation at the very least prevents backsliding towards higher emissions. Accepting Plaintiffs' logic would mean that for children exposed to lead, there is no reason to prevent them from being exposed to even more lead because their health is already impaired. That argument defies logic and medical science: children have legally protectible interests in protecting their health from lead and air pollution, and any abatement measures should be aggressively defended because continued exposure, and backsliding towards less protective standards, compounds their injuries. Pinsky Decl. ¶ 39.

As Youth-Intervenors' pediatric expert makes clear, the health of Youth-Intervenors "will worsen if California Air Resources Board's (CARB) regulations designed to limit greenhouse gas (GHG) pollution from vehicles are enjoined, allowing the 'unleashing' of more fossil fuels and their pollution." Millstein Decl. ¶ 3. Even small increases in pollution harm children, and "[e]ach additional ton of fossil fuel pollution" further endangers the lives and interests of Youth-Intervenors. Balmes Decl. ¶¶ 4, 17; Pinsky Decl. ¶ 30 ("additional incremental exposures [to air pollution] are associated with measurable and clinically relevant harm"). This is due, in part, to the already harmful concentrations of GHG pollution in the atmosphere. Cayan Decl. ¶¶ 6, 13, 28. Any increased exposure to fossil fuel pollution causes worse health outcomes and more severe long-term consequences for youth. Pinsky Decl. ¶¶ 7, 15, 22, 34. Keeping the challenged CARB regulations in place would benefit Youth-Intervenors at a minimum by preventing any backsliding. Pinsky Decl. ¶ 25 ("Even modest reductions in air pollution from fossil fuels are associated with better lung health among children. These improvements are measurable and clinically significant within the timeline of an individual childhood – underscoring the immediacy of both harm and benefit related to levels of air pollution.").

Plaintiffs do not dispute *any* of these expert declarations, which must be accepted as true by this Court. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 820 (courts accept as

true well-pleaded, nonconclusory allegations in the motion to intervene, proposed answer, and declarations). Considering these real-world consequences, Youth-Intervenors have met their minimal burden—through expert and youth declarations—to show how they would, "in a practical sense," be affected by a decision that finds CARB's air pollution regulations unlawful, or prevents future regulation altogether. *Id.* at 822. The cases which Plaintiffs cite bear no resemblance to the facts here. In *United States v. Alisal Water Corp.*, the proposed intervenor's purported interest was not "related to the underlying subject matter of the litigation," and "[t]o hold otherwise would create an open invitation for virtually any creditor of a defendant to intervene in a lawsuit where damages might be awarded." 370 F.3d 915, 920 (9th Cir. 2004). The physical causation of harm here is more direct than the "attenuated" chain of causation that could result in economic harm to the proposed intervenors in *California v. Trump*, No. 25-8013, 2026 WL 2098700, at *2 (9th Cir. July 21, 2026).

Whether Youth-Intervenors could pursue separate litigation—presumably as plaintiffs—over *other* state or federal policies related to GHG pollution, is irrelevant to the intervention issue before this Court.[4] *Contra* Dkt. 66 at 14–15. The pertinent inquiry is whether Youth-Intervenors have other means to protect their interests in *defending* the specific CARB regulations at issue here that limit tailpipe carbon dioxide emissions from light-duty vehicles and set fleet requirements for ZEVs. Plaintiffs identify no other legal actions Youth-Intervenors could pursue to defend the CARB regulations challenged here, and the two cases they cite are inapposite.

---

[4] Plaintiffs' spurious claim that Youth-Intervenors can protect their interests through other legal actions ignores the Kafkaesque experience of youth seeking to protect themselves from their federal government, which "has long promoted fossil fuel use despite knowing that it can cause catastrophic climate change, and that failure to change existing policy may hasten an environmental apocalypse." *Juliana*, 947 F.3d at 1164; *see also Juliana v. United States*, No. 24-645, 2024 WL 5125252, at *6–14 (U.S. Dec. 9, 2024) (summarizing *Juliana*'s nine-year pretrial odyssey); *Juliana v. United States*, 949 F.3d 1125, 1127 n.1 (9th Cir. 2018) (Friedland, J., dissenting) ("If anything has wasted judicial resources in this case, it was" the federal government's "repeated efforts to bypass normal litigation procedures by seeking mandamus relief in our court and the Supreme Court.").

In *Akina v. Hawai'i*, 835 F.3d 1003, 1012 (9th Cir. 2016), the court denied a motion to intervene where the proposed intervenor-*plaintiffs* raised "*entirely different*" claims from those the original plaintiffs brought. The court found the distinct claims were better raised in a separate action, which proposed intervenor-plaintiffs had previously pursued in analogous contexts. *Id.* Virtually the same was true in *United States v. Alisal Water Corp.*, 370 F.3d at 921 (proposed intervenor-plaintiff's claims were not "related to the underlying subject matter of the litigation"). Unlike those cases, Youth-Intervenors seek to intervene as *defendants*, are not bringing their own claims (let alone "entirely different" claims), and there is no other identifiable legal action available for them to defend the specific CARB regulations and authority challenged here.

An order in Plaintiffs' favor would cause direct and immediate harm to Youth-Intervenors' interests and impede their ability to protect those interests. Lacking other avenues to defend CARB's regulations, their intervention here is plainly justified.

**E. No Other Party Will Adequately Represent Youth-Intervenors' Interests**

While Plaintiffs concede the burden of establishing inadequate representation is minimal, they proceed to apply a heightened standard that does not apply here. Dkt. 66 at 15. There is no presumption of adequate representation unless the interests of proposed intervenors are "identical" to another party. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003); *see also Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 197 (2022) ("presumption applies only when interests overlap fully" (citation modified)). It is not enough to trigger a presumption of adequate representation simply because the parties seek the same relief. *Contra* Dkt. 66 at 16. As the Supreme Court has explained, when a party's interest is "similar to, but not identical with" another party, that "normally is not enough to trigger a presumption of adequate representation." *Berger*, 597 U.S. at 197; *Cal. Dump Truck Owners Ass'n*, 275 F.R.D. at 308 (finding intervenors' interests were not adequately represented even when parties shared the same "ultimate objective"). Youth-Intervenors' interests in this case are decidedly not

"identical" to the interests of Defendants. *Supra* I.A–B. As a result, Youth-Intervenors do not need to make a "compelling showing" to overcome the presumption of adequate representation. Youth-Intervenors advance distinct legal defenses and seek to protect unique interests that Defendants do not share. Thus, Youth-Intervenors have met their "minimal" burden of showing the representation of their interests in this case "may be" inadequate. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).

Plaintiffs' argument that there is also a presumption of adequacy because California is presumed to represent its constituents' interests is equally flawed. Dkt. 66 at 15. As an initial matter, Plaintiffs are simply wrong that five of the six Youth-Intervenors are California residents. Dkt. 66 at 5. There are 14 Youth-Intervenors, and three of them are from Hawai'i (two of the Hawai'i youth were parties to the *Navahine* settlement). Dkt. 45-1 at 3–9. California clearly does not represent the interests of the Hawai'i youth in ensuring their state retains the ability to comply with the *Navahine* settlement. *Supra* I.B. Even as to the Youth-Intervenors from California, a presumption of adequacy exists only when the parties share the "same" objective and the present parties "have demonstrated they are capable and willing to make all of [a proposed intervenors'] arguments." *Arakaki*, 324 F.3d at 1086–87. California has not "demonstrated" that it will make *any*, let alone *all*, of the constitutional, public trust, and *Navahine* settlement arguments Youth-Intervenors will make. Nor *could* California make the constitutional arguments Youth-Intervenors will make regarding *individuals'* rights to life, liberty, and religious freedom (for example), because *individual* rights cannot be invoked by the government defendants here. Additionally, the interests of Youth-Intervenors are unique and not shared by all other Californians. *See* Pinsky Decl. ¶¶ 10–16 (describing unique vulnerabilities of youth to air pollution and climate disruptions); *Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053, 1067 (9th Cir. 2018) (finding the State's representation "may have been" inadequate because interests of application were narrower than those of the general public).

Even if this Court applied the heightened presumption of adequate representation standard here, which it should not, Youth-Intervenors have presented more than sufficient evidence to show Defendants will not adequately represent their unique interests. Youth-Intervenors have submitted declarations from six youth and two experts detailing how their interests will be impaired if Plaintiffs succeed here and the unique harms to children from vehicle pollution and climate disruptions. Dkts. 45.6–45.13. This evidence, which no other party has demonstrated it will present to the Court, combined with Youth-Intervenors' unique legal defenses, is compelling evidence that no other party will adequately represent the interests of Youth-Intervenors. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 824 ("It is sufficient for Applicants to show that, because of the difference in interests, it is likely that Defendants will not advance the same arguments as Applicants."); *California ex rel. Lockyer v. United States*, 450 F.3d 436, 445 (9th Cir. 2006) (Intervenors' interests are not adequately represented when they "bring a point of view to the litigation not presented by either the plaintiffs or the defendants."). Youth-Intervenors, not the present government Defendants, are best situated to make these arguments and no other party will adequately represent Youth-Intervenors' interests.

## II. At Minimum, Youth-Intervenors Meet the Criteria for Permissive Intervention

As to permissive intervention, Plaintiffs do not dispute the first two permissive intervention factors are satisfied; they only argue Youth-Intervenors' defenses have nothing in common with the preemption question before the Court. Even if this is the straightforward statutory interpretation case that Plaintiffs suggest, Youth-Intervenors' constitutional defenses are still pertinent. It is a basic canon of statutory construction that courts should not interpret statutes in a manner that would render them unconstitutional. *Clark v. Martinez*, 543 U.S. 371, 380–81 (2005) ("[W]hen deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail[.]"). Youth-Intervenors' constitutional defenses are, therefore, an integral

part of the statutory interpretation questions before this Court.

That said, Plaintiffs' claim that there will be no factual development in this case is highly dubious. Dkt. 66 at 18. Other cases related to the scope of EPCA preemption have proven to be fact-intensive and have gone to trial. *See, e.g.*, *Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*, 508 F. Supp. 2d 295, 359–92 (D. Vt. 2007); *Cent. Valley Chrysler-Jeep, Inc. v. Goldstene*, 529 F. Supp. 2d 1151, 1175 (E.D. Cal. 2007). CARB is planning to conduct discovery and "elicit expert testimony" on a variety of topics, including economics, emissions control technology, and vehicle markets. Dkt. 44 at 4. AFPM, if allowed to intervene, plans to offer "industry expertise" on numerous factual issues, including "how fleetwide greenhouse-gas standards, ZEV requirements, and increased fuel economy reduce demand for the liquid fuels its members refine and sell" and the "practical effect of the requested relief." Dkt. 49 at 13. Youth-Intervenors will make direct contributions to the development of the factual record that will aid the Court in understanding the practical implications of the challenged regulations, including impacts to Youth-Intervenors, among other factual issues. Plaintiffs' claim that allowing Youth-Intervenors to intervene will cause delay or prejudice existing parties is baseless and lacks legal support. *United States v. City of Los Angeles*, 288 F.3d 391, 404 (9th Cir. 2002) ("streamlining" litigation is not a justification to deny intervention to parties with interests in the outcome of a case). This Court can be trusted to manage the case in an efficient manner to ensure prompt resolution of the claims with the benefit of a fully developed record.

In short, considering their unique interests in this case, at minimum, Youth-Intervenors should be granted permissive intervention because their defenses have questions of law and fact in common with the main action.

**CONCLUSION**

For the foregoing reasons, Youth-Intervenors respectfully request this Court grant their Motion to Intervene as of right, or in the alternative, as permissive intervention.

DATED this 18th day of September, 2026.

Respectfully submitted,

*/s/ Andrea K. Rodgers*

ANDREA K. RODGERS
JULIA A. OLSON
NATHAN BELLINGER
PHILIP L. GREGORY, of counsel

OUR CHILDREN'S TRUST

JOSEPH W. COTCHETT
NANCI E. NISHIMURA
ANNE MARIE MURPHY

COTCHETT, PITRE & McCARTHY, LLP

*Attorneys for Youth Defendant-Intervenors*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 18th day of September, 2026, a true and complete copy of the foregoing REPLY IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS BY YOUTH-INTERVENORS has been filed with the Clerk of the Court pursuant to the Court's electronic filing procedures, and served on counsel of record via the Court's electronic filing system.

*/s/ Andrea K. Rodgers*
Andrea K. Rodgers