# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
--oOo--

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Docket No. 26-CV-00847-DJC |
| | ) Sacramento, California |
| Plaintiff, | ) September 24, 2026 |
| | ) 2:07 p.m. |
| v. | ) |
| | ) |
| CALIFORNIA AIR RESOURCES BOARD, ET AL., | ) Re: Motion hearing |
| | ) |
| Defendants. | ) |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE DANIEL J. CALABRETTA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff: U.S. DEPARTMENT OF JUSTICE by
MR. IAN SWENSON
950 Pennsylvania Avenue NW
Washington, DC 20530

For the Defendant: OFFICE OF THE ATTORNEY GENERAL by
MS. CAITLAN L. MCLOON
300 S. Spring Street, Suite 1702
Los Angeles, CA 90013

(Appearances cont'd next page.)

Reported by: JENNIFER COULTHARD, CSR, RMR, CRR, CRC
United States District Court
Official Court Stenographer
501 I Street, Suite 4-200
Sacramento, California 95814
Jennifer_Coulthard@Yahoo.com
(530)537-9312

Proceedings reported via mechanical steno - transcript produced via computer-aided transcription.

APPEARANCES (Cont'd):

For the Defendants: OFFICE OF THE ATTORNEY GENERAL
NATURAL RESOURCES LAW SECTION by
MS. SARAH PFANDER
300 S. Spring Street
Los Angeles, CA 90013

SACRAMENTO, CALIFORNIA - SEPTEMBER 24, 2026 - 2:07 p.m.

P R O C E E D I N G S

--oOo--

(In open court:)

THE CLERK: Calling civil case 26-0847, United States versus California Air Resources Board, et al.

THE COURT: All right. Good afternoon, counsel. Can you please state your appearances for the record.

MR. SWENSON: Good afternoon, Your Honor; Ian Swenson for the United States.

MS. McLOON: Good afternoon, Your Honor; Caitlan McLoon for the California Air Resources Board and Steven Cliff.

THE COURT: Can you speak into the -- speak into the mic a bit more?

MS. McLOON: Yeah. Sorry, Your Honor. Caitlan McLoon for defendants California Air Resources Board and Steven Cliff.

MS. PFANDER: And Sarah Pfander also for defendants.

THE COURT: All right. Good afternoon.

This matter is set for defendant's motion to dismiss for lack of standing. I'll kind of give you a sense of where I'm at, and then you can argue in agreement or opposition.

So I think on -- on both claims, to me, this really boils down to whether there is any practical effect of the GHG or EV rules. I think there clearly is on the GHG, and I think that's a relatively easy case for me to find standing.

I think defendant's argument for me is too "in the merits." The argument I think boils down to there's not an actual conflict here, so there's no injury in fact. That, to me, is a merit determination. I think *Arizona v. Yellen*, you know, cautions courts to be wary of making those merits determination at the standing stage.

On the EV, that one is a lot more difficult. If it is the case that that EV reg has no more force and effect, I don't see how there's standing. I think it's clear that just the mere fact that a law is on the books that might be preempted isn't enough to establish standing. But I think if there is any effect that's left from that law, I think the government has standing almost as a per se matter. I think there is an injury to the sovereign interests of the United States if there is effect of that EV reg. And that's where I'm struggling a lot. My inclination at this point is that as we sit here today, there is at least some effect of that in the sense that some automakers may still be required to purchase credits from other automakers. To me that's probably enough of an effect to say there's standing at this point.

It may be that, you know, soon the government or -- sorry -- California has evidence that that's all been completed and that, you know, we're completely done with model year 2025. The fact that there could theoretically be enforcement in the future I don't think matters if everyone's complied, but I

don't think we're quite there yet. But I will confess that's, I think, the hardest thing for me in this case. So that's where I'm at. Since this is California's motion, Ms. McLoon, I'll start with you.

MS. McLOON: Thank you, Your Honor. And I'll start with the ZEV standards, since that's where the Court is focusing --

(Court seeks clarification.)

MS. McLOON: The ZEV standards because that's what the Court expressed some interest in where he's still considering.

There is no plausible allegation that any of the remaining aspects of those standards are moving the market and the injury that the U.S. has pled in this case is based on actual impact on the market of vehicles, on the sales of EVs. If the Court takes judicial notice of the data on CARB's website --

THE COURT: So I'm not -- you brought a facial attack, correct?

MS. McLOON: Yes, Your Honor.

THE COURT: Okay. If it's a facial attack, I'm not taking judicial notice of -- you know, I can take judicial notice of, you know, government websites. I don't think I can take judicial notice of the information on the website. Even if I could, though -- right? -- I think, you know, one of the government's theories on standing is that there is an effect on

the marketplace. I don't know that they need to show that, right? I think I buy their argument that any preempted -- they have standing to challenge any law that is preempted if it still has any effect. And so I hear what you're saying even if I accept the fact that it may no longer have an effect on the marketplace because even if -- you know, considering the information on the CARB website, you know, the manufacturers aren't changing, you know, the makeup of their vehicles going forward since model year 2025 is closed. I get that. But I don't know why the government has to show that. It's never occurred to me that a state or federal government wouldn't have standing where a law that's on the books is being challenged. You know, it's a little bit different here because they're challenging California's law, but they're defending kind of the full-throatedness of an existing federal law. So I don't know why they have to show injury there. I think it is a per se injury if the regulation's still in effect.

MS. McLOON: Well, they have to show that they have a redressable injury and a specific interference with their ability to implement federal law, and there's no -- the fact that there's --

THE COURT: And where do you get that from?

MS. McLOON: From the cases that the U.S. has cited where they point to sort of the irreparable injury to the United States in a preemption case. It cannot be the case

under *Spokeo* that there's no injury in fact. So if it's just that the law is on the books even if it's still, you know, technically enforceable, if it's not having any actual effect, then there's no interference with the operation of federal law.

THE COURT: And why is it enough that the -- some auto manufacturers are going to have to pay money to buy these credits?

MS. McLOON: That may be enough for the auto manufacturers where they have to show, you know, one dollar's worth of monetary injury, but here the United States is alleging interference with their ability to set federal fuel economy standards.

THE COURT: Well, they're alleging an interference with federal law, right? They're saying we wanted to have -- and, you know, I'm putting aside the merits, all right? I'm accepting as true that for purposes of this discussion, there's an actual conflict, right? You know, they specifically stated -- set a policy that California is now acting in a way that's inconsistent with, and it's costing automobile manufacturers money. Why isn't that enough?

MS. McLOON: They're alleging that there's some sort of interference with their ability to have a uniform fuel efficiency standard. So, I mean, yes. We disagree. We think that it's apples and oranges, GHG standards versus few. But setting that aside as that get into the merits, they still have

to show some redressable injury to the United States from the operation of the GHG standards in their uniform standards that they're setting. And if the GHG standards --

THE COURT: So hold on. Hold on. So I'm afraid we're talking past each other, so I want to be very clear on what I'm trying to get at. I understand that is your answer to their standing theory, that there's injury in fact because of this impact on the market. I get that. This is a separate theory. You know, they have also pled that there is a per se, as a matter of law, injury in fact whenever a state enacts a law that is preempted by the federal government. And I think cases make clear they also have to show that it's actually, you know, in force and effect, right?

The redressability would be if the law is enjoined -- right? -- there is no longer an active conflict with federal law. That's the redressability. So, you know, why do you think there has to be some independent injury to a specific program of the federal government rather than this law that is in effect that violates federal law under the supremacy clause?

MS. McLOON: Well, because we know under *Murphy* and *Close* that there are certain remedies that the U.S. can't get against a State having a law on the books. So the fact that the ZEV standards remain on the books and are operable is not a question because they can't knock it off. It's -- the redressability they can get is in preventing California from

enforcing those standards and there's no difference -- if there's no enforcement of those standards that's causing any conflict with the United States program, there's no redressability that they can get.

THE COURT: Right, but there is redressability here, right? They could ask for an injunction stopping the law from being in effect, and then the automobile manufacturers who haven't yet complied with, you know, the model year 2025 regs don't have to, you know, pay these fees or comply with that, right? So they're arguing -- their argument is that they're -- the requirement that they comply with the statute, that is preempted, right? And there are still automakers who have to comply with it that will no longer have to comply with it if, you know, they get an injunction.

MS. McLOON: But they're -- the argument as they plead it in the amended complaint is that the ZEV and GHG standards, just looking at the ZEV standards, are preventing the uniform national program of fuel efficiency standards. If the regulations aren't doing anything, it's not preventing. The fact that a company would still file a report or -- so that CARB's can, you know, examine the fact that they have sufficient credits, that isn't, in any way, interfering with the federal program or the uniformity of that program. It's only in the context where those standards are making impact on the market that it would have any conflict that could be

redressable.

THE COURT: Okay. I understand your point. I think I disagree with it, but why don't I move on.

But it sounds like you don't disagree that there are some manufacturers who still -- may still need to pay a credit -- or pay for credits under the ZEV regulations?

MS. McLOON: Your Honor, the data for the 2025 model year, which is the only sort of remaining I think is in CARB's possession now; it's not yet public on the website. I think we would have it by the end of October. At that point, we could answer that question definitively as to what is remaining for any manufacturer to do.

It is my understanding, as I sit here today, that no, there is no ongoing obligation for manufacturers under the 2025 ZEV requirement --

THE COURT: Okay.

MS. McLOON: -- given the volume of credits and everything, you know.

THE COURT: Okay. Well, if I find there's standing, you know, that would be without prejudice to filing a motion for partial summary judgment alleging while there may have been standing at the outset of the case, there is no longer, depending on what my ultimate reasoning is.

All right. Anything else you want to say on the ZEV mandates and then maybe we can switch over to the greenhouse

gas emissions?

MS. McLOON: Just one last remark on the request for judicial notice. I do think this is context where there's no reasonable dispute that CARB understands that data to be accurate. It's the public data that they, under statute, have to make clear that this is the data we have received and under which we are making our decisions about how to operate the program and it's that understanding, not the truth of the matter necessarily but that CARB isn't going to be taking any actions that is inconsistent with that data that provides this Court with the opportunity to take judicial notice of that for a facial challenge on a motion to dismiss because the Court can disregard allegations that are contradicted by judicially noticeable facts.

I would ask the Court to take judicial notice of the data that we do have which, again, supports this -- the conclusion that the sales requirement of the ZEV standards are fully over.

THE COURT: Okay. I will consider that point. Thank you.

MS. McLOON: And then I guess I'll just add that -- you know, we maintain that the GHG standards should -- the challenge to the GHG standards should also be dismissed for the same reason, although I agree with Your Honor that it's a closer question or I would say it's a closer question than ZEV,

which I think is pretty clear that it's not doing anything because all the GHG standards can be doing at this point is maintenance of status quo, and they haven't shown that it's actually making an impact.

The way the United States has pled their complaint completely omits the status of both of these reconciliations as of March 2026 when they filed suit. So they plead it as if the standards are newly enacted, they're going to be incrementally more stringent over time and that that's somehow having an impact on the market. And it's that theory that then brings them to their injury of it somehow impacting their ability to set their standards. So in the absence of that impact on the market, there's no standing as pled, based on looking at how they pled the injury in their complaint.

THE COURT: Okay. All right. Thank you.

All right. Mr. Swenson, you know, I understand why California is arguing a lot about, you know, the marketplace conditions; that features prominently in your complaint. Do you need to show some harm to the marketplace in some way for you to have standing?

MR. SWENSON: No, Your Honor. As you said earlier -- and you're completely correct about this -- if these laws have force and effect, the United States suffers a per se injury. We argued that in our opposition and we agree with Your Honor it's a per se injury.

THE COURT: Okay.

Let's say the government -- sorry. I keep saying government.

Let's say California gets the data from CARB, it shows that, in fact, everyone is now in compliance with the 2025 model year, all credits have been purchased at this point. Would you still have standing?

MR. SWENSON: I think we would, Your Honor, because the regulations would remain in effect and enforceable. And I think Your Honor has put your finger on something really important here about the ZEV mandate. CARB does not contest that the requirements are in effect. So for model year 2025, the compliance period ends in 2026. Some manufacturers may apply for an extension of up to three years. And if the manufacturer is not in compliance at the end of the specified period of time, a cause of action accrues against the manufacturer, and then CARB has three more years to bring an enforcement action.

Now, CARB has never disclaimed enforcement authority in this case. They've said that as a factual matter, all manufacturers are in compliance.

I agree with Your Honor, those factual arguments are not appropriate on a motion to dismiss when CARB has brought a facial challenge. But the point remains they've never disclaimed enforcement authority over anybody at any time as it

comes to the ZEV mandate.

THE COURT: Yeah, but I think at some point it becomes so hypothetical. I mean, if, you know, CARB presents evidence to the Court in the appropriate way that says every manufacturer, you know, has -- you know, they're building cars. The cars are built, right? So, you know, I just can't imagine what the enforcement would look like if CARB says look, here are the numbers of EV vehicles produced in California, you know, these lawmakers have enough credits, these automakers have purchased it. I don't -- what's the realistic chance they could fall out of compliance in the future?

MR. SWENSON: I still think it's a per se injury. Now, maybe if that were, in fact, the case that all auto manufacturers were in compliance and if it were true that CARB never would again enforce the ZEV mandate against these auto manufacturers, maybe that's where we get into the redressability problem, because what would an injunction do in that circumstance? Though I still think a declaratory judgment would be helpful in clarifying the position of federal law and state law and that CARB has intruded into the exclusive province of the federal government.

THE COURT: Okay. Anything else on the ZEV mandate?

MR. SWENSON: Nothing else on the ZEV mandate, Your Honor.

THE COURT: On the greenhouse gas emission standard,

you know, I think the government acknowledges -- California acknowledges that they -- obviously there's still an ongoing requirement to comply with that regulation. You know, the argument that counsel's presenting is because it's at the kind of maximum enforcement level, it's not having a practical impact on the marketplace and, therefore, the federal government doesn't have harm. So what's your response to that?

MR. SWENSON: A few points on that, Your Honor. First, I'll agree that the Co2 emission standards do have force and effect. So that goes back to the per se injury that we've been discussing.

Second, CARB, in its reply, says that the GHG emissions standards are necessary to prevent backsliding in the auto market. And I think there CARB acknowledges that the regulations are still doing something. They're preventing manufacturers from producing cars that respond to market forces instead of CARB's regulations. And so if these regulations were off the books, it is likely that auto manufacturers would change the mix of cars in the marketplace.

The third thing, Your Honor -- and this goes to some of the practical effects -- because there's a competing regulation from CARB, it limits the Department of Transportation's ability to issue new fuel economy standards that would be fully effective because auto manufacturers have to comply with CARB standards and the federal standards. That

blunts the effects of an exclusive federal standard, which is what EPCA envisions.

THE COURT: Okay. All right. Anything else before I turn back to defendants?

MR. SWENSON: I think that's it, Your Honor. I think you have the argument from us.

THE COURT: Okay. Ms. McLoon, anything that you want to add in response?

MS. McLOON: Yes, Your Honor.

When we're talking about a per se injury to the United States, the U.S. is stating here that even if the ZEV standards were fully done and dusted and there was nothing left for companies to do that they could still proceed, but that would be exactly what they are, you know, not allowed to do in the standing inquiry because that would be seeking just a, you know, academic or a political assessment of standards. They have a question. It's -- they need to wait until there are actual regulations having an impact on the market and having an impact that they -- being able to allege an impact to the market that would impact their ability to set the federal standards before they can bring that claim. That is what we require when we ask, you know, all parties, including the United States, to come forward with standing.

On the backsliding point, he says that California has stated that it -- that the GHG standards are still playing a

backsliding role. We state that, at most, they're playing a backsliding role. There are a lot of factors that impact the vehicle market, and we don't know, you know, what role the GHG standards are playing here.

And the point about their pleading, that this is a facial challenge is that they haven't connected the dots. They haven't come forward to say, look, these standards are -- you know, in March 2026 these standards had already plateaued at maximum stringency; the manufacturers had already risen to meet them. At most what they could be doing is maintaining the status quo. What are the dots between that and the injury that they are still claiming, that it's somehow interfering their ability to set standards at the level that manufacturers should comply with. It doesn't -- there's no sort of logical inference there that they can fall back on.

And, you know, I'll remind the Court that these are standards that have operated harmoniously with the federal government's fuel efficiency program for decades. California has had both ZEV standards and GHG standards since before ACC1, and we have had the ACC1 standards at issue here since 2012, and there has never -- you know, the U.S. hasn't come forward to say that somehow it's interfering with the operation of federal law. In fact, they have continued -- NHTSA has continued to issue new standards, fuel efficiency standards ten times over the course of the period that these programs have

coexisted, and so they need to come forward with something more in their pleadings to make sense of the facts as they exist in March 2026 to connect their theory to some sort of redressable injury because they can't just be asking the academic question that the Court should weigh in and provide some sort of declaration about, you know, whether or not they are preempted in the absence of an actual conflict.

THE COURT: Okay. I suspect that's something we'll get into on the merits, but fair point on the standing.

All right. Anything else on the 12(b)(1) motion?

MS. McLOON: No, Your Honor.

THE COURT: Okay. So I take the matter under submission. I'll give you a written order. At least the GHG claims are going to go forward. I need to think through the ZEV.

I know there's a stay in place on the government's motion for summary judgment. How much time would California like to file their opposition to that MSJ once the stay is lifted?

MS. McLOON: Well, I guess one question, Your Honor. To the extent that I know in this discussion we talked about whether or not CARB has data for model 2025 that would impact the standing question. We would be interested potentially in briefing that question first so that we don't have to go to the merits on a claim for which they don't have standing. So if --

I think that data should be available by the end of October, so if that's something that the Court would contemplate.

THE COURT: No. I think that sounds like a cross-motion for summary judgment.

MS. McLOON: Understood, Your Honor.

THE COURT: So -- I mean, if you want to do it that way, that's fine. So why don't we do this: I'll just ask you to meet and confer and, you know, either let me know before or at the time the order issues what you want to do about the stay and maybe come together on a briefing schedule for the MSJ or possible cross-motion for MSJ. So I'll leave it alone for now, but we will need to cross that bridge at some point.

All right. Thank you all very much for the helpful argument. As you heard me say to the other parties, I can't promise you a quick ruling on this. We're doing our best with the resources we have, but we'll try to get you an answer as soon as we can. And, again, thank you for the very helpful argument.

MS. McLOON: Thank you, Your Honor.

MR. SWENSON: Thank you, Your Honor.

(Concluded at 2:32 p.m.)

# C E R T I F I C A T E

I certify that the foregoing is a true and correct transcript of the record of proceedings in the above-entitled matter.

/s/ Jennifer Coulthard — October 10, 2026

JENNIFER L. COULTHARD, RMR, CRR — DATE
Official Court Reporter